ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2021-Oct-28  15:32:53
60CV-21-6938
C06D12 : 8 Pages

# IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
## ____DIVISION

**NADINE JARMON**                                                     **PLAINTIFF**

**V.**                              **CASE NO. _____**

**LITTLE HOUSING AUTHORITY**
**d/b/a METROPOLITAN HOUSING ALLIANCE**                    **DEFENDANT**

## COMPLAINT

COMES NOW Plaintiff Nadine Jarmon ("Plaintiff"), by and through her attorney Chris P.

Corbitt of Corbitt Law Firm and for her complaint against Defendant Little Rock Housing

Authority d/b/a Metropolitan Housing Alliance, ("MHA") and she states:

### I.  Background

1. Plaintiff Dr. Nadine Jarmon (hereinafter "Jarmon") is a whistleblower who was fired for reporting government waste and fraud among other things.

2. MHA leadership then engaged in a cover-up to hide its illegal retaliation.

3. Plaintiff was recruited from Florida to be the Executive Director of the MHA.

4. Plaintiff has over 25 years of direct management experience in the public and affordable housing arena.

5. Plaintiff has never been fired.

6. Plaintiff reported to the Board of Commissioners for MHA.

7. Plaintiff was hired on July 16, 2020 as full-time Interim Executive Director.

Page **1** of **8**

EXHIBIT
1

8. Plaintiff was hired as permanent Executive Director on April 5, 2021.

9. The terms of the employment agreement were for a period of 2 years.

10. On June 23, 2021, Jarmon reported the under Whistle Blower protection the wrongdoings of MHA in a 161 page document.  See attached Exhibit Package.

11. Dr. Nadine Jarmon less than a week after sending her formal written complaint of misuse of funds, among other things, overreach into the day-to-day operations, mismanagement, and waste of federal funds, she was put on administrative leave with pay in retaliation for her reporting the wrongdoings. See Exhibits Package.

12. On June 29, 2021, in continuance of MHA misappropriation of government funds, MHA awarded a no-bid contract of $160,000 to Pinnacle Strategy Group to investigate Dr. Jarmon.

13. On July 19, 2021, this no-bid contract was rescinded by MHA after a letter was sent to MHA from HUD Director Anthony S. Landecker.  See Letter in Exhibits package.

14. In a timely manner on August 21, Jarmon filed a whistleblower complaint on the Housing and Urban Development hotline for retaliation which was escalated to the United States Department of Housing and Urban Development ("HUD") Office of Inspector General ("OIG").

15. On August 25, 2021 MHA fired Jarmon in retaliation.

16. Rather than commend Nadine Jarmon for calling attention to the abuses of the board MHA retaliated against Jarmon for reporting the waste and fraud by firing her.

17. As a condition precedent to filing suit, the employment agreement requires Jarmon to mediate her claims.

<u>II. Jurisdiction and Venue</u>

18. Plaintiff brings this action under the Federal Whistleblower statute for employees of federal grantees, 41 U.S.C. § 4712 *et seq.* ("the Whistleblower statute") and also brings common law causes of action against the Defendant which occurred in the State of Arkansas.

19. The United States District Court for the Eastern District of Arkansas has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because this suit raises federal questions under the Whistleblower statute.

20. This Complaint also alleges violations of the common law of the State of Arkansas which form part of the same case or controversy and arise out of a common nucleus of operative facts as the Whistleblower statute claims alleged in this Complaint.

21. Therefore, this Court has supplemental  jurisdiction over Plaintiff's common law claims pursuant to 28 U.S.C. § 1367(a).

22. The acts complained of herein where committed, and had their principal effect within the Eastern District of Arkansas, Western Division, and therefore, venue is proper within this District pursuant to 28 U.S.C. § 1391.

<u>III. The Parties</u>

23. Plaintiff Nadine Jarmon is a citizen of the United States and worked in the State of Arkansas. At all times relevant to the allegations in this Complaint, Plaintiff was employed by the MHA in Little Rock, Arkansas.

24. Defendant MHA is an employer within the meanings set forth and applicable to federal and state laws, and was, at all times relevant to allegations in this Complaint, Plaintiff's employer.

25. At all times material herein, Plaintiff was a covered employee entitled to the rights, protections and benefits provided under the Whistleblower statute 41 U.S.C. § 4712.

26. Defendant MHA receives HUD contract and grant funds.

27. Defendant's address is 100 South Arch St., Little Rock, Arkansas, 72201.

28. At all times relevant to this action, Defendant was Plaintiff's employer as defined by 41 U.S.C. § 4712.

29. At all times relevant to this action, Defendant was an employer subject to the anti-reprisal and retaliation provisions of the Whistleblower statute 41 U.S.C. § 4712.

30. This suit alleges common law causes of action against the Defendant which occurred in the State of Arkansas, and this suit seeks damages as a relief.

### IV. Facts Which Entitle the Plaintiff to Relief

31. Plaintiff repeats and realleges all previous paragraphs of this Complaint as though fully incorporated in this section.

32. Plaintiff worked for Defendant as Executive Director.

33. She began her employment in July of 2020.

34. MHA is a grantee receiving Federal funds from HUD.

35. On June 23, 2021 Plaintiff sent a 161 page written complaint to the HUD Director Anthony Landecker and Mayor Frank Scott of Little Rock, indicating among other things, overreach by the Board of MHA into the day-to-day operations, mismanagement of funds, and waste of federal funds.

36. Attendance at the MHA office is addressed in the MHA employee handbook and this allegation exposed potential theft of government funds through overreach by the Board of

MHA into the day-to-day operations, mismanagement of funds, and waste of federal funds.

37. This disclosure was made to the following person:

    a.  Kenyon Lowe, MHA Board Chairperson, who had the responsibility to address misconduct per the MHA employee handbook.

    b.  Anthony S. Landecker, Director of Public Housing, who has responsibility to address misconduct of MHA.

    c.  Frank Scott, Mayor of Little Rock, who oversees the appointments to the Board of Commissioners of MHA

38. Rather than commend Plaintiff, MHA then engaged in a cover-up and fired Plaintiff for raising these issues.

39. On June 23, 2021, Plaintiff reported MHA wrongdoings.

40. On June 29, 2021 MHA put Jarmon on administrative leave with pay.

41. On June 29, 2021, MHA banned Jarmon from all MHA properties and all communication and access items were retrieved and disabled.

42. All administrative remedies have been exhausted.

43. MHA offered no due process or mediation per contractual documents.

44. On August 2, 2021, HUD OIG interviewed Jarmon regarding her whistleblower complaint.

45. On August 21, 2021 Jarmon filed a HUD Whistleblower complaint on the Fraud Hotline

46. On August 25, 2021 Jarmon was fired in retaliation to her whistleblower complaint.

47. Plaintiff timely filed an OIG complaint, exhausted her administrative remedies, and has timely filed this present action.

48. The MHA specifically wanted Plaintiff publicly fired, so as to punish Plaintiff and send a signal to other employees not to report any issues.

## V. Theories of Recovery

### First Cause of Action
(Violation of 41 U.S.C. § 4712 Anti-Reprisal Provision)

49. Plaintiff repeats and realleges all previous paragraphs of this Complaint as though fully incorporated in this section.

50. Plaintiff brings this action against Defendant under the Whistleblower statute 41 U.S.C. § 4712.

51. At all relevant times, Plaintiff was a covered "employee" within the meaning of Whistleblower statute 41 U.S.C. § 4712.

52. At all relevant times, Defendant was an employer of Plaintiff as a government grantee or contractor within the meaning of 41 U.S.C. § 4712.

53. Plaintiff made protected discloses of what Plaintiff believed to be gross mismanagement, waste, fraud, and abuse violations within the meaning of 41 U.S.C. § 4712 to the MHA Board Chairperson.

54. Plaintiff made such protected disclosures to her Board Chairperson who is a covered person within the meaning of 41 U.S.C. § 4712.

55. Defendant, through its agents and employees, including Plaintiff's supervisor and Board Chairperson, discharged, demoted, or otherwise discriminated against Plaintiff as a reprisal for her protected disclosure to the Board Chairperson.

56. Plaintiff filed a timely complaint with the HUD OIG alleging that her firing had been a reprisal within the meaning of 41 U.S.C. § 4712.

57. Plaintiff exhausted her administrative remedies and has been through mediation per the contract language within the statutory timeline to file a complaint per 41 U.S.C. § 4712.

58. As a result of Defendant's violations of 41 U.S.C. § 4712, Plaintiff seeks compensatory damages in the form of front pay, back pay, attorney's fees and costs, compensatory damages for any past or future out-of-pocket losses and for any emotional harm.

59. Plaintiff seeks a trial by jury.

**Second Cause of Action**
(Wrongful Discharge in violation of public policy.)

60. There is a well-established public policy in this State favoring the reporting of illegal and unsafe activity, specifically government waste and those who abuse the public trust. When Defendant terminated Plaintiff for complaining about government waste, it acted in violation of public policy.

61. As a direct and proximate result of the actions of the Defendant and its agents as set forth herein, Plaintiff has suffered irreparable harm to her reputation; she has suffered loss of income in the past and will continue to suffer loss of earning capacity in the future; and Plaintiff has endured emotional pain and turmoil in the past and will continue to endure the same in the future. She is entitled to both compensatory and punitive damages from the Defendant as a result of the conduct alleged herein.

62. All acts of the Defendant's agents and employees and officers against the Plaintiff were done within the scope and course of their employment with the Defendant and, thus, Defendant is liable for such acts under the theory of *respondeat superior*.

WHEREFORE, the Plaintiff, Nadine Jarmon, prays for judgment against the Defendant in the form of both compensatory and punitive damages in an unliquidated sum and for all other just and proper relief to which she may be entitled, including, but not limited to, attorney's fees and costs.

October 28, 2021

Respectfully submitted,

*/s/Chris P. Corbitt*

Chris P. Corbitt, Ark. Bar # 2004089
Corbitt Law Firm, PLLC
PO Box 11200
Conway, AR 72034
Telephone: (501) 255-0112
FAX: (888) 305-1008
www.corbittlawfirm.com
Email: ███████████

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2021-Oct-28  15:32:53
60CV-21-6938
C06D12 : 101 Pages

# UNIFORM COVER PAGE

[To be used when required by Administrative Order No. 2 (g)★]

COURT: _____ COURT OF _____ COUNTY

Docket/Case Number: _____

CASE NAME:
PLAINTIFF/
PETITIONER: _____

DEFENDANT/
RESPONDENT: _____

TITLE OF PLEADING OR
DOCUMENT BEING FILED
(If a multi-part file,
the designation "part _ of _"
(example, part 1 of 2)): _____

★Administrative Order No 2.

    (g) *File Mark*. (1) There shall be a two inch (2") top margin on the first page of each document submitted for filing to accommodate the court's file mark. If the pleading or document must be filed in multi-parts because of size or for other reasons, the first page of each part must include the file name and file mark and shall clearly indicate the part number and number of parts (example, part 1 of 2).

    (2) If a document is such that the first page cannot be drafted to provide sufficient space to satisfy the file-mark requirement, the document must include the uniform cover page developed by the Administrative Office of the Courts and found under Forms and Publications at www.arcourts.gov.

June 23, 2021

Mr. Anthony Landecker
Director – Office of Public Housing
Housing and Urban Development
State of Arkansas
425 W. Capitol Avenue. Ste. 1000
Little Rock, AR  72201

Honorable Mayor Frank Scott, Jr.
Little Rock City Hall
500 West Markham Street
Little Rock, AR  72201

Dear Mr. Landecker and Mayor Scott:

As the Executive Director of the Little Rock Housing Authority d/b/a Metropolitan Housing
Alliance (MHA), I am compelled to write this letter on behalf of the agency and MHA's staff to
express my concerns.  I have over 25 years of direct management experience in the public and
affordable housing arena and have completed well over $750 million in development related
projects; including $700 million underway in New Orleans prior to Hurricane Katrina.  I
reference these facts to demonstrate that (1) I have extensive experience in complex development
deals; and (2) I know how to run a housing authority.  Having worked at some of the largest and
most troubled public housing agencies throughout the United States, I can honestly state, that the
actions by the Board of Commissioners at MHA are by far the most egregious examples of
overreach into the day-to-day operations, mismanagement, and waste of federal funds that I have
ever encountered.

Under the Whistleblower Protection Act. I feel it is my duty to report gross misconduct,
inefficient governance, and troubling actions by the current board of commissioners that impact
every aspect of the efficient operations of MHA.  While serving as the Interim Director from
July 2020 through April 2021 I became aware of concerning trends by the Board of
Commissioners.  However, now that I have officially accepted the role as the Executive Director
it is my duty to bring these trends and actions to the attention of proper authorities.

Specifically, the board has taken actions to intentionally divert funds and resources from MHA
to their non-profit, Central Arkansas Housing Alliance (CAHC).  This action, in and of itself, is
acceptable with an approved action or development plan and detailed accounting records.  In
absence of such a plan these actions become suspect.  They become even more suspect when
there is a constant and insistent push from board members to "move quickly" with the transfer of
properties.

Lastly, this board has demonstrated extreme involvement in the day-to-day operations of the
agency with staff and I often having to attend 4-5 meetings monthly in addition to daily phone
calls, texts, and emails.

It is the mission of the Metropolitan Housing Alliance to provide safe, quality, affordable housing as a basic human right to build community resilience, improve intergenerational public health outcomes, and increase equitable opportunities.  My staff and I are steadfast in our commitment to this purpose and celebrate the families and the community we serve.  I view any form of impediment to the daily performance of our duties as a threat to the livelihood of the agency.  When we struggle our community struggles. The actions of the board not only affect my team, but they put our mission and our community at risk while increasing the likelihood of low-income families living in substandard housing at rents beyond their ability to pay.

MHA Board's conduct has proven their inability to govern a Public Housing (PH) agency, maleficent and gross mismanagement of federal funds and agency resources, blatant abuse of power; and violation of the Annual Contribution Contract (ACC) between MHA and Housing and Urban Development (HUD) and the established code of ethics governing their actions. Even more disturbing is that the existence of these problems has been well publicized and expounded upon over at least three years.

It is my sincere hope that you will review the documents provided and take appropriate steps to protect the MHA as a grantee of federal funds and ensure the continuation of the services provided by the hard working and dedicated staff of the housing authority. Our residents, participants, and neighbors depend now, more than ever, on our dedication to providing safe, stable, dignified, and affordable housing.

The information is presented in the spirit of "if you see something, say something" and that it is my fiduciary duty, both ethically and legally to bring this conduct and behavior to the attention of the Federal Government and the elected leaders of the City of Little Rock.

My motives are not driven by anything other than my personal integrity and belief in the mission of the Metropolitan Housing Alliance.  While I am aware of the tumultuous change of leadership at the agency over the past few years, my actions have nothing to do with my personal like or dislike of any individual board member, but rather my concern for the financial health and future of MHA.

At the end of this report are supporting documents, that include board minutes, emails, documentation, and statements that will support this letter and all my concerns.  In addition, I have included statements from two previous MHA Executives and a copy of an eerily similar complaint submitted almost one year ago to the date of this complaint (attached).

I believe that after a full review of the information provided with this complaint that the need for immediate dismissal of members of or the entire current board of commissioners will become the obvious and most responsible decision.


Thank you.

Nadine M. Jarmon, PhD

Executive Director



LETTER TO THE MAYOR AND BOARD OF DIRECTORS OF THE CITY OF LITTLE ROCK

June 25, 2020

SUBJECT: METROPOLITAN HOUSING ALLIANCE BOARD REMOVAL

Dear Board of Directors,

This letter is sent on behalf of a majority of employees at the Little Rock Housing Authority (LRHA) dba Metropolitan Housing Alliance (MHA) to inform you of the problems that are not obvious to anyone outside of MHA, but have reached a breach of the public trust to such a degree the Commissioners are serving themselves and have lost sight or been blinded by the power to make decisions in the best interest of the community that we all serve. The MHA board is putting the agency and millions of dollars at risk for personal reasons. We are requesting the removal and replacement of the current MHA board of directors based on the following reasons: (1) Incompetency (2) Misconduct (3) Hostile Work Environment.

Incompetency
The most recent dangerous incompetency came as a result of Covid19. The board called Board meetings and put staff and the public at risk because they did not all wear masks and did not follow social distancing general accepted practices of managing risks associated with Covid19 at board meetings.

The board has shown great incompetence in its failure to understand the housing programs it oversees while adamantly injecting themselves in the day to day activities and purposefully through its inability to hire and retain an executive director.
The board proves incompetence by using its platform to blame and belittle staff.

The board provides inaccurate information directly to tenants and to the public which creates confusion and violates the public's trust. It is challenging for staff to perform their daily job duties with the extra time and efforts it takes to resolve the problems that the board creates.

In addition, the board does not understand the financial funding of MHA. Despite having an excess of funds intended by HUD to administer housing programs, the request for additional staff has been denied by the board, vacant positions are unfilled, and the board states MHA is in financial trouble.

The board's failure to understand the method of federal funding for housing agencies prevents executive staff from growing the agency to the full extent possible which would result in more services available to the citizens of Little Rock.

Incompetence was also apparent during the last recruitment for an executive director. The resignation of the executive director in 2018 was followed by the board's series of blatant haphazard attempts to fill the position with several inadequate candidates.
The board manipulated the process by delaying offers to qualified applicants leaving the agency without leadership for an extended period of time.

Since the recent resignation of the current executive director that is effective July 7th, staff has been informed that the MHA board intends to appoint Lowe as executive director. Tenants have also contacted staff requesting to speak to Lowe stating that Lowe informed them he is the new director.

While educated and a longstanding board member Lowe's resume shows that he has never held a full time executive position in a housing authority or similar organization. His behavior as a board member proves that he lacks the temperament, knowledge, and management skills to successfully lead the agency.

Misconduct

The board has a blatant disregard of the rules for open records. It is documented by the media as well as in board minutes' numerous instances in which the board failed to follow the rules regarding meetings and transparency. Despite the training required by the city in 2019, the board continues to hold executive sessions without disclosing all topics of discussion. Ex parte discussions outside the boardroom also occur on a normal basis.

The board's abuse of power is also shown by Kenyon Lowe's financial impropriety regarding travel expenses. Lowe charged personal expenses to MHA while at an out of town training. He received per diem funds to pay for meals and associated routine travel prior to the trip, however he made charges to his room and did not pay them. Lowe then failed to pay MHA for the unapproved hotel expenses timely and only after it was brought to the attention of the media he inappropriately directed a staff member to provide him the amount and settled the debt.

Hostile Work Environment

The board has created a hostile work environment for executive staff by stepping over the line of being heavily involved in the day to day responsibilities of the agency the executive director is responsible for. The board belligerently accuses staff falsely in public meetings and in emails to staff of not doing their jobs by not providing follow up information.

This environment is preventing employees from performing job duties and causing excessive turnover in executive staff and challenges in the recruitment of talented professionals.

Over half of the current staff are considering a walkout that would affect MHA's ability to process rent payments for nearly 3,000 families.

A mediator was hired in efforts to improve staff-board relations. Unfortunately, the board has responded to staff concerns with retaliation, confrontation, harassing interactions, and in uncompromising positions that leaves staff feeling that their jobs are endangered.

Additionally, previous board members have resigned due to the environment created by existing board members.

Summary

In summary, we are tax paying citizens of Little Rock and MHA's board has proven to be power hungry, confrontational, illogical, calculating, neglectful, incompetent and dangerously unethical and unprofessional as just a few terms to summarize the hidden fears of MHA staff.

The best interest of the community is protected by the removal of the current board. There are no signatures included in this letter due to a fear of future retaliation. MHA employees are willing to discuss these very serious and urgent issues in person with the Mayor as soon as his schedule permits.

Sincerely,

Concerned MHA Employees

# SUMMARIES

**Examples of Breach of Fiduciary Responsibility, Procurement Violations (Conflict of Interest), Abuse of Power, Hostile Work Environment and Negligence and Inefficiency**

## FAILURE IN FIDUCIARY RESPONSIBILITY

- According to audits, the authority did not perform adequate account reconciliations over accounts payables, accounts receivable and allowances, expenses, other liabilities, prepaid assets, and the schedule of expenditures of federal awards. **(See attachment 1)**

- Both 2018 and 2019 audits cited significant and material deficiencies.

- During the audit of the Authority's blended component, CAHC, repeat audit findings state handling of finances are being neglected and several adjustments were necessary.

- The Authority did not maintain adequate documentation.   **(See attachments 2)**

## 2021 FINANCIAL ASSESSEMENTS by DIRECTOR OF FINANCE

- Lack of knowledge and understanding regarding budget creation and budget monitoring are agency agency-wide problems.

- Lack of oversight and finance monitoring.  **(See attachment 3)**

## FAILURE TO COMPENSATE CENTRAL OFFICE COST CENTER (COCC)

In the May board meeting the Board of Commissioner expressed to have the cost allocation of MHA staff removed from Central Arkansas Housing Corporation by tabling the resolution presented in the meeting. **(See Attachment 4)**

- Used MHA staff without proper cost allocation to promote activities of the non-profit.  The average monthly cost is $44,000 per month which equates to $528,000 per year. **(See attachment 5)**

- Vernon Place is owned by CAHC, and the MHA Staff use of time during the period of 5-2019 to 3–2021 can equate to well over $140,000.

- COCC as of March 21, operating at a deficit with a Year-to-date balance of ($21,149) **(See attachment 6)**

- Original projection of transfer from CAHC to COCC is $400,000 beginning in June 2021. **(See Attachment 7)**

- In 2018 the RAD deals were structured, to allocate $428,000 per year to support COCC staff from Central Arkansas Housing Corporation (CAHC)

- The COCC uses funds from General Fund (Section 9 Funds) to subsidize CAHC properties. Loan of $6,000 to Elm Street on 4/28/2021. **(See attachment 8)**

## DEMANDED TRANSFER OF MHA PROPERTY

The Board of Commissioners have directed MHA staff to transfer property to the Central Arkansas Housing Corporation (CAHC). Staff was also directed to get an appraisal for both Hyde Park and Vernon Place properties. In addition, board requested to have the title for both properties cleared of all liens and encumbrances before the transfer. Total cost for MHA staff to execute The Board of Commissioner's task with third party vendors is $30,000.00. Cost does not include the Board of Commissioners hired attorney's review of the City of Little Rock proposal.

The Board is obsessed with the transferring of assets from the MHA to the Non-profit CAHC and has harassed and intimidated the Executive Director to force her into performing this task.

- The Board of Commissioners demanding immediate transfer of land does not correspond to the required HUD approvals. HUD will require approval for all transfers. **(See Attachment 9)**

- The Board of Commissioners continued efforts to force the Executive Director and staff to transfer MHA properties over to CAHC is not in the best interest of the agency. **(See Attachment 10)**

- The Procurement Coordinator reached out to the HUD Field Office regarding the Board's request to transfer properties. The Field Office responded that any properties purchased with Section 9 funds, must be approved by the local Field Office prior to any disposition. **(See attachment 11)**

- Appraisal solicitation process for Hyde Park was circumvented and delayed. The first Appraiser chosen, Commissioner Lowe would not allow and accused the Appraiser of conflict of interest which was not a true or valid statement. Mr. Lowe's insertion into the process cost additional time and costs. In the end, Mr. Lowe was not happy with the Appraiser chosen for the site and ask that another appraisal be conducted. **(See Attachment 12)**

- April 10th Retreat – Dr. Jarmon's request to conduct a Highest & best use analysis and cease development activity. **(See attachment 13)**

## COSTLY DELAYS TO DEVELOPMENT DEALS

The Board tabled Resolutions for RAD deals after 5-years and within 90 days of closing. The Board stated during a meeting they did not understand the deal and Commissioners Lowe and Anthony stated they were not comfortable with the deal points. **(See attachment 14)**

Representatives from ITEX provided a detailed timeline on April 21, 2021, requiring several days of research. Timeline demonstrated board's knowledge of involvement in approving all deal points starting with Master Development Agreement (MDA) in 2016. **(See attachment 15)**

Synopsis of Impact of Closing the Transaction was developed by Development Attorneys from Coats Rose-with emphasis on last paragraph that states that "failure to close these transactions as approved could significantly affect CAHC and MHA's relations with HUD and ADFA." **(See attachment 16)**

Memorandum dated May 26, 2021, from Coats Rose on CAHC's Ownership Role in RAD-Converted Projects. The last paragraph states "CAHC must be able to meet the financial obligation under the closing documents." **(See attachment 17)**

- The Board's unwarranted delays caused the use of additional unbudgeted funding and cost allocations. In addition, this required legal opinion on departure of deal. The Board's actions put MHA at great risk of incurring substantial costs for current RAD projects. This required use of staff and Attorney's time from April 15, 2021, to April 30, 2021, which cost the housing authority thousands of dollars in staff time and attorney fees. In addition, to the cost of over $200 to FED EX the signed documents for delivery over a weekend.

The appointment to the board shows that some of the Board members have been on the board for five plus years. Given the amount of tenure – it becomes disingenuous when members of the board; specifically, Lowe and Anthony, table important items under the guise that "they didn't approve these deals" or "don't know the details of the deals".

## WANTON WASTE OF RESOURCES/ PROCUREMENT VIOLATIONS

MHA Board of Commissioners directed staff to advance projects that was a wanton waste of staff time and federal funds.

## INTERFERENCE WITH IT STRATEGY

Numerous contracts have been awarded or steered to businesses or persons who have personal relationships with the Board of Commissioners that was not disclosed nor properly procured.

- Chairman Lowe's interference resulted in the hiring of an inexperienced IT Administrator. Since then, MHA now has had to hire a consultant to shore up the agency IT operations. **(See Attachments 18-21)**

- In addition, over the weekend of May 22, 2021, a virus crashed the system causing MHA staff to lose email access. **(See Attachment 22)**

- As of May 29, 2021, the outside Consultant was still working to fix the issue. This was totally preventable. Due to the new IT Director's inexperience the agency must spend over $20,000 in replacement equipment, staff time and Consultant time to make the necessary repairs. Due to limited IT knowledge MHA's IT Director is unable to assist in the repair work.

- See emails with assessment reports from previous IT Consultant and current emergency IT Consultant **(See attachments 23- 24)**

3

## VERNON PLACE

MHA purchased from owner on April 17, 2018. Original purchase price $197,000. City of Little Rock released liens on the condition the property be purchased by MHA. Reverters are placed on this property as a condition of sale and assurance to remain in the restricted of "house low-income housing residents.". The Board request the property be purchased under the name of Central Arkansas Housing Corporation. After MHA purchased the property and the liens were forgiven. Joe Harris a friend of Commissioner Leta Anthony and Commissioner Lowe, had his agent make an offer to buy the property. Without MHA purchasing the property, Mr. Harris would not have been able to buy the property outright.

The agency placed an offer on the property for Joe Harris to purchase the property. The buyers name changed from a buyer's agent representation to Friendship Charter School or its assigned. **(See Attachment 25)**

This is an organization in which Commissioner (Leta Anthony) was a consultant and is still currently on the Friendship Board. Commissioner Anthony was serving as MHA's Board Chair at the time of the voting. **(Please see attachment 26)**

Agent offered $350,000; MHA counteroffer was $425,000. Placeholder's offer was $309,363, with talks of the final price selling as low as $221,663. An estimated evaluation analysis was performed on the site. MHA Board of Commissioners raised questions as to why the need for MHA to make money, and that MHA should only break even. The Board of Commissioners voted to move forward with the sale of the property. **(See Attachment 27)**

Commissioner Lowe called and requested removing the reverters from the property to change city zoning requirements to allow the approval and building plans of the school. Per directive from Commissioner Lowe staff was charged with working with the owner to remove the Federal Home Loan Bank reverters and then buyer's attorney and State Land Commission attorney to remove the remaining reverters. This action would result in CAHC assuming additional cost to sell the property to Friendship at an estimated amount of $17,047.94 less proceeds. Due to penalties dating back to 2000. a State of Arkansas legislative action was set in place for removing reverters in this case. **(Please see attachment 28)**

MHA's Board of Commissioner's agenda for the sale of this land to Friendship, voted to move forward with the sale of the land.


## NON-COMPLIANCE AND VIOLATION OF PROCUREMENT POLICY INCLUDED:

- Board of Commissioner Leta Anthony was Board Chair of MHA at the time of voting for the purchase of Vernon Place and the sale to Friendship.
- Board of Commissioner Leta Anthony is currently still on the Friendship Board and served as a Consultant for Friendship at the time of voting for the purchase of Vernon Place and for the sale to Friendship. https://friendshipaspire.org/governance
- MHA Board requested staff to lower the asking price for the property to accommodate the buyer.
- Misuse and misdirection of Vernon place since July 2020 in pursuit of transfer of ownership to Friendship and then the process to abandon

## MLK

MHA Board of Commissioners suggested staff spend Capital Funds to build the four-unit complex in which HUD has approved under the Neighborhood Stabilization II "NSP II" Program. An Architect engaged in the NSP II Program and led this site, Fennell Purifoy, was originally awarded the contract for the purpose of designing homes to expend the NSP II Funding in a timely manner. After the unit at 1218 MLK burned, MHA engaged Fennell Purifoy for the purpose of redesigning the units at cost of $3,873.40.

The MHA Board directed former Executive Director Anthony Snell to solicit Fennell Purifoy to hire Woods Group, to support minority business representation. This model remained in place until shortly before Mr. Snell resigned.

The Board of Commissioner's solicitated an agreement directly with the Woods Group cost MHA a total of $11,223.40 to date for design fees only, with an additional promised cost of $42,450.00 more in A&E fees to complete the MLK project. Total proposed cost for A&E and construction for the MLK project is now $964,047.78. **(See attachment 29)**

- Board directed Executive Director to award and steer contracts to the Woods Group in the amount of $964,047.78.
- Commissioner Anthony demanding a high-profile groundbreaking for this build while the estimated amount of the current budget for this site is running in the negative. **(See Attachments 30-31)**


## ARS- ABSOLUTE RESIDENT SERVICES

ARS (Angela Tolbert) Procurement provided Board of Commissioners with three quotes from vendors to perform a Board of Commissioners retreat.  Staff was directed to pull the 4th solicitation from local attorney after bids were closed. The vendor also represents Residents in Fair Housing claims. Commissioner Lindsey directed staff to engage and eventually hire ARS to perform services. Staff contacted ARS to perform the 2019 Board of Commissioners retreat at a cost of $4,500.00.

Commissioner Anthony continued to invite ARS (Ms. Tolbert) to board meetings in which the cost to the agency that was not solicited.   Staff raised the question to the Executive Director and Ms. Tolbert informing of noncompliance of procurement. The Executive Director informed the Board of Commissioners of the non-compliance and of directing staff to generate cost for service.

MHA Board of Directors gave the directive that Ms. Tolbert would continue to participate at the meetings which forced staff, to generate a resolution for the Board of Commissioner's approval. The resolution approved was for $47,500.00. The Board of Commissioners exceeded that amount ultimately costing the agency a total of $52,000.00 for this contract. **(See attachment 32)**

Dr. Jarmon immediately terminated the contract upon her arrival. **(See Attachment 33)**

## CONFLICT OF INTEREST

Numerous contracts have been awarded or steered to businesses or persons who have personal relationships with the Board of Commissioners that was not disclosed nor properly procured. Nor did the parties recuse themselves from the vote.

## CARES ACT – Houseaboutit

MHA received three responses to the RFPs for Cares Act Funding. The Board tabled The Cares Act Funding after Commissioner Anthony asked to readvertise the RFP and expand the search. As a result of readvertising the RFP, we received two additional responses. The three most responsive proposals were awarded. The largest award by the Board went to "HouseAboutIt" in the amount of $140,000. Commissioner Anthony did not reveal that she once worked for "HouseAboutIt", nor did she recuse herself from the vote. **(See Attachment 34)**

- **Violation- Misconduct:** Commissioner Anthony did not disclose her relationship/employment with the organization that was awarded the largest contract.

## CONTRACT STEERING

The Design Group has been the recipient of numerous high-dollar contracts from both MHA and CAHC. The steering of contracts has resulted in: **(See Attachment 36)**

- Monthly payments continue to The Design Group averaging $6,200 for the maintenance of MHA's website and intergovernmental services. In recent months with MHA hiring of an IT Administrator this has resulted in duplicate services.

- **Solicitation of Developers** -Commissioner Anthony requested to have a media outreach for Section 3 resident and contractors. As a result of the outreach MHA incurred a cost of over $80,000.00 in outreach expenses. The Board wanted developers to pay for expenses without prior contractual agreements. Executive Director was forced by board to try to solicit funds from Gorman and ITEX. **(See Attachment 37)**

## INFLUENCING STAFF DECISIONS

### Hiring and Termination of Staff

**Hiring of IT Director-** Against my recommendation the Board insisted that I post a search for an IT Director. Three candidates were interviewed including one with no housing experience and little IT experience. The ED chose a candidate with over 30 years of Public Housing IT experience. However, the candidate with no housing experience was elected at a salary of $60,000 at Chairman Lowe's recommendation **(See Attachment 38)**

### Action:

- Board Chairman Lowe demanded that MHA's long-time IT Consultant contract be terminated immediately without any type of transition plan. Commissioner Lowe inserted himself into the

6

interview process for staff positions.   This behavior continues to be ongoing for both Commissioner Lowe and Commissioner Anthony.

- Commissioner's Lowe's interference resulted in hiring an IT Director that lacks the knowledge. skills and experience of both IT technology and Public Housing.  **(Please see resumes of new IT Director Kedrick Jones and recommended candidate Richard Congo. Attachment 39)**.

- Executive Director received email with resume from Commissioner Anthony in the hiring of the HCV Director's position. **(See Attachment 40)**

- **Termination of Employees**- The Board expressed concerns regarding three employees and insisted there was exposure to MHA if I did not terminate these employees.

- **Human Resources (HR), Procurement and Housing Choice Voucher (HCV)** - At the board meeting in April 2021, I was concerned with the Board insistence of hiring a Procurement and Human Resource Director (HR).  I explained that both of those positions were currently filled, and that MHA did not need a full-time HR staff person.

- While the Board was insisting that two high-salaried positions be filled, they were also directing that staff pay be reduced and 10 of the 14 HCV case managers be laid off.  This resulted in an exchange with the Board of Commissioners and Housing Choice Voucher (HCV) Director as what would be the operational consequences of such a substantial reduction in HCV staff.

- At the Board retreat held January 12, 2021 Dr. Jarmon laid out staffing plans. The Board of Commissioners reactions was to vehemently take issue with the plan and proceeded with a very unprofessional and lewd rant of allegations of various staff having affairs with other staff members and executives. The content and verbiage used was laced with sexual innuendos and profanity. Specifically, Chairman Lowe commented that "we're not going to pay pussy bills."

- **Board member pursued Deputy Director position while serving on board** –At the behest of Commissioner Leta Anthony, On October 29th I was visited by Commissioner Brandi Peterson who expressed interest in the Deputy Director's position.  I informed Commissioner Peterson that it was a conflict of interest and that she would have to resign from the board.  Commissioner Peters then stated she was interested in the position, and she could get a waiver based on what Commissioner Anthony had told her.

## EXCESSIVE SPENDING

MHA Board of Commissioners has not effectively governed MHA and has interfered with its day-to-day. The systemic actions of the Board have set up a process to under mind the agency and to cause the agency to lose money. The Board has stunted the growth of the agency.

The Board is attempting to isolate all the revenue and leave MHA agency financially vulnerable.  The Board's maleficent actions are taking millions from the agency and losing money for the agency.

**Example of excessive and egregious spending and mismanagement of agency funds and equipment.**

- **Purchase of Laptop Computers and IPAD**- Directed MHA staff to order specific type of laptops for each board member after staff had already order 5 laptops on July 27, 2020, at a cost of $2,148.00 per laptop: $10,740.00 total.  Commissioner Lowe rejected the new laptops.  Commissioner Lowe directed staff to order computers that he had chosen with specs that he wanted and sent the information to staff.  Second order of new laptops that Commissioner Lowe demanded, and which staff placed the order on September 4, 2020, cost for each laptop $4,079.68: $16,318.72 total. the other commissioners then request IPAD's in which staff ordered at a total cost of $4,286.79.  Total cost to agency for the specific request mad by the Board of Commissioners total $31,345.51 which is $20,605.51 above the budgeted amount for the Board of Commissioners devices. **(See Attachment 41)**

  Purchased computers at a higher cost when much less expensive laptops were already purchased would have served the same purpose.  **(See Attachment 42)**

## PORNOGRAPHY

**Inappropriate Conduct** - When the set of laptops that were originally ordered were returned to MHA staff by the Board, in the short time that the Board had them in their possession, it was revealed that Commissioner Jackson had inappropriate (pornography) images on the laptops.  On August 10, 2020, Jeannie Owens, HCV Director, notified executive staff and it was verified.  **(See Attachment 43)**

## HEALTH and SAFETY

Violations of EEO laws and other unprofessional acts that include harassment, retaliation, disparate treatment, bullying, rude and insulting remarks, and emails.

### Negligence, Inefficiency Use of Official Time and Health and Safety

- Board retreat held January 12, 2021, the Board did not follow basic procurement protocol for selection of retreat site, which was not ADA compliance. Staff was directed to pay invoice shortly after. **(See Attachments 44-45)**

- The Board continues to make excessive demands on staff time.  The Board disregarded staff safety from November 2020 to March 2021 by holding numerous in-person meetings.  At one point during this time MHA had nine active coronavirus positive tested staff members.  These numerous in-person meetings by the Board heightened the exposure to the staff.

## USE of OFFICIAL TIME

The Board has abused and misused staff time.

- Emails for requests of information are usually met with a short- turn -around time to provide this information to the Board.  In addition, the information requested have often been previously provided during Board or other meetings.

8

- The Board of Commissioners constant interference, intimidation, and distraction of staff from duties has affected the manner and priority in which staff conducts MHA business.

- The excessive involvement and interference in day-to-day activities of the Executive Director and staff at MHA has caused great frustration among the Executive leadership. As shown in the testaments provided by three of the previous Executive Directors, this board has attempted to steer hiring as well as the day-to-day operations of the agency on an ongoing basis.

Further documentation and the Board's own actions and words can be found at the following.

- View Board meetings online- Please go to www.mhapha.org to view our Board meetings on March 18, April, and May 13, 2021.

- The meetings for both MHA and CACH are back-to-back:

- In addition, notice board discussion during the following times as listed:
  1. **(May 13, 2021) CACH meeting- 4:20-** award of contract awarded. MHA meeting.
  2. **(May 13, 2021) 5:42-** ED compensation split; tracking of hours.
  3. **(May 13, 2021) MHA** meeting 10:18 mark.
  4. **(May 13, 2021) 17:03-**HCV Director reduction in HCV staff,
  5. **(May 13, 2021)1-hour 06min-** Auditor's report.
  6. (May 13, 2021) **1 hr. 26min-** personnel involvement.

## LEGAL AND FINANCIAL RAMIFICATIONS

The Board of Commissioners at MHA has consistently made the work environment for both the Executive Director and staff extremely hostile.

Their inability to remove themselves from interacting directly with staff and involvement with day-to-day operations has resulted in numerous lawsuits against the agency. The cost of the legal representation, settlement agreements and staff time focusing on these matters has come at great expense to the agency.

Specifically, please note the following:

1. Citing of hostile workplace environment by Mr. Anthony Snell, former Executive Director. Anthony Snell resigned on June 4, 2020, citing hostile work environment and forcible compliance with detrimental Board actions among other items. **(See Attachment 46)**

2. Whistle Blower complaint filed by Jada Johnson. Ms. Jada Johnson fearing retaliation filed a complaint under the Whistle Blower laws. **(See Attachment 47)**

3. Lawsuit against the Board by Marshall Nash, former employee. Mr. Nash filed a formal suit on October 15, 2020 in which he asserts that members of the Board of Commissioners misrepresented his employment status and stated to the Office of Inspector General (OIG) that he was placed on Administrative Leave by the Board. Payroll records do not support the statement. **(See Attachment 48)**

9

4.  Lawsuit settlement against the agency by Ms. Dana Arnette, former employee.  Ms. Arnette filed a suit against the agency on or about August 9, 2019.  **(See Attachment 49)**

5.  Letter to the Mayor and Board of Directors of the City of Little Rock. Letter on behalf of the employees at the Little Rock Housing Authority dba Metropolitan Housing Alliance requesting the removal of the Board on June 25, 2020. **(See Attachment 50)**

# Supporting Documents

## Table of Contents

| Attachment | Subject | Page # |
|---|---|---|
| 1. | Audit Finding | 2 |
| 2. | Audit Finding | 4 |
| 3. | Financial Assessment | 6 |
| 4. | Funds Transfer Request | 8 |
| 5. | Use of Staff Time for CAHC | 11 |
| 6. | COCC Negative Balance YTD 3/31/21 | 13 |
| 7. | Projected RAD Funds from CAHC | 16 |
| 8. | Transfer of Funds COCC to CAHC (Elm Street) | 18 |
| 9. | Transfer of Property Memo | 21 |
| 10. | Transfer of Property | 24 |
| 11. | Field Office Opinion of Transfer of Land | 27 |
| 12. | Appraiser Declined | 30 |
| 13 | ED's Presentation of Highest & Best Use Analysis | 32 |
| 14. | Tabled ITEX RAD Transactions | 35 |
| 15. | Board Denial/ ITEX Proof of Knowledge | 41 |
| 16. | Attorney Synopsis of Impact of Closing ITEX Deal/ Transaction Timeline | 44 |
| 17. | Attorney Memo on CAHC's Ownership Role in RAD Projects | 48 |
| 18. | Interview of IT Candidates by Chairperson Lowe | 50 |
| 19. | Chairperson Interference on IT Position | 52 |
| 20. | MHA Staff IT Results | 54 |
| 21. | IT Comparison of Candidates | 56 |
| 22. | IT Crash | 59 |
| 23. | IT Assessment- C. Truex (Consultant) | 61 |
| 24. | IT Assessment- S. Maddox (Former Consultant) | 64 |
| 25. | Vernon Place Disposition | 67 |
| 26. | Friendship Conflict | 71 |
| 27. | Resolution Authorizing transfer of Vernon Place | 75 |
| 28. | Vernon Place Update | 79 |
| 29. | MLK Recap | 81 |
| 30. | MLK Update | 84 |
| 31. | ED Refusal to Commit to MLK Deadline | 88 |
| 32. | ARS- Conflict of Interest | 92 |
| 33. | ARS Termination | 96 |
| 34. | CARES ACT Award | 98 |
| 35. | Resolution from OIG on New Operating Procedures | 102 |
| 36. | Design Group Invoice Summary | 104 |
| 37. | Cost Sharing Request of Developers | 106 |
| 38. | Insertion Into Position Posting | 108 |

| 39. | Comps for IT Position | 111 |
|---|---|---|
| 40. | Influence the selection of HCV Director | 114 |
| 41. | Laptop Cost | 116 |
| 42. | Laptop Specification Change Request | 118 |
| 43. | Report of Pornography | 122 |
| 44. | Selection of Retreat Facility- No Procurement | 126 |
| 45. | Payment Request for Retreat Facility – No Procurement | 131 |
| 46. | Hostile Work Environment- Previous ED | 135 |
| 47. | Whistle Blower Protection | 137 |
| 48. | Lawsuit- Marshall Nash V. MHA | 139 |
| 49. | Lawsuit- Dana Arnette V. MHA | 142 |
| 50. | Employee Complaint | 144 |

# Attachment 1



**MHA**
METROPOLITAN HOUSING ALLIANCE

**Housing Authority of the City of Little Rock**
**Schedule of Findings and Questioned Costs (Continued)**
**Year Ended December 31, 2019**

**Findings required to be Reported by *Government Auditing Standards***

| Reference Number | Finding |
|---|---|

2019-001    Criteria or Specific Requirement – Management is responsible for establishing and maintaining effective control financial reporting.

Condition – The Authority did not perform account reconciliations over accounts payables, accounts receivable and allowances, expenses, other liabilities prepaid assets, and the schedule of federal awards, therefore, audit adjustments were proposed and recorded and some audit adjustments were proposed but not recorded in order to present the financial statements in accordance with generally accepted accounting principles. During the audit of the Authority's blended component, CAHC, several adjustments were necessary and it did not appear that adequate supervision was performed by the Authority.

***Corrective Action Plan:***

**Contact Person:** Finance Director

**Planned Actions:** Management will review the approval process of financial reporting to ensure proper reconciliations are done on a monthly basis and reviewed. Management will also set up reconciliation procedures and month end and annual financial reporting procedures. Management will also work closely with development and the CAHC auditors, as well as LRHA auditors throughout the year to ensure that the correct adjustments are performed.

# Attachment 2



**MHA**
METROPOLITAN HOUSING ALLIANCE

**Housing Authority of the City of Little Rock**
**Schedule of Findings and Questioned Costs (Continued)**
**Year Ended December 31, 2019**

| Reference Number | Finding |
|---|---|

**Public and Indian Housing – CFDA 14.850**
**U.S. Department of Housing and Urban Development**
**Award Year 2019**

2019-006     Criteria or Specific Requirement – Allowable Costs – Management is responsible for establishing and maintaining effective internal control over compliance.

Condition – The Authority did not maintain adequate documentation of how payroll costs was allocated between the programs.

Questioned Costs: None

***Corrective Action Plan:***

**Contact Person:** Finance Director

**Planned Actions:** To ensure employee wage allocations are properly posted and approved, all PAFs (Payroll Authorization Form) will note the percentage to charge each department. This includes new hires and any change in existing employees, such as job duties or pay rates. The allocations calculated for wages will also be applied when expensing monthly employee benefits. Procedures will be written to ensure compliance.

# Attachment 3

# HOW DID WE GET HERE?

► Lack of knowledge and understanding regarding budget creation and budget monitoring are agency-wide problems

► The presentation and approval of program budgets with negative cash flows

► Uninformed staff regarding the budget process and 3rd-party contract procedures

► Agency staff lacks understanding of the big picture

► Lack of oversight and finance monitoring

► Lack of departmental procedures and controls

► Lack of understanding of the actual scope of services from 3rd parties

► Defining and understanding needs vs. wants

► Lack of communication between property managers and Executive Office

# Attachment 4

## EXPENSES PAID BY MHA ON BEHALF OF CAHC

Bank Balance as of 4/30/21

| | Date | Expenses | Amount |
|---|---|---|---|
| | 2/23/2021 | BKD CAHC Audit Fees | |
| | 3/30/2021 | 50% Contract Executive Directors Wages Pay Period 02/27/21 | |
| * | 4/14/2021 | 50% Contract Executive Directors Wages Pay Period 04/10/21 | |
| | 4/14/2021 | 50% Executive Director's Wages Pay Period 04/10/21 | |
| | 4/14/2021 | 50% Executive Director's FICA Pay Period 04/10/21 | |
| * | 4/23/2021 | Coats Rose Legal /Mixed Finance Redevlopment | |
| | 4/23/2021 | Coats Rose Legal /Towers Post Closing | |
| | 4/23/2021 | Coats Rose Legal /Sunset-Stephens-Central RAD | |
| | 4/23/2021 | Coats Rose Legal / Madison Heights III Year 15 | |
| | 4/28/2021 | 50% Executive Director's Wages Pay Period 04/24/21 | |
| | 4/28/2021 | 50%v Executive Director's FICA Pay Period 04/24/21 | |
| * | 4/30/2021 | The McVay Firm/Servce for submitting Franchise Tax | |
| | | **Total Reimbursement for Board Approval** | |
| | | Bank Balance after Reimbursement | |

* Notes
**Contract Wages**
Executive Director's new contract begin during payroll period ending 04/10/21. Earnings were based on the previous contract rate at 1 week and the new rate on week 2. Both at 50% of Wages

**Coat Rose**
RAD Deals, delays, meeting requirements and the need for resolutions and amendments.

**Franchise Tax**
Services for preparing and filing 2021 CAHC franchise taxes and related entites. Updating entity Officers included.

**RESOLUTION NO. 6777**

Board Member_____of the Board of Commissioners of the Housing Authority of the City of Little Rock, Arkansas D/B/A Metropolitan Housing Alliance introduced the following Resolution and moved for its adoption:

### RESOLUTION AUTHORIZING THE EXECUTIVE DIRECTOR TO TRANFER FUNDS FROM CENTRAL ARKANSAS HOUSING CORPORATION TO THE METROPOLITAN HOUSING ALLIANCE

**BE IT RESOLVED,** that at a duly constituted meeting of the Board of Commissioners of the Housing Authority of the City of Little Rock, Arkansas d/b/a Metropolitan Housing Alliance ("MHA") held on May 13, 2021 the Board of Commissioners did make the following decision and request staff to act as follows;

**WHEREAS,** the MHA has determined professional services rendered by MHA vendors; and

**WHEREAS,** the services rendered are in direct correlation of performing business for the Central Arkansas Housing Corporation "CAHC; and

**WHEREAS,** the MHA has paid the Vendors for the work performed; and

**WHEREAS,** MHA determined the CAHC qualified expenses shall be reimbursed to MHA in the amount of **$36,390.12.**

**NOW, THEREFORE BE IT RESOLVED BY THE BOARD OF COMMISSIONERS OF THE HOUSING AUTHORITY OF THE CITY OF LITTLE ROCK, ARKANSAS, D/B/A METROPOLITAN HOUSING ALLIANCE ("MHA") THAT;**

The Board of Commissioners hereby authorizes Dr. Nadine Jarmon, the MHA Executive Director to transfer funds in the amount of $34,390.12 from the Central Arkansas Housing Corporation account to balance the invoices paid by the Metropolitan Housing Alliance in conjunction with executing task for the business of CAHC.

Commissioner _____ seconded the motion and upon roll call the following vote was recorded:

| | |
|---|---|
| Ayes: | Commissioners _____ |
| Absent: | Commissioners_____ |
| Abstain: | Commissioners_____ |
| Nays: | Commissioners_____ |

The Chairperson thereupon declared the motion carried and the resolution adopted.

**IN WITNESS WHEREOF,** each of the undersigned has hereunto set his hand of the Authority this 13th day of May.

_____           _____
**Kenyon Lowe, Chairman**                          **Dr. Nadine Jarmon, Executive Director**

# Attachment 5

| Property | Total Staff Hours-Calls | Total Staff Hours-Meeeting | Total Staff Hours-Reports-Emails | Total Staff Hours- Other | Total Cost Staff Hours |
|---|---|---|---|---|---|
| Dr. Jarmon | 60 hours | 93hrs | 156hrs | 309 hours | |
| Lisa D | 40 | 35 | 45 | 120 hours | |
| Jada | 40 Hours | 10 | 40 hours | 90 | |
| Ilana | 27 | 20 | 16 | 63 | |
| Monique | 0 | 2 | 10 | 12 | |
| Andy | 4 | 2 | 26 | 32 | |
| Tamera | 4 | 16 | 24 | 44 | |
| Ivan | 16 | 16 | 12 | 44 | |
| Kedrick | 4 | 2 | 2 | 8 | |
| Other Staff- | 16 | 16 | 18 | 50 | |
| | | | | | |
| Total | | | | 343 | |

11

# Attachment 6

# COCC as of March 31, 2021 Y-T-D Expenditures Report

| Account # | Account Title | Budget | March | Y-T-D | Budget Balance | % |
|---|---|---|---|---|---|---|
| 400961-420300 | Worker's Comp. | | | | | |
| 400961-420400 | Other Insurance | | | | | |
| | Total Insurance Expense | | | | | |
| **Administration** | | | | | | |
| | Administration | | | | | |
| | Total Administration | | | | | |
| | | | | | | |
| 96900 | Total Operating Expenditures | | | | | |
| | | | | | | |
| | Cash Flow from Operations | | | | | |

# COCC as of March 31, 2021 Y-T-D Expenditures Report

| Account # | Account Title | Budget | March | Y-T-D | Budget Balance | % |
|---|---|---|---|---|---|---|
| **Operating Income:** | | | | | | |
| | **Bookkeeping fees** | | | | | 63% |
| | **Management Fees** | | | | | 29% |
| | **Tenant Assistance Service Fees** | | | | | #DIV/0! |
| | **Grant Revenue** | | | | | #DIV/0! |
| | **Developer Fees** | | | | | 0% |
| | **Investment Income** | | | | | 4% |
| | **Other Income** | | | | | 13% |
| | **Total Operating Income** | | | | | 19% |
| **Operating Expenditures:** | | | | | | |
| **Administrative** | | | | | | |
| | **Administrative Salaries** | | | | | 23% |
| | **Employee Benefits - Administrative** | | | | | 14% |
| | **Auditing Fees** | | | | | 0% |
| | **Advertising and Marketing** | | | | | 13% |
| | **Consulting Fees** | | | | | 0% |
| | **Board Expense** | | | | | 0% |
| | **Web Services** | | | | | 0% |
| | **Office Expenses** | | | | | 16% |
| | **Legal Expense** | | | | | 5% |
| | **Travel** | | | | | 27% |
| | **Other Administrative Costs** | | | | | 37% |
| | **Total Administrative** | | | | | 18% |
| **Maintenance** | | | | | | |
| | **Labor** | | | | | #DIV/0! |
| | **Maintenance material** | | | | | #DIV/0! |
| | **Trash Removal** | | | | | #DIV/0! |
| | **Employee Benefits - Maintenance** | | | | | #DIV/0! |
| | **Maint. Contract:** | | | | | #DIV/0! |
| | **Other Misc Contracts** | | | | | 20% |
| | **Total Maintenance** | | | | | 20% |
| **Utilities** | | | | | | |
| | **Water** | | | | | #DIV/0! |
| | **Electricity** | | | | | #DIV/0! |
| | **Sewer** | | | | | #DIV/0! |
| | **Total Utilities** | | | | | #DIV/0! |
| **Insurance** | | | | | | |
| | **Property** | | | | | 47% |
| | **General Liability** | | | | | 13% |

14

# Attachment 7

RAD Conversion Revenue by Fiscal Year

Management Fees
Bookkeeping Fees
Total Developer Fee

Cumberland
Parris
Powell
Tower Stablization
8609
Sunset
Madison Heights I
Madison Heights II
Homes at Granite Mountain
Total Ground Lease

Towers
Sunset
Madison Heights
Homes at Granite Mountain
Other -Towers Service Fees
Annual Totals

Annual Contribution to COCC

Available After COCC Transfer

Balance YR End



# Attachment 8


**REGIONS**

Regions Bank
Little Rock Main
400 West Capitol Ave, Suite 25
Little Rock, AR 72201

HOUSING AUTHORITY OF THE CITY
OF LITTLE ROCK ARKANSAS
GENERAL FUND 4-4
100 S ARCH ST
LITTLE ROCK AR 72201-2302

**ACCOUNT #**

053

| | |
|---|---|
| Cycle | 25 |
| Enclosures | 88 |
| Page | 2 of 27 |

## DEPOSITS & CREDITS (CONTINUED)

| | | |
|---|---|---|
| 04/16 | Quick Deposit - Thank You | |
| 04/16 | Quick Deposit - Thank You | |
| 04/19 | Housing Auth L R Cash Disb General Fund  Trans From S8 | |
| 04/20 | Regions Bank   Acct Trans Housing   Tdawson | |
| 04/20 | Housing Auth L R Cash Disb General Fund  Trans From S8 | |
| 04/21 | Regions Bank   Acct Trans Housing   Tdawson | |
| 04/22 | Quick Deposit - Thank You | |
| 04/22 | Quick Deposit - Thank You | |
| 04/23 | Quick Deposit - Thank You | |
| 04/26 | HUD  Treas 310    Misc Pay Little Rock Ho 716006843860103 | |
| 04/26 | HUD  Treas 310    Misc Pay Little Rock Ho 716006843860103 | |
| 04/27 | Quick Deposit - Thank You | |
| 04/27 | Housing Auth L R Cash Disb General Fund  Trans From S8 | |
| 04/29 | Housing Auth L R Cash Disb General Fund  Trans From S8 | |

Total Deposits & Credits

## INTEREST

| | | |
|---|---|---|
| 04/30 | Interest Payment | |

## WITHDRAWALS

| | | |
|---|---|---|
| 04/01 | AFLAC        Insurance Little Rock Ho 58517582256 | |
| 04/06 | Principal Peris  Plic-Peris Housing Author 4-3282400000384 | |
| 04/12 | Regions Bank   Acct Trans Housing   Tdawson | |
| 04/20 | Regions Bank   Acct Trans Housing   Tdawson | |
| 04/26 | Regions Bank   Acct Trans Housing   Tdawson | |
| 04/27 | Regions Bank   Acct Trans Housing   Tdawson | |
| 04/28 | Regions Bank   Acct Trans Housing   Tdawson | |
| 04/29 | Regions Bank   Acct Trans Housing   Tdawson | |
| 04/29 | AFLAC        Insurance Little Rock Ho 58517981170 | |

Total Withdrawals

## FEES

| | | |
|---|---|---|
| 04/09 | Analysis Charge      03-21 | |

## CHECKS

| Date | Check No. | Amount | Date | Check No. |
|---|---|---|---|---|
| 04/06 | | | | |
| 04/06 | | | | |
| 04/02 | | | | |
| 04/05 | | | | |
| 04/02 | | | | |
| 04/09 | | | | |
| 04/06 | | | | |
| 04/06 | | | | |
| 04/12 | | | | |
| 04/07 | | | | |
| 04/13 | | | | |
| 04/08 | | | | |



**REGIONS**

**Regions Bank**
Little Rock Main
400 West Capitol Ave, Suite 25
Little Rock, AR 72201

HOUSING AUTHORITY OF THE CITY
ELM STREET
100 S ARCH ST
LITTLE ROCK AR 72201-2302

**ACCOUNT #**

| | |
|---|---|
| | 053 |
| Cycle | 26 |
| Enclosures | 0 |
| Page | 1 of 3 |

## PUBLIC FUNDS INTEREST CHECKING
April 1, 2021 through April 30, 2021

### SUMMARY

Beginning Balance
Deposits & Credits
Net Interest Earned
Withdrawals
Fees
Automatic Transfers
Checks
Ending Balance

Minimum Balance
Annual Percentage Yield Earned
Interest This Period
Average Collected Balance
2021 YTD Interest

1 of 3

### DEPOSITS & CREDITS

| 04/01 | Quick Deposit - Thank You |
| 04/01 | Little Rock Hous Vendor Pmt Elm Street Com |
| 04/05 | Quick Deposit - Thank You |
| 04/06 | Quick Deposit - Thank You |
| 04/07 | Quick Deposit - Thank You |
| 04/09 | Quick Deposit - Thank You |
| 04/26 | Quick Deposit - Thank You |
| 04/28 | Quick Deposit - Thank You |
| 04/28 | Regions Bank   Acct Trans Housing      Tdawson |

Total Deposits & Credits

### INTEREST

| 04/30 | Interest Payment |

### WITHDRAWALS

| 04/20 | Regions Bank   Acct Trans Housing      Tdawson |

### FEES

| 04/09 | Analysis Charge   03-21 |

For all your banking needs, please call 1-800-REGIONS (734-4667)
or visit us on the Internet at www.regions.com. (TTY/TDD 1-800-374-5791)



**Thank You For Banking With Regions!**
2021 Regions Bank Member FDIC. All loans subject to credit approval.

# Attachment 9



**MHA**
METROPOLITAN HOUSING ALLIANCE

**100 South Arch Street**
**Little Rock, AR 72201**
**(501) 340-4821 / (501) 340-4845 (fax)**

## MEMORANDUM

To:        CAHC Board of Directors
           MHA Board of Commissioners
           Dr. Nadine Jarmon, MHA Executive Director

From:      Sherrill Hampton, MHA Deputy Director

Date:      March 28, 2021

Re:        MHA Board's Request for Properties to be Transferred to CAHC

The following paragraphs provide information on the properties MHA's Board of Commissioners requested to be transferred to CAHC.  Note that all properties when transferred will be done so with a "reverter" that ensures that the property will be used for the creation of affordable housing for low- and moderate-income individuals and families.  This "reverter" is a part of the original conveyance or intent of the funding received and its requirement follows the property as it relates to any conveyances that follow the original conveyance.

➤  There are approximately fifty-five (55) vacant parcels that are owned by MHA and of this
   number:

   •  Twenty-two (22) parcels are not buildable and/or cannot be used for residential
      development.

   • Thirty-three (33) parcels are buildable and include the following:
      o  Nineteen (19) parcels designated as the Hyde Park Project.

**Page 2**
**Proposed Property Transfers**

- o  Five (5) parcels were funded by the City's NSP II Program and require notification to the City of Little Rock as it relates to any transfer.  Note that the MLK property is included in this group as NSP II funds were involved in the purchase.

- o  Eight (8) parcels that came from the Land Commission and have title issues.

- o  One (1) parcel on Center Street (#34L0200905700) that has title issues. Listed as owned by the Arkansas Highway Commission.

- • Note that there is one large parcel on Schiller Street that also has title issues and is not included in the group above.

- • The Vernon Place Project site (41 lots) is <u>not</u> included in the above group as that property is already owned by CAHC.

*Property Transfer Implementation*:
The following steps are being undertaken to implement the proposed transfers:

➢  MHA staff will utilize attorneys from the previously procured pool for legal services to complete the transfer.  A request for exact quotes will be sent on 03/29/21.  The return date for all quotes will be April 7, 2021.  MHA will ask all attorneys to complete the transfer process within thirty (30) days of an approved task order.  For any parcel with title issues that would take longer than thirty (30) days to clear title and complete the transfer, the attorney would be required to notify MHA staff immediately before proceeding and also state if additional expenses would be incurred.

➢  MHA staff will create a letter of notification for the Executive Director's signature for submittal to the City of Little Rock on 03/30/21 as it relates to the five (5) parcels purchased with NSP II funds.

➢  MHA staff will keep the MHA Board of Commissioners and the CAHC Board of Directors informed of the progress of the transfers on a monthly basis, including those parcels that may need more extensive actions to clear the applicable property title as well as require additional associated costs to complete those actions.

# Attachment 10

## RE: Status of Transfer of Vernon Place and Hyde Park

jada johnson

Tue 5/4/2021 2:12 PM

To: Nadine Jarmon; shampton; Lisa Dickerson

Dr. Jarmon,

The board has requests to ensure ALL of the titles associated with the property free and clear. To avoid audit findings, MHA staff is researching the origination of the funds used to purchase the site located at Hyde Park. If the funds that were used are identified as former Public Housing, we will need to submit a Section 18 Disposition Application.

As for the property already in the name of the Central Arkansas Housing Corporation, Vernon place, this property is under a title review and should be complete within a matter of a few weeks. If additional title issues are found, this property can be remediated by the attorney.

Hyde Park shall be transferred within the same amount of time.

Have a great day,

**Jada Johnson**
Metropolitan Housing Alliance
Procurement Coordinator
100 South Arch Street
Little Rock, Arkansas 72201
Phone| 501.340.4834

**From:** Nadine Jarmon
**Sent:** Tuesday, May 4, 2021 12:37 PM

**Subject:** Status of Transfer of Vernon Place and Hyde Park

Just got off the phone with Chairman Lowe and he wanted to know the status of the "transfer of land" from MHA to CAHC for Hyde Park and Vernon Place. I told him we have procured the firm to do the appraisal and his response to me was that one has nothing to do with the other and he wanted these two properties "quick deeded" to CAHC today if possible.

Can someone please advise of next steps or why we can or can not do this?

*Nadine M. Jarmon, PhD*
*Executive Director*
*Metropolitan Housing Alliance*
*100 S. Arch Street*
*Little Rock, AR 72201*
*501-340-4805 (Office)*

**Board Meeting Agenda 06173031**



Mon 6/14/2021 10:14 AM



Please add the following items to the agenda:

Update Transfer of properties Too CAHC
Property rental for CAHC (1010 Wolfe)
EHV (Emergency Housing Vouchers) Update
NAHRO Membership (Fall Conference)


*Kenyon K. Lowe, Sr. NCC Commissioner*
*Chairman, MHA Board of Commissioners*
*The Housing Authority of the City of Little Rock dba*
*Metropolitan Housing Alliance*

# Attachment 11

**ilana mckinney**

| | |
|---|---|
| **From:** | Nadine Jarmon |
| **Sent:** | Thursday, May 27, 2021 4:46 PM |
| **To:** | ilana mckinney |
| **Subject:** | FW: Guidance Needed |

**Sent:** Tuesday, May 4, 2021 3:00 PM
**To:** jada johnson; LINDSEY, JEFFREY D; Grant, Corey D
**Cc:** Nadine Jarmon;
**Subject:** RE: Guidance Needed

MHA-

I know you have been working on the acquisition dates/use of funds for these parcels. I want everyone to be aware that anytime a housing authority uses section 9 funds to acquire a property PHAs should secure acquisition approval from the local Field Offices to make sure it's in compliance with among other things, site and neighborhood standards, Part 50 or 58 and if it is an eligible use of the Section 9 funds. This insulates HUD and the PHA from environmental or other factors which may have a negative impact for the housing authority/community as a whole.

Our local OGC representative, or myself are not aware of any acquisition applications being submitted by MHA, and thus my request for the dates/uses of funds for the purchases.

If MHA is considering transferring these parcels, before this action, HUD needs to be made aware if any section 9 funds were used to <u>acquire or maintain</u> the parcels of land you describe below. Maintenance costs including insurance, taxes, yard maintenance, erosion control, monitoring the property etc... If a PHA spent Section 9 funds on the acquisition or maintenance of the property then the <u>PHA is required</u> to obtain HUD approval to dispose of the property either through RAD, Section 18, Part 200 or Section 32.

Please let me know if you have any questions. Once you are able to provide the acquisition dates/uses of funds for all the mentioned parcels then we can look at next steps in the process.

**Anthony Landecker**
Director-Office of Public Housing
Little Rock Field Office
501-918-5753

**From:** jada johnson
**Sent:** Tuesday, February 16, 2021 12:12 PM
**To:** Landecker, Anthony S <                              >; LINDSEY, JEFFREY D <                              > Grant, Corey D <
**Cc:** Nadine Jarmon
**Subject:** Guidance Needed

27

Hello Mr. Landecker,

Keeping in the spirit of the Housing Act of 1937, MHA has acquired and purchased quite a few parcels of land, by way of State Land commissioner and referral request. Most of the parcels have been purchased with funds that are considered non-restricted. However, there are a few that have been purchased with funds from the sale of approved public housing demo disposed units. All of the parcels are vacant land and are not listed in PIC.

The Board of Commissioners is requesting to have "ALL" vacant land, acquired with the various funds, to be transferred from the Little Rock Housing Authority into the non-profit Central Arkansas Housing Corporation's inventory. In every effort to comply with HUD rule and meet the need of the Board of Commissioners, I am requesting your guidance to perform the task within the purview of HUD's required guidelines.   Before performing this action, we would like your feedback on how we should move forward. Thank you in advance for your assistance in the matter.

Jada Johnson

MHA Contracts, Capital Fund and Procurement Coordinator

501-340-4834

# Attachment 12

From: ███████████████████████
Sent: Friday, April 9, 2021 4:30 PM
To: jada johnson
Subject: Re: 4701 Charles Bussey

I understand, thanks

On 4/9/2021 4:28 PM, jada johnson wrote:

> Hello Mr. Pattison,
>
> To be honest, I am not really sure. I am only following the directive as provided by Mr. Kenyon Lowe Sr. MHA Board of Commissioner Chairperson.
>
> Jada Johnson
>
> **From: Dwight Pattison** ████████████████████████████████
> **Sent:** Friday, April 9, 2021 4:18 PM
> **To:** jada johnson ████████████████████
> **Subject:** Re: 4701 Charles Bussey
>
> Was is a problem with Braden Chadick being related to the attorney?
>
> On 4/9/2021 4:14 PM, jada johnson wrote:
>
>> Hello Mr. Pattison,
>>
>> I've just been notified, the board of commissioners have made a decision to re-bid the project with a different vendor. Thank you for your time and I hope to do business with you in the future.
>>
>>
>> Jada Johnson
>> MHA Contracts, Capital Fund and Procurement Coordinator
>> 501-340-4834
>>
>>
>> **From: Dwight Pattison** ████████████████████████████
>> **Sent:** Thursday, April 8, 2021 5:40 PM

30

# Attachment 13

# MHA
# BOARD OF
# COMMISSIONERS
# RETREAT
## APRIL 10, 2021

# USE OF OTHER PROPERTIES OWNED

MHA owns a number of other properties, in addition to several properties that have been transferred to its nonprofit subsidiary, *Central Arkansas Housing Corporation* (CAHC), that possess great potential for furthering the provision of affordable housing in the City of Little Rock. Several of the properties are commercial sites.

Staff is recommending that a "**highest and best use analysis**" be undertaken and a plan developed to help guide the MHA and CAHC Boards as they set policy regarding the use of these properties.



# Attachment 14

## Master Development Agreement



Kenyon Lowe Sr ◄ ███████████████

Tue 4/20/2021 7:42 AM

To: Khayyam M. Eddings ◄ ███████████

Cc: Louis Jackson ◄ ████████     Leta Anthony ███████████ ;  ████████████

████████  Branndii Peterson ◄ ███████████ ►; Nadine Jarmon ◄ █████████████

📎 1 attachments (5 MB)

MDA ltex and MHA.PDF.

Atty. Eddings,

The Board (MHA Board of Commissioners, for the first time, has laid eyes on the MDA
(Master development Agreement) with an unauthorized signature representing the
Agency.  We are asking for you to review this and provide a legal opinion as to the options
available to the Board.

*Kenyon K. Lowe, Sr. - NCC Commissioner*
*Chairman, MHA Board of Commissioners*
*Little Rock Housing Authority dba Metropolitan*
*Housing Alliance*

35

RESOLUTION NO. 6773

Commissioner _____ of the Board of Commissioners of the Little Rock Housing Authority of the City of Little Rock, Arkansas d/b/a Metropolitan Housing Alliance introduced the following Resolution and moved for its adoption:

**RESOLUTION AUTHORIZING THE LITTLE ROCK HOUSING AUTHORITY OF THE CITY OF LITTLE ROCK, ARKANSAS D/B/A METROPOLITAN HOUSING ALLIANCE TO EXECUTE ANY AND ALL DOCUMENTS AND TO TAKE SUCH ACTION NECESSARY OR DESIREABLE TO; (I) FACILITATE THE RAD (AS DEFINED HEREIN) COVERSION OF MADISION HEIGHTS PHASE I (THE PROJECT); (II) TO PROVIDE CERTAIN DEVELOPOMENT FINANCING FOR THE PROJECT; AND (III) TAKE SUCH OTHER ACTIONS NECESSARY, CONVENIENT, OR APPROPRIATE TO CARRY OUT THIS RESOLUTION**

**WHEREAS,** the Housing Authority of the City of Little Rock, Arkansas, d/b/a Metropolitan Housing Alliance ("MHA" or the, "Authority") held on April 30, 2021, a duly constituted meeting of its Board of Commissioners; and

**WHEREAS,** Central Arkansas Housing Corporation, an Arkansas non-profit corporation ("CAHC"), was formed by MHA in part to assist the Authority in providing safe, decent, and sanitary housing in the city of Little Rock for low-income and other persons, and serves as the sole member of CAHC; and

**WHEREAS,** University Heights Associates, LP ("Seller"), a Missouri limited partnership, currently owns the Project; MHA MH I GP, LLC is the General Partner of Seller and CAHC is the limited partner of Seller.

**WHEREAS,** CAHC is the sole member of MHA MH I GP, LLC, an Arkansas limited liability company ("General Partner"), which serves as the General Partner of MHA MH I, LP ("Buyer"), an Arkansas limited partnership (heretofore defined as "Seller") (each of CAHC, General Partner, Seller and Buyer is referred to individually as a "Company" and collectively as the "Companies"); and

**WHEREAS,** the Buyer was formed to acquire, develop, rehabilitate, own, maintain and operate a 140-unit multifamily apartment complex known as Madison Heights Phase I, located in Little Rock, Pulaski County, Arkansas (the "Improvements") to provide affordable housing for low-income persons/households and other persons/households, and to lease from MHA the property on which the Improvements are located (collectively, the "Project"); and

**WHEREAS,** the U.S. Department of Housing and Urban Development ("HUD") has authorized the conversion of the Project from public housing to Section 8 assistance under the Rental Assistance Demonstration ("RAD") program, and in connection therewith, the Buyer desires to enter into a RAD Use Agreement, RAD PBV HAP Contract, Partial Release of Declarations of Trust, various subordination agreements, and related documents to be entered into by the Companies, including but limited to certifications, assignments and such other documents,

RESOLUTION NO. <u>6774</u>

Commissioner _____ of the Board of Commissioners of the Little Rock Housing Authority of the City of Little Rock, Arkansas d/b/a Metropolitan Housing Alliance introduced the following Resolution and moved for its adoption:

**RESOLUTION AUTHORIZING THE LITTLE ROCK HOUSING AUTHORITY OF THE CITY OF LITTLE ROCK, ARKANSAS D/B/A METROPOLITAN HOUSING ALLIANCE TO EXECUTE ANY AND ALL DOCUMENTS AND TO TAKE SUCH ACTION NECESSARY OR DESIREABLE TO; (I) FACILITATE THE RAD (AS DEFINED HEREIN) COVERSION OF MADISION HEIGHTS PHASE II (THE PROJECT); (II) TO PROVIDE CERTAIN DEVELOPOMENT FINANCING FOR THE PROJECT; AND (III) TAKE SUCH OTHER ACTIONS NECESSARY, CONVENIENT, OR APPROPRIATE TO CARRY OUT THIS RESOLUTION**

**WHEREAS,** the Housing Authority of the City of Little Rock, Arkansas, d/b/a Metropolitan Housing Alliance ("MHA" or the, "Authority") held on April 30, 2021, a duly constituted meeting of its Board of Commissioners; and

**WHEREAS,** Central Arkansas Housing Corporation, an Arkansas non-profit corporation ("CAHC"), was formed by MHA in part to assist the Authority in providing safe, decent, and sanitary housing in the city of Little Rock for low-income and other persons, and serves as the sole member of CAHC; and

**WHEREAS,** Madison Heights II, LP ("Seller"), a Missouri limited partnership, currently owns the Project; MHA MH II GP, LLC is the General Partner of Seller and CAHC is the limited partner of Seller.

**WHEREAS,** CAHC is the sole member of MHA MH II GP, LLC, an Arkansas limited liability company ("General Partner"), which serves as the General Partner of MHA MH II, LP ("Buyer"), an Arkansas limited partnership (heretofore defined as "Seller") (each of CAHC, General Partner, Seller and Buyer is referred to individually as a "Company" and collectively as the "Companies"); and

**WHEREAS,** the Buyer was formed to acquire, develop, rehabilitate, own, maintain and operate a 101-unit multifamily apartment complex known as Madison Heights Phase II, located in Little Rock, Pulaski County, Arkansas (the "Improvements") to provide affordable housing for low-income persons/households and other persons/households, and to lease from MHA the property on which the Improvements are located (collectively, the "Project"); and

**WHEREAS,** the U.S. Department of Housing and Urban Development ("HUD") has authorized the conversion of the Project from public housing to Section 8 assistance under the Rental Assistance Demonstration ("RAD") program, and in connection therewith, the Buyer desires to enter into a RAD Use Agreement, RAD PBV HAP Contract, Partial Release of Declarations of Trust, various subordination agreements, and related documents to be entered into by the Companies, including but limited to certifications, assignments and such other documents,

**RESOLUTION NO. 6775**

Commissioner _____ of the Board of Commissioners of the Little Rock Housing Authority of the City of Little Rock, Arkansas d/b/a Metropolitan Housing Alliance introduced the following Resolution and moved for its adoption:

> **RESOLUTION AUTHORIZING THE LITTLE ROCK HOUSING AUTHORITY OF THE CITY OF LITTLE ROCK, ARKANSAS D/B/A METROPOLITAN HOUSING ALLIANCE TO EXECUTE ANY AND ALL DOCUMENTS AND TO TAKE SUCH ACTION NECESSARY OR DESIREABLE TO; (I) FACILITATE THE RAD (AS DEFINED HEREIN) COVERSION OF HOMES AT GRANITE MOUNTAIN (THE PROJECT); (II) TO PROVIDE CERTAIN DEVELOPOMENT FINANCING FOR THE PROJECT; AND (III) TAKE SUCH OTHER ACTIONS NECESSARY, CONVENIENT, OR APPROPRIATE TO CARRY OUT THIS RESOLUTION**

**WHEREAS,** the Housing Authority of the City of Little Rock, Arkansas, d/b/a Metropolitan Housing Alliance ("MHA" or the, "Authority") held on April 30 2021, a duly constituted meeting of its Board of Commissioners; and

**WHEREAS,** Central Arkansas Housing Corporation, an Arkansas non-profit corporation ("CAHC"), was formed by MHA in part to assist the Authority in providing safe, decent, and sanitary housing in the city of Little Rock for low-income and other persons, and serves as the sole member of CAHC; and

**WHEREAS,** Granite Mountain Development Limited Partnership ("Seller"), a Missouri limited partnership, currently owns the Project; CAHC is the General Partner of Seller and CAHC is the limited partner of Seller.

**WHEREAS,** CAHC is the sole member of MHA HAGM GP, LLC, an Arkansas limited liability company ("General Partner"), which serves as the General Partner of MHA HAGM, LP ("Buyer"), an Arkansas limited partnership (heretofore defined as "Seller") (each of CAHC, General Partner, Seller and Buyer is referred to individually as a "Company" and collectively as the "Companies"); and

**WHEREAS,** the Buyer was formed to acquire, develop, rehabilitate, own, maintain and operate a 101-unit multifamily apartment complex known as Homes at Granite Mountain, located in Little Rock, Pulaski County, Arkansas (the "Improvements") to provide affordable housing for low-income persons/households and other persons/households, and to lease from MHA the property on which the Improvements are located (collectively, the "Project"); and

**WHEREAS,** the U.S. Department of Housing and Urban Development ("HUD") has authorized the conversion of the Project from public housing to Section 8 assistance under the Rental Assistance Demonstration ("RAD") program, and in connection therewith, the Buyer desires to enter into a RAD Use Agreement, RAD PBV HAP Contract, Partial Release of Declarations of Trust, various subordination agreements, and related documents to be entered into by the Companies, including but limited to certifications, assignments and such other documents,

following votes recorded "Ayes" – Commissioners Anthony,Lowe, Jackson and Lindsey/ "Nays" – None / "Absent"- Commissioner Peterson. Resolutions passed.

Commissioner Anthony motioned to table resolutions #6773, #6774 and #6775 until the Commissioners receive financial documentation that matches the resolutions. Commissioner Peterson seconded the motion. The following votes recorded "Ayes"- Commissioners Anthony, Peterson, Lowe, Lindsey and Jackson/ "Nays"- None/ Resolutions tabled.

## Item 9: Executive Session

- No executive session.

## Item 10: Adjourn

There being no further business to come before the Board the meeting ended at approximately 12:45 p.m.

Kenyon Lowe Sr., Chairperson                    Dr. Nadine Jarmon, Interim Executive Director

# Attachment 15

**ITEX Development, LLC**
3735 Honeywood Court
Port Arthur, Texas 77642

**Timeline and Table of Contents**

**TAB 1: June 22,2020** Email from Bobken to Anthony Snell requesting MHA approval of the current Financial Model at the time, dated 6-21-20.  On the Sources & Uses page, the sources of funding are broken down reflecting $6M in MHA Loans from Proceeds, and $22,000 in Capital Funds, which Bobken and Mr. Snell discussed at length on our weekly calls and in separate calls.

    **Sub Tab 1a:** Attachment to the email - Sources and Uses page from the 6-21-20 Financial Model which reflects the breakdown of MHA Loan from Proceeds and from Capital Funds into $6M and $22,000 respectively (full model can be provided as well)..

**TAB 2: June 23,2020** Email from Anthony Snell to Bobken stating to move forward with the Financial Models dated 6-21-20. *Please note that Anthony copied Chairperson Lowe and Commissioner Lindsey on the email.*

**TAB 3: August 4, 2020** Email from Michelle to Dr. Jarmon requesting review and approval of updated financial model reflecting $6M in MHA Loans from Proceeds and $300,000 in Capital Funds, which we discussed in our meeting on August 4, 2020. In my email, it was specified that once we receive approval for the models, we will send over seller financing commitments for signature for the ADFA application.

    **Sub Tab 3a:** Attachment to the email - Sources and Uses page from the 8-11-20 Financial Model which reflects the breakdown of MHA Loan from Proceeds and from Capital Funds into $6M and $300,000 respectively (full model can be provided as well).

**TAB 4: August 14, 2020** Email from Michelle to MHA requesting signature on the ADFA MHA Seller Financing Commitment Letters, which specify Loans from MHA in the amount of $6.3M (which is a combination of the $6M Loan from Proceeds and the $300,000 in Capital Funds).

    **Sub Tab 4a:** Unsigned Seller Financing Commitments that were submitted in the 2020 ADFA Application – one signed by Dr. Jarmon for the MHA Loan in the amount of $6.3M, which combined the Proceeds and the Capital Funds, and one signed by Rodney for the commitment of Reserves.

**TAB 5: August 21, 2020** Email from Jada to Michelle providing the signed MHA Seller Financing Commitment Letters.

    **Sub Tab 5a:** Executed Seller Financing Commitments that were submitted in the 2020 ADFA Application – one signed by Dr. Jarmon for the MHA Loan in the amount of $6.3M, which combined the Proceeds and the Capital Funds

    **Sub Tab 5b:** Commitment for Reserves signed by Ron Hooks.

**TAB 6: Comparison of MHA Committed Funds** from 2016 ADFA App, 2020 ADFA App, and Current Model along with all corresponding commitment letters.

**Jada Johnson**

| | |
|---|---|
| **From:** | Michelle Harder ███████████████████ |
| **Sent:** | Wednesday, April 21, 2021 4:33 PM |
| **To:** | Miranda Sprague |
| **Cc:** | Alysse Hollis; Mattye Jones; ████████████████; Bobken Simonians; Lisa Dickerson; jada johnson; Nadine Jarmon |
| **Subject:** | Re: FW: Updates |
| **Attachments:** | MHA Contribution Comparison PDF.pdf; MHI, MHII, HAGM Package for MHA Board 4.21.21.pdf |

Dr. Jarmon,

My apologies. Please use the attached Package. I noticed that there were some duplicate pages in the previous one I sent. I apologize for the oversight.

This is the corrected package.



**Michelle Harder**

Development Team
Acquisitions & Development

itexgrp.com

3735 Honeywood Court, Port Arthur, Texas 77642

On Wed, Apr 21, 2021 at 5:06 PM Michelle Harder ████████████████████ wrote:

Dr. Jarmon,

Here is the Contribution Comparison starting with the original amount that MHA had agreed to contribute (the commitment letters that were signed by MHA and submitted with the 2016 ADFA Application can be found in the package, which is bookmarked) and moving forward through the amounts that were presented to the Board in 2019, the commitment letters that were signed by MHA for the 2020 ADFA Applications, and the current Model.

This "Contribution Comparison" will reflect that the contribution amount needed from MHA has gone down significantly since the original 2016 submission.

In the full bookmarked package, where all of the commitment letters can be found, there are also PDF'd emails from Bobken requesting review and approval from Anthony for the current Financial Models as well as Anthony's concurrence (with two members of the Board copied on the email).

Please let me know if you have any questions or need any additional documentation.

# Attachment 16

## SYNOPSIS
## IMMEDIACY TO CLOSE ON RAD TRANSACTIONS:
### Madison Heights I Apartments, Madison Heights II Apartments, and Homes at Granite Mountain

We have been asked to provide the key information that is pertinent to ensuring that the financing is not lost with respect to closing with ADFA (on the bonds and tax credits), the lender and purchaser of the tax credits as well as securing HUD approval for the RAD conversion for the simultaneous closing of Madison Heights I, Madison Heights II and Homes at Granite Mountain.

**The Background is as follows:**

- **Exit of McCormack Baron Salazar (MBS) where they disputed purchase price at end of Compliance Period**
  **In June 2019** CAHC (limited partner interest) and a CAHC-owned single purpose entity (general partner interest) purchased the limited partner interest and the general partner interest, respectively, in the current owner partnership of Madison Heights I (University Heights Associates, L.P.) and Madison Heights II (Madison Heights II, L.P.). These purchases removed McCormack Baron Salazar's ownership interests in the projects from the original tax credit syndication.

- **Take Out of McCormack Baron Salazar (MBS) – Loan from Walker Dunlop**
  To finance the purchase of these partnership interests, the partnership owners obtained an approximate $5.6 million loan from Walker & Dunlop, which closed in June 2019 – Madison Heights I @ $3M and Madison Heights II @ $2.6M. The loan matures on July 9, 2021 (this year), with a balloon payment due at such time which would have to be paid from CAHC or MHA funds. The last of the two extensions of the loan has an expiration of July 9, 2021. It is very unlikely Walker & Dunlop will agree to another extension. MHA is not entitled to an extension.

- **HUD commitments for a RAD Conversion**
  HUD issued a commitment for MHA to proceed with converting the 3 properties under RAD subject to HUD approvals. These conversions allows for subsidy from the Section 8 program rather than the Public Housing Program. There are expiration dates on such commitments, called RCCs, and any extensions have to be justified, the granting of which is attainable within HUD's sole discretion. HUD has been very receptive to extend the dates to close under the RCCs allowing for MHA to meet the challenges in the exit of MBS and the recent ADFA first level of approvals.

- **ADFA approval attained by the Board Housing Review Committee based on the Applications**

**The Milestones that must be met to close by the date the Walker Dunlop loan expires (July 9, 2021) and Retain ADFA Approval to proceed with the transaction follows:**

4816-7592-1639.v1

- **The Sources to pay the Walker Dunlop loan is to use the funds from the ADFA Bonds and LIHTC closing**
  The plan to pay off the Walker Dunlop loans is to use the funds from the ADFA Bonds and tax credit closing. The application for tax credits is very specific as to the Ownership team which includes the developer partner's entity that serves as both the Special limited Partner and the Guarantor.

- **The ADFA Application is one that includes and approves ITEX in the ownership. Any change would require ADFA approval which would take 2 (two) -3 (three) months** ADFA both underwrites the feasibility and viability of a project based on the partners and any change in owners. MHA does not have the unilateral authority to change the members of the ownership team and keep the current approval from ADFA.

- **MHA and ITEX have secured financial commitments from lender and tax credit purchaser. Any further delay in closing may cause a change in the pricing. In other words, the price per credit may go down and interest rates are going up.**

- **The Debt and Equity Partners along with ADFA require sufficient time to prosecute the closing which includes review and negotiation of the transactional documents.**
  The working group to close the transaction includes the team members from the lender, tax credit investors and ADFA. These partners will require sufficient time to review the third party reports and negotiate the final form of documents for the closing. Time is of the essence in order to allow sufficient time to undergo these tasks which include reports to credit committees within these organizations.

- **MHA has a contract with ITEX to redevelop the 3 properties which has financial obligations if MHA elects to terminate the Master Development Agreement ("MDA").**
  MHA will have a contractual obligation to pay the developer partner under the provisions of the MDA. Generally, a request to terminate the developer without cause would require paying ITEX for their reimbursables and certain costs.

- ITEX and MHA entered into a Master Development Agreement on June 14, 2016 which was approved by MHA via Resolution. ITEX has been working with ADFA since 2016, requesting an award of tax-exempt bonds and associated allocation of low-income housing tax credits for each of the three projects.

- ADFA finally approved an award of tax-exempt bonds and associated tax credits to each project, at its board meeting in February 2021. It was very clear from the dialogue among the ADFA board of directors and their staff and consultants that any change in the application or related budgets and proformas must receive approval at the ADFA Committee level.

- ANY material change to the approved-ADFA applications must be re-underwritten by ADFA, which will result in failure to close in time to pay off the Walker & Dunlop loan. Walker &

Dunlop would then exercise its legal remedies to collect on the defaulted loan, including foreclosure on the projects.

- Failure to close these transactions as approved could significantly affect CAHC and MHA's relations with HUD and ADFA. Moreso, any actions to delay closing could jeopardize an ultimate redevelopment of the properties because 1) a RAD extension is not an absolute; and 2) ADFA has discretion in its QAP and rules with respect to awarding tax credits.

# Attachment 17

MEMORANDUM

| | |
|---|---|
| To: | Dr. Nadine Jarmon, Executive Director of Metropolitan Housing Alliance |
| From: | Mattye Jones and Nona McVay |
| Re: | Confirmation of CAHC's Ownership Role in RAD-Converted Projects |
| Date: | May 26, 2021 |

We have been asked to confirm and describe the ownership role of Central Arkansas Housing Corporation ("CAHC") in projects converted under HUD's Rental Assistance Demonstration ("RAD") program. The intent of the RAD program is generally to convert public housing units to the HUD Section 8 program for the purpose of a predictable funding amount and a stabilized operating budget. In those instances where the capital needs assessment warrants an infusion of capital, bank debt or utilization of equity from the syndication of tax credits allows for PHAs to partner with investor partners. When embarking on a LIHTC financed strategy for the infusion of capital for rehabilitation, typically through the 4% low-income housing tax credit program and volume cap bonds administered by a Housing Finance Agency, e.g., Arkansas Development Finance Authority (ADFA), the purchaser of the tax credits will be a partner (i.e., have an ownership interest) for a period of years. MHA strategically identified CAHC to serve as its real estate holding and development arm. CAHC was deemed to be the best vehicle through which MHA would achieve this opportunity for equity and bond-financing infusion into its projects. MHA is the sole member of CAHC. The strategy was to use CAHC as the entity to partner with a private entity to own the respective PHA properties with MHA still maintaining control of the projects, as is evidenced minimally by MHA's membership of CAHC. PHAs undergoing a RAD conversion must submit its strategy, including structure, to HUD under the review and approval process by HUD.

Attached as **Attachment A** is CAHC's Amended and Restated Articles of Incorporation, wherein the Little Rock Housing Authority (d/b/a Metropolitan Housing Alliance) is set forth as the sole member of CAHC, an Arkansas nonprofit corporation. Attached as **Attachment B** is CAHC's Amended and Restated Bylaws, which also set forth the Little Rock Housing Authority as the sole member of CAHC. As sole Member, MHA maintains the (1) right to approve organizational documents of CAHC, including the right to approve any amendments thereto; (2) authorize CAHC to enter into and execute an Annual Contributions Contracts with HUD; (3) control the operation of the Corporation through appointment and removal of its Directors as provided in Article IV of the Bylaws; and (4) take title to all real and personal property held by the Corporation upon dissolution or termination of CAHC.

Title to each RAD-converted project is held by a single asset, single-purpose entity, either a limited partnership or a limited liability company. In the RAD portfolio of MHA projects, title policies are issued for the ground lease estate held by the owner entity. Such ground lease estate is a long-term ground lease with the fee estate retained by MHA. A copy of the Ground Lease for Jesse Powell Towers is attached hereto for your reference, as **Attachment C**. The General Partner of the entity owner (or General Member of a LLC) is a single-asset, single-purpose limited liability company. CAHC owns 100% of the General Partner; that membership interest equates to generally a 0.01% ownership interest in the Partnership (or Owner LLC). The remaining interest goes to the investor partner who is "purchasing" the low-income housing tax credits. Federal law requires that LIHTC's can only be used by an owner of the low-income rental housing project and to use the credits, must own the same percentage as the credits purchased (typically 99.99%); accordingly, the equity investor partner is necessarily an owner of the project for at least the 10-year credit period. Most equity investors will require to stay in the ownership

# Attachment 18

**From:** Kenyon Lowe Sr- ███████████
**Sent:** Monday, February 8, 2021 2:11 PM
**To:** Nadine Jarmon
**Subject:** RE: IT Candidates

Dr. Jarmon,

After talking to all three (3) candidates, and the decision is yours, Kedrick Jones seems to me to be suited for our needs.

**Kenyon K. Lowe, Sr. - NCC Commissioner**
**Chairman, MHA Board of Commissioners**
**Little Rock Housing Authority dba Metropolitan Housing Alliance**

# Attachment 19

2/28/2021                                      Mail - njarmon@mhapha.org

# RE: Network Administrator Resumes

### Nadine Jarmon

Mon 8/10/2020 3:49 PM

Sent Items

To 'Kenyon Lowe Sr' ██████████  ilana mckinney ████████████

Chairman

It appears that indeed there was lack of or miscommunication between the board and the executive director at the time. I would like to request that this position continue to be paused until which time I can get the results of my organizational assessment.   At that time we will be able to make a more comprehensive decision about the direction of the agencies, prioritize projects and have a complete staff assessment including budgetary impact.

I know  you are disappointed of the lack of follow up; but I ask that we be patient for just a few more months before we move forward with any position postings.

Thank you.


*Nadine Jarmon, PhD*
*Interim Executive Director*
*Metropolitan Housing Alliance*
*100 S. Arch Street*
*Little Rock, AR  72201*



**From:** Kenyon Lowe Sr ████████████████
**Sent:** Monday, August 10, 2020 1:39 PM
**To:** ilana mckinney ◀████████████     Kenyon Lowe Sr ████████████
**Cc:** Nadine Jarmon ◀██████████████
**Subject:** RE: Network Administrator Resumes


This position was authorized in the Boards 2019 retreat and is a priority as established after meeting with the Agency's IT contractors and yet, the position is still posted on our website.


*Kenyon K. Lowe, Sr. - NCC Commissioner*
*Chairman, MHA Board of Commissioners*
*Little Rock Housing Authority dba Metropolitan Housing Alliance*

52

# Attachment 20

From: Sherrill Hampton
Sent: Monday, March 15 2021 7:34 PM
To: Nadine Jarmon
Cc: Andy Delaney
Subject: Our Results -- IT Applicants

Hello Dr. Jarmon

Andy and I reviewed the IT applicants separately and then we discussed the matter this evening.
We also had several comments and/or questions regarding the matter.  See below:


- We both feel that first before hiring anyone there should be an assessment of MHA's IT needs, especially in order to ensure that all of the identified enhancements due to COVID-19 are interfaced properly or are in keeping with the agency's needs.
- We also feel that there is a major difference between a Network Administrator and a Chief Technology Officer, especially as it relates to experience as well as the ability to be responsible for MHA's entire technology system.
- We both agree that any individual hired should have some experience working in a housing authority setting or at least an understanding of the work of a housing authority and how the IT system must be interfaced properly according to that work. We both note that even the purchase of the new kiosks should fall within the need for proper interfacing with MHA's system.  Furthermore, we both note that MHA should determine if it has acquired all of the updates that TenMast has released.
- We both feel that the interface between TenMast and MHA should be concentrated in one MHA staff person, especially for the development of protocols for and management of the various authorization levels needed.


<u>With the above points being raised, both Andy and I agree that out of the three (3) applicants reviewed, Mr. Kendrick Jones seems to be the best candidate out of the group.  Nevertheless, if I am remembering correctly, even he has no or limited experience as it relates to housing authorities</u>.

Andy, please share anything I may have missed from our conversation or that you feel is important to mention.

Dr. Jarmon, we hope our comments are helpful.  Let us know if you have questions or need additional information.

Andy Delaney
Sherrill Hampton

# Attachment 21

# Vice President Information Technology | CIO

## RICHARD CONGO

**Professional Career**

Vice President/CIO (2020-2021)

Director/CIO  (2002-2020)

Principal, Next Step Consult (2001-2002)

CIO, Phila. Government (1998-2000)

**Education**

Bachelor of Science, BS, Computer Systems Management (1984)

**Skills and Partners**

Cyber Security to Protect Messaging

ERP Implementation

IT Budget development and management

IT Project Management

CLPHA CIO Group

IT Vendor Negotiation & Management

SAAS Cloud Management

Backup Strategies

Cyber Security

VDI Management

IT Strategic Planning

Business Continuity Planning

Public/Private  Cloud Strategies

---

- Accomplished leader of Information Technology management and strategies with over 35 years working in collaboration with public and private partners to foster effective and efficient Systems and Work Flow implementations that enhanced the delivery of critical services to the Public.

- Developed and Managed IT budgets ranging from 1.5 to collectively over 9 million.

- Reduced the cost, by hundreds of thousands and enhanced the effectively of Interfaces between disparate applications systems.

- Designed, developed, implemented a Business Management tool (BI) that has a 'dashboard' effect to allow executive management to query decision making data instantly.

- Successfully implemented a 'remote work' environment for over 200 staff within two weeks and over 500 staff in 1 month while emphasizing security protocols and protecting sensitive data.

- Implemented a digital environment to transpose over 9 Terabytes of information

- Migrated 10 Terabytes of Client data to a private cloud SaaS environment.

- Transformed into a complete 'remote work' environment within a month and half.

- Manage IT related Projects, totally in-house, that range (in number) from 3 to 10 'active'.

### Information Technology Department | Vice President/CIO          March 2002 to Present
### District of Columbia Housing Authority, Washington, DC

Manage over 45 Application Systems including a recently implemented ERP Management system. Management of Information sharing among 800+ employees that administers over a ½ Billion of funds to a vulnerable populous. Responsible for a Wide Area Network (WAN), spanning 50+ Properties, including appropriate security protocols.

❏ Implemented Company-wide Enterprise Resource Planning (ERP) management system which also completely digitized and mobilized the work-order system and allowed staff to 'work from anywhere and anytime'

- ❖ Manage and direct an application unit that develops, updates, and designs systems and website and Business Intelligence (BI) tools to provide effective management of resource data/information.

❏ WAN management covers the entire footprint of the Washington, DC area providing Property management systems and broadband access for over 5000 residents.

❏ Implemented the latest Voice-over-Internet-Protocol (VoIP) system, cutting communications costs in half while also utilizing a 'follow-me' communication system where incoming calls connect to where the employee is (stationary vs. mobile).

❏ Project manage IT initiatives, ranging 2-9 'active', while also managing daily operations of over 700 Network nodes daily.

❏ Implemented and manage the latest security tools to protect data from malware/ransomware hacks while also deploying encryption software to protect sensitive information transferred through messaging environments.

❏ Responsible of managing a network of 4000+ cameras that stream back to the public safety 'command center' ensuring constant and consistent monitoring of Property and resources.

❏ Incorporate the oversight of technical helpdesk tickets (numbering 40-50 weekly) along with support of a complete 'mobile' environment for all staff.

56

# Kedrick Jones

**IT Network Specialist - Area Agency on Aging**



Effective, outcome-driven professional with over ten years of customer relations and technology experience, four years of supervisory experience, and seven years of business experience. Performs end-user support with workstations, laptops, and mobile devices. Manage and coordinate all software updates, documents all help desk tickets in a timely manner. Monitors and reports call center calls and job performance to supervisors. Successfully organize and manage multiple projects at one given time. Successfully operates and manages a one-person IT Department with four servers, 30 desktops, 10 laptops, 250 plus mobile devices, 150 remote users, VOIP call center, milestone surveillance system, 120 transit surveillance systems, manages Medicaid billing software, end-user training, manages technology budget, procurement, website content, coordinate with the managed service provider and various vendors.

#readytowork

Willing to relocate: Anywhere
Authorized to work in the US for any employer

## Work Experience

### IT Network Specialist
Area Agency on Aging - Pine Bluff, AR
February 2017 to Present

- Manage & oversee the transportation's IT Dept
- Troubleshoot, repair & update desktops, laptops, tablets, phones
- Install & configure software and hardware
- Provide technical support & training
- Manage & oversee Call Center VOIP System
- Technology Systems Administrator
- Surveillance Camera System Administrator
- Mobile Surveillance Camera System Administrator
- EDI & Billing Software Administrator
- Fleet Maintenance Administrator
- End User Training Manager & Facilitator
- Website Administrator & Webmaster

### HIM Software Operations Specialist
Arkansas Hospice - North Little Rock, AR
September 2014 to February 2017

- Supported over 500 EMR end-users
- Developed /edited processes and EMR forms
- Instructed & trained end-users on EMR

# Attachment 22

6/12/2021                                                    Email

**From:** ▮▮▮▮▮▮▮▮▮▮▮
**To:** ▮▮▮▮▮▮▮▮▮▮▮
**Subject:** Email
**Date:** Sun, May 23, 2021 4:20 pm

Hi Lisa, I wanted to let you know that it appears that there was a virus on the servers and it spread to a few more, I believe I was able to get it stop but the damage has been done.

This would have been preventable with an Anti Virus product installed but nothing was there to protect them. I am currently trying to get email service restored.


Thank you


Chris Truex

# Attachment 23

First off, I wanted to say thank you for the opportunity to come and help the Little Rock Housing Authority. I am going to do my best to explain what I have found to date and my recommendations to remedy said issues.

1. After meeting with Kedrick I did notice that he is very new to the IT industry and may not have the management skills needed to succeed but I do believe he is a very capable person that can be trained to support the staff and housing authority as required.
2. The First thing we tackled Friday morning was getting Kedrick somewhat comfortable with the environment and just going through all servers and network devices. We documented all servers and password and what their role served for the company.
3. We reset the passwords for the current backup device and for Network solutions account.
4. I spoke with Kedrick about all the issues I found on the network and went over solutions that can and should be implemented.
5. Went over some bills that the Housing authority is paying for and found some cost cutting steps that can be taken, I know there will be more, but I need those bills to. Any licensing bills for software owned or monthly expenses would help greatly.
6. Below is a list of what I recommend gets implemented to secure the network and devices for the Housing authority and software to help Kedrick perform his job.
7. Looked at how the current network was being managed and found some issues. I found that a few servers had not been rebooted in over 270 days which is a huge security risk due to not having current updates/patching. I found numerous pc's and some servers that do not have Antivirus installed on them. After doing a scan on the network I also found that there are some open ports on the existing firewall which needs to be disabled urgently, this is exactly how attackers get into the networks of companies and install ransomware.

**Atera:** $79.00 a month, this is a computer and server management software. It will be used for end users to open ticket and communicate with Kedrick. He will also use this to remote into any computer or server and push windows updates and numerous other tasks that need to be completed for Maintenance purposes.

**Sophos Firewall / AV:** This is the new firewall, and Antivirus I am recommending. This will guarantee that all computers and servers are secured properly from any outside attack or rogue employee's, have more control on the type of content end users can access at work. IE: block video and music streaming apps.

**WIFI:** install and implement Ubiquity Wi-Fi in council room and other floors.

**Phone system:** looked at existing phone bill and found by bringing this back in house you can save up to

$1,110 a month. It will cost around $1,400 to purchase the phone server this is a 1-time cost.

Kedrick and I will be getting a quote for all of this by Tuesday.

This is just the beginning of making things right, as I stated above, I believe this is a great plan moving forward and will insure that the Housing authority is back on track for its IT needs. I will be working with Kedrick to help him get the quotes for all the above and teach him how to implement and administer. I also spoke to Kedrick about having a set of IT tasks that should be completed every single morning when he comes into work. IE: check backups, check AV, look over ticket board, check updates.

I hope this report has helped and that I can be of assistance in the future.


Thank you

Chris Truex.

# Attachment 24

6/12/2021                                                          FW: Network

**From:** █████████████ .
**To:** █████████████ .
**Cc:** █████████████ .
**Subject:** FW: Network
**Date:** Thu, May 13, 2021 10:32 pm

Good evening,

Here is one of the most recent emails that the outgoing IT Consultant sent to me and the Executive Director.  I will forward others or give to you when you arrive, however, this is very detailed.

Thank you,

Lisa

**From:** Shannon Maddox [██████████████████████]
**Sent:** Thursday, May 6, 2021 6:25 PM
**To:** Lisa Dickerson [██████████████████] Nadine Jarmon <██████████████████]
**Subject:** Network

Good afternoon,



# Attachment 25

2/28/2021

# RE: Chicot and Baseline Property Disposition Status



jada johnson

Wed 8/12/2020 6:56 PM

To 'Bill Pendergist' < ████ >   Nadine Jarmon <njarmon@mhapna.org>

Cc Joe Harris <jharris@friendshipusa.org>  CHumann@weioffice.com < ████ Kenyon Lowe Sr ████ , Leta Anthony ████ ; ilana mckinney ████

Hello!

A quick follow-up, after passing along the title exception report to the original closing agent for Vernon Place. I received a note from Michelle Howard at All American Title & Abstract, L.L.C., which Michelle has confirmed . All American can close the file and provide a clear title at closing. Please contact Michelle at the number below to provide the clarity you need for all of the title exceptions.

401 W. Capitol Avenue, Ste. 300
Little Rock, Arkansas  72201
501-954-9600 office
501-954-9526 office fax

████

Last note, after further conversation with the our executive we will continue to absorb the cost for maintaining the lawn care.

Respectfully,

Jada Johnson | Procurement and Capital Funds Coordinator
**Metropolitan Housing Alliance**
100 South Arch Street | Little Rock, AR 72201
Office 501.340.4834 | ████
████ www.lrhousing.org

**From:** Bill Pendergist ████
**Sent:** Wednesday, August 12, 2020 8:59 AM
**To:** Nadine Jarmon ████ jada Johnson ████
**Cc:** Joe Harris < ████ Kenyon Lowe Sr < ████ Leta Anthony < ████ ; ilana mckinney ████
**Subject:** Re: Chicot and Baseline Property Disposition Status

All,
Mrs. Johnson was very helpful yesterday by providing me with some information in addition to the signed contract addendum extending the due diligence period.
Regarding items 2 & 3 below:
Yesterday Mrs. Johnson was able to provide me with the following:
- The attached information regarding the bankruptcy of First Step Realty
- Contact information for Pat Joyner from First Step Realty...phone number(s) as follows ████

████

67

2/28/2021 ████████████████████

- Contact information from a lady named January at All American Title Company who might be able to provide some additional details to clean up any questions about the title from when Central AR Housing acquired the properties. Ms. January is knowledgeable about this file and the closing file number for reference was Closing file number ██

Jada, thank you for your assistance.  Additionally, you had requested if Friendship would be able to assist with the cost of yard mowing since they have had the property under contract for quite a while.  They have requested if you would please be able to provide us with a written request of this detailing the cost so we can try to get you the help you are asking for

Thank you!
Bill

Bill Pendergist, SIOR
Partner
O 501.244.7511 ████████████
425 West Capitol Avenue, Suite 300
Little Rock, AR 72201

 KELLEY COMMERCIAL
PARTNERS

 CHAIN-LINKS

**From:** Nadine Jarmon ████████████
**Date:** Tuesday, August 11, 2020 at 7:07 PM
**To:** jada johnson ██████████████
**Cc:** Joe Harris ██████████████████████████████████████ Kenyon Lowe Sr █████████████████████████████████████, Leta Anthony ████████████████████████, ilana mckinney ████████████████, Bill Pendergist ████████████████████████████████████████

**Subject:** Re: Chicot and Baseline Property Disposition Status

Thanks Jada. I'm assuming Mr. Pendergist has it from here.

This recap helps.

Sent from my iPhone

On Aug 11, 2020, at 4:42 PM, jada johnson ████████████████ wrote:

Hello Mr. Harris,

I had the pleasure of talking with Mr. Pendergist this morning at 8:47 a.m. I shared the contact information for First Step Realty and the title company information along with the confirmation of bankruptcy closed document, and a signed addendum for extension.

Other than the contact information shared with you on September 12, 2019 for First Pentecostal Church at which the owner at the time was First Pentecostal Church, owner of LOT 2, contact information: ████████████████████████ I'm not sure where the "Images Estates" fit in.

68

2/4

Thanks.

Jada Johnson

From: Nadine Jarmon
Sent: Tuesday, August 11, 2020 2:31 PM
To: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Cc: ▓▓▓▓▓▓▓▓▓▓▓▓▓ Kenyon Lowe Sr ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Leta Anthony ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; ilana mckinney ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; jada johnson
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Subject: RE: Chicot and Baseline Property Disposition Status

Mr. Harris

Staff is briefing me on how I might assist in expediting this process. I'm getting contact information for First
Step and Images Estates now. However, if you have a name or name(s) of people you have already spoken to –
it would make the process much easier. If so, please provide those names to me.

Also, I'd be most appreciative of being copied on any information or dialogue with Chairman Lowe on this
subject. This will help me not to duplicate our efforts.

Thank you.


*Nadine Jarmon, PhD*
*Interim Executive Director*
*Metropolitan Housing Alliance*
*100 S. Arch Street*
*Little Rock, AR 72201*



From: Joe Harris ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Sent: Tuesday, August 11, 2020 1:41 PM
To: Nadine Jarmon ▓▓▓▓▓▓▓▓▓▓▓▓
Cc: ▓▓▓▓▓▓▓▓▓▓▓ Kenyon Lowe Sr ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Leta Anthony ▓▓▓▓▓▓▓▓▓▓▓▓▓; ilana mckinney ▓▓▓▓▓▓▓▓▓▓▓▓▓; jada johnson
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Subject: Re: Chicot and Baseline Property Disposition Status

Dr Jarmon.
I need to take you up on your offer to assist in the process. In the immediate, we can use your help
with the following:

1. Provide documentation needed to clear up 1983 Residential use Restrictions and the 2002 Residential
   Use Restrictions.
2. Contact with First Step and Images Estates – title company has tried to reach owner multiple times
   but have not gotten a return call
3. Any information on the First Step bankruptcy issue that would demonstrate the lien holders do not
   have claim to the 4 lots that revert to the land commission.
4. Confirmation of the suggested solution for the 4 lots that revert to the land commission. We want to
   make sure we are on the same page – need to resolve #4 before the reversion occurs.

# Attachment 26

Facebook

# facebook

Log in



 **102.1 Koky-Fm Little Rock**
June 14, 2018 · Little Rock, AR ·

Leta Anthony, Consultant and **Raymond Allmon**, Outreach Director of Friendship Aspire

Friendship Public Charter School is one of the oldest minority charter schools in the nation and has been in existence for 20 plus years and has 100% college acceptance rate. Fifteen schools are located throughout the United States.

Friendship Public Charter School was named one of the top 25 high performing charter schools in nation. The school is new to Little Rock and has 160 exclusive ... **See More**

— at **102.1 Koky-Fm Little Rock.**

🖤 4                                                                         2 Shares

# See more of 102.1 Koky-Fm Little Rock on Facebook

or

71

 Español


**Friendship Aspire Academy Public Charter School**

About Us ⌄        Schools ⌄

State Required Information ⌄        Enroll ⌄

Resources for Online Learning

# Friendship Aspire Arkansas, Inc.



## Donald L. Hense

### Founding Chairman



# Jeff Pullam

Governance | Friendship Aspire Academy Arkansas

 Español

 **Friendship Aspire Academy Public Charter School**

About Us ❯        Schools ❯

State Required Information ❯        Enroll ❯

Resources for Online Learning



Pine Bluff resident

## Leta Anthony

## Chad Froud

## Chris Bell

To contact the school's administration

FAA Administration: 501-500-9372

Pine Bluff Elementary: 870-395-7420

LR Middle School & Garland Elementary: 501-500-0050

**Contact Us**

# Attachment 27

**RESOLUTION NO. 6713**

Board Member *M. Sanders* of the Board of Commissioners of the Housing Authority of the City of Little Rock, Arkansas D/B/A Metropolitan Housing Alliance introduced the following Resolution and moved for its adoption:

**RESOLUTION AUTHORIZING THE BOARD OF COMMISSIONERS OF LITTLE ROCK HOUSING AUTHORITY, ARKANSAS D/B/A METROPOLITAN HOUSING ALLIANCE TO TRANSFER THE OWNERSHIP OF A PROPERTY KNOWN AS VERNON PLACE TO CENTRAL ARKANSAS HOUSING CORPORATION**

**BE IT RESOLVED,** that at a duly constituted meeting of the Board of Commissioners of the Housing Authority of the City of Little Rock, Arkansas d/b/a Metropolitan Housing Alliance ("MHA") held on June 13, 2019 the Board of Commissioners did make the following decision and request staff to act as follows;

**WHEREAS,** the MHA Board of Commissioners has created and designated the Central Arkansas Housing Corporation ("CAHC") as the development enterprise of MHA; and

**WHEREAS,** the MHA Board of Commissioners has transferred and will continue to transfer certain eligible assets to CAHC as appropriate for ownership, development, disposition and other approved uses; and

**WHEREAS,** MHA has determined that in furtherance of its goals to build the capacity of CAHC that it is prudent and appropriate to transfer the Vernon Place asset;

**NOW, THEREFORE BE IT RESOLVED BY THE BOARD OF COMMISSIONERS OF THE HOUSING AUTHORITY OF THE CITY OF LITTLE ROCK, ARKANSAS, D/B/A METROPOLITAN HOUSING ALLIANCE ("MHA") THAT;**

The Board of Commissioners hereby transfer the ownership of Vernon Place, including all rights thereof to CAHC.

Commissioner *H. L. Lindsey* seconded the motion and upon roll call the following vote was recorded:

| | |
|---|---|
| Ayes: | Commissioners *Anthony, Jackson, Lindsey, Sanders* |
| Absent: | Commissioners _____ |
| Nays: | Commissioners _____ |

The Chairperson thereupon declared the motion carried and the resolution adopted.

**IN WITNESS WHEREOF,** each of the undersigned has hereunto set his hand of the Authority this 13th day of June, 2019.

- **None**

## Item 9: Action Item(s)

- Resolution Authorizing the Board of Commissioners Authorization to Transfer Vernon Place Asset to CAHC

- Resolution Authorizing the Housing Authority of The City of Little Rock, Arkansas D/B/A Metropolitan Housing Alliance to Execute Any and All Documents or Take Such Action Necessary for Central Arkansas Housing Authority to Acquire the General Partner Interests and Limited Partner Interests in University Heights Associates, L.P. And Madison Heights Ii, L.P.; And to Take Such Other Actions Necessary, Convenient, Or Appropriate to Carry Out This Resolution.

**Commissioner Anthony** requested a motion to approve Resolution #6713. **Commissioner Sanders** motioned to approve the resolution. **Commissioner Lindsey** seconded the motion. The following votes recorded **"Ayes"** – **Commissioner Anthony, Jackson, Lindsey and Sanders/ "Nays" – None.** The chairperson thereupon declared motion carried. Resolution #6713 approved.

**Commissioner Anthony** requested a motion to approve Resolution #6714 with correction to the language in the header of the resolution. **Commissioner Jackson** motioned to approve the resolution. **Commissioner Sanders** seconded the motion. The following votes recorded **"Ayes" – Commissioner Anthony, Jackson, Lindsey and Sanders/ "Nays" – None.** The chairperson thereupon declared motion carried, Resolution #6714 approved.

## Item 10: Executive Session- None

## Item 11: Adjourn

There being no further business to come before the Board the meeting ended at 1:15 p.m.

_Leta Anthony_

Leta Anthony, Chairperson

_Anthony Snell_

Anthony Snell, Interim Executive Director

**RESOLUTION NO. <u>6713</u>**

**Leta Anthony, Chairperson**

**Anthony Snell, Interim Executive Director**

# Attachment 28

Mail - njarmon@mhapha.org

# Fw: Vernon Place Follow Up

### Nadine Jarmon

Mon 11/23/2020 6 03 PM

To jada johnson ████████████████████████

FYI - A few modifications.

**Nadine M. Jarmon, PhD**
**Interim Executive Director**
**Metropolitan Housing Alliance**
**100 S. Arch Street**
**Little Rock, AR 72201**
**501-340-4805 (Office)**

**From:** Nadine Jarmon
**Sent:** Monday, November 23, 2020 6:00 PM
**To:** Kenyon Lowe; Leta Anthony; Branndli Peterson; Commissioner - Louis Jackson; ████████████████
**Subject:** Vernon Place Follow Up

Commissioners

At the request of Chairman Lowe, I was asked to provide a more thorough update on the advancement of the property at Vernon Place.

As background, in September 2020, MHA approved for Mr. Cliff McKinney, attorney for representative for the buyers investment group, to move forward with the process to deed the 5 lots located at Vernon Place back to the State Land Bank. Mr. McKinney agreed to continue his work with the State of Arkansas' attorney, MHA and the buyer to expedite this process in the favor of closing the transaction.

The remaining 5 lots in question will be placed back up for sale once the full review of the back taxes are determined. The tax delinquencies date as far back as 1990. To obtain the insurability removing all reverters, this process must be completed. Due to the timing we foresee a potential delay in process. Mr. McKinney and the State attorney are looking alternative ways to remediate the reverter process and avoid the extended research and the additional 60-day waiting period once all research has been completed.

Unfortunately, States staff was unaware of the time required to review all of the tax delinquencies. At this juncture, the ball is in the buyers court for expediting the reverter clause. We estimated and approved the cost up to $17,047.94.

In a nutshell, this project is going to take much longer than anticipated and we are unsure at this time of the total cost.

Thank you,

79

# Attachment 29

**ilana mckinney**

| | |
|---|---|
| **From:** | Nadine Jarmon |
| **Sent:** | Wednesday, May 26, 2021 3:05 PM |
| **To:** | ilana mckinney |
| **Subject:** | FW: Updates |
| **Attachments:** | MLK 4-PLEX - Recap Revised.pdf |

**From:** jada johnson
**Sent:** Wednesday, April 21, 2021 4:06 PM
**To:** Lisa Dickerson; Nadine Jarmon
**Cc:** ███████████████████████████████
**Subject:** RE: Updates

On March 29th I emailed the revised cost sent over by Ron Woods with the Woods Group. $914,274.78 for the estimated construction and $49,800 for A & E fees. The total of $964,074.78. I can send over a Task Order for the Woods Group.

Jada Johnson

**From:** Nadine Jarmon
**Sent:** Wednesday, April 21, 2021 3:49 PM
**To:** jada johnson ███████████████; Lisa Dickerson ███████████████
**Cc:** Bobken Simonians ███████████████; Meagan Mills <r███████████████>; Miranda Sprague
███████████████████████████████████████████████████████
**Subject:** FW: Updates

Do we have updates?  I thought MLK was tabled when focus shifted to Vernon Place.  Can you let me know if or what steps we took on MLK?

In terms of the ADFA court case, the board wanted us to contact the attorney in charge of the Class Action suit – do you have the contact information so that I might reach out to them and provide an update.

Not sure what she means by check list for Itex  - but I'll let her know that Itex had a full presentation prepared for the cancelled board meeting that I will ask them to forward.

Bobken – can you send me the presentation you mentioned to me on our call.  They wanted to see a side by side comparison of what was proposed originally and what is on the table now for the 3 models respectively.  Can you guys provide that?

If you can forward that to me – I will send it to the respective board members.

Thanks

*Nadine Jarmon, PhD*
*Executive Director*
*Metropolitan Housing Alliance*
*100 S. Arch Street*

1

*Little Rock, AR 72201*
*501-340-4805 - Office*

**From:** Leta Anthony ███████████████████████
**Sent:** Wednesday, April 21, 2021 2:40 PM
**To:** Nadine Jarmon ███████████████████
**Subject:** Re: Updates

Please provide updates:

- MLK Project
- ADFA court case
- Checklist for ITEX

Commissioner Anthony

2

82

# Attachment 30



4/22/2021                                    Mail

# Re: MLK Update

Leta Anthony

Thu 4/22/2021 5:18 PM

To Nadine Jarmon

Cc                                    Branndii Peterson                    Lee Lindsey
                    Commissioner - Louis Jackson              ; Louis Jackson

There's no pressure being applied but accountability is required. None of this happened in the corner, in the back in the dark but in a board and staff setting where all understood the conversation being had. The Board is not in the habit of passing motions and resolutions to have them ignored by staff. All of what has been requested of you is well documented. This Board needs to know what plan you are putting into place and you will be reporting on before the May meeting with a June 1 date of record pending. These delays and false miscommunications continue to be costly to the agency.

Commissioner Anthony

On Thu, Apr 22, 2021, 4:54 PM Nadine Jarmon                    wrote:

We will provide an update at the May board meeting. We all just received the updated numbers on March 29th. Today is April 22nd - I do not believe that reporting an update in May is unreasonable and it is certainly within the veil of keeping the board in the loop and informed. I have to establish achievable and realistic deadlines. I will not yield to pressure to comply with or conform to unreliable and unrealistic timelines that I was not involved with establishing.

*Nadine M. Jarmon, PhD*

*Executive Director*

*Metropolitan Housing Alliance*

*100 S. Arch Street*

*Little Rock, AR 72201*

*501-340-4805 (Office)*

---

**From:** Leta Anthony
**Sent:** Thursday, April 22, 2021 2:44:06 PM
**To:** Nadine Jarmon
**Cc:**                    Branndii Peterson; Lee Lindsey; Commissioner - Louis Jackson; Louis Jackson
**Subject:** Re: MLK Update

There has been no follow up, up dates or anything else coming from you on this project and that is the problem. You did not set the date, the Board did when we invited Mr. Woods in and requested the new numbers. The Board in that meeting referred to staff our ability to use capital funds. You provided to the Board the amount that was in the capital fund and the Board thought those funds could be used. We

ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2021-Oct-28  15:32:53
60CV-21-6938
C06D12 : 103 Pages

# UNIFORM COVER PAGE

[To be used when required by Administrative Order No. 2 (g)*]

COURT: _____ COURT OF _____ COUNTY

Docket/Case Number: _____

CASE NAME:
PLAINTIFF/
PETITIONER: _____

DEFENDANT/
RESPONDENT: _____

TITLE OF PLEADING OR
DOCUMENT BEING FILED
(If a multi-part file,
the designation "part _ of _"
(example, part 1 of 2)): _____

*Administrative Order No 2.
     (g) *File Mark.* (1) There shall be a two inch (2") top margin on the first page of each document submitted for filing to accommodate the court's file mark. If the pleading or document must be filed in multi-parts because of size or for other reasons, the first page of each part must include the file name and file mark and shall clearly indicate the part number and number of parts (example, part 1 of 2).
     (2) If a document is such that the first page cannot be drafted to provide sufficient space to satisfy the file-mark requirement, the document must include the uniform cover page developed by the Administrative Office of the Courts and found under Forms and Publications at www.arcourts.gov.

4/22/2021

never changed the date that had been set by the Board. You reported in the Retreat the issue with using Capital funds. The Board gave instructions to you to secure the funds for the project. You have not provided any update of steps to secure funds for the project or any movement on this project as was directed by this Board. If there has been effort on your part pertaining to this matter, please provide that information to the members of the Board. If the date is not met, we have a problem with staff keeping us in the loop and doing due diligence with follow up to the Board. If staff follows up with the Board in a timely manner, the Board will have no need to request information that they should have already received.

Commissioner Anthony

On Thu, Apr 22, 2021 at 10:53 AM Nadine Jarmon ⟨          ⟩ wrote:
> That does not hold water as I have stated at the retreat you can not use Capital Funds for a project that those funds were not allocated to
> without going through a formal review and approval. Why would I commit to a date that even if engaged upon would still take a minimum
> of 3 to 6 months and that's catching HUD on a good day.
>
> All said, I am stating clearly and in writing that date will not be met.
>
> *Nadine Jarmon, PhD*
> *Interim Executive Director*
> *Metropolitan Housing Alliance*
> *100 South Arch Street*
> ## Little Rock, Arkansas 72201
> *Mobile: 501-539-5225*
>
> > On Apr 22, 2021, at 10:32 AM, Leta Anthony ⟨        ⟩wrote:
> >
> >
> > This does not hold water. MLK is not up for discussion as part of a study. The plans for MLK are in place. Your
> > commitment in the retreat was to identify the source of the Capital funds and as instructed by the Board secure funding for
> > the project to stop the increasing cost of the project due to unnecessary delays. The date of June 1 is in no way
> > arbitrary but has been discussed and is on record in a board motion made in the March meeting and discussed with you on
> > more than one occasion. The HABU process was never adopted by the Board due to what the Board sees as
> > unnecessary delay. The Board has discussed with you several times the need for new income streams for the agency.
> >
> > Commissioner Anthony
> >
> >
> > > On Thu, Apr 22, 2021 at 9:51 AM Nadine Jarmon ⟨         ⟩wrote:
> > >
> > > **Good morning**
> > >
> > >
> > > As discussed at the board retreat staff is conducting a highest and best use analysis of MHA
> > > properties. The analysis should be completed in 30-60 days.
> > >
> > >
> > > I have set the completion of the two impending RAD closings as priority with staff in terms of
> > > allocation of time.
> > >
> > >
> > > I'm not sure how the arbitrary date of June 1st was established, but in an effort to both set and
> > > manage expectations I will provide the board with a full time line for the HABU analysis at the

85

4/22/2021

██████████████████████

May board meeting.

It has been pointed out to me on many occasions that "past" staff and management made decisions that were both not disclosed to the board and in hindsight certainly were not in the best interest of the agency. I will continue with this pattern.

**Nadine M. Jarmon, PhD**

**Executive Director**

**Metropolitan Housing Alliance**

100 S. Arch Street

Little Rock, AR 72201

**501-340-4805 (Office)**

---

**From:** Leta Anthony < ████████████████████ >
**Sent:** Wednesday, April 21, 2021 5:29:33 PM
**To:** Nadine Jarmon
**Cc:** ████████████████ Branndii Peterson; Lee Lindsey; Commissioner - Louis Jackson; Louis Jackson
**Subject:** Re: MLK Update

The Boards for neither entity has moved the date for the groundbreaking of MLK. The amount was discussed and the boards identified funds in the Capitol Fund account to be used. Staff later came back and said they needed to identify what property those funds were to be used for. There have been no other updates. The date of June 1 still holds. Stated in an earlier email where staff had used funds from the Reserve Fund to satisfy a fine for extension it was stated that staff should be seeking resolutions for this project as it did for the extension. We are still waiting for recommendation from staff on funding opportunities. Staff should not be merely waiting for directions but seeking other funding sources if capital funds can not be used. MLK is a MHA project.

On Wed, Apr 21, 2021 at 5:03 PM Nadine Jarmon < ████████████████ > wrote:

Commissioners

At the March 29th meeting of the CAHC under the heading of Status of Property – MLK update was provided and Directors were presented with the attached breakdown of updated costs provided by Ron Woods with the Woods Group which showed $914,274.78 for the estimated construction and $49,800 for A & E fees for a total of $964,074.78. No formal action was taken or authorized by the board. Given the substantial difference in cost from earlier models; staff is awaiting formal direction from Directors.

86

# Attachment 31

deadlines. I will not yield to pressure to comply with or conform to unreliable and unrealistic timelines that I was not involved with establishing.

**Nadine M. Jarmon, PhD**
**Executive Director**
**Metropolitan Housing Alliance**
**100 S. Arch Street**
**Little Rock, AR 72201**
**501-340-4805 (Office)**

---

From: Leta Anthony ███████████
Sent: Thursday, April 22, 2021 2:44:06 PM
To: Nadine Jarmon
Cc: ██████████████; Branndii Peterson; Lee Lindsey; Commissioner - Louis Jackson; Louis Jackson
Subject: Re: MLK Update

There has been no follow up, up dates or anything else coming from you on this project and that is the problem. You did not set the date, the Board did when we invited Mr. Woods in and requested the new numbers. The Board in that meeting referred to staff our ability to use capital funds. You provided to the Board the amount that was in the capital fund and the Board thought those funds could be used. We never changed the date that had been set by the Board. You reported in the Retreat the issue with using Capital funds. The Board gave instructions to you to secure the funds for the project. You have not provided any update of steps to secure funds for the project or any movement on this project as was directed by this Board. If there has been effort on your part pertaining to this matter, please provide that information to the members of the Board. If the date is not met, we have a problem with staff keeping us in the loop and doing due diligence with follow up to the Board. If staff follows up with the Board in a timely manner, the Board will have no need to request information that they should have already received.

Commissioner Anthony

On Thu, Apr 22, 2021 at 10:53 AM Nadine Jarmon ███████████████ wrote:

That does not hold water as I have stated at the retreat you can not use Capital Funds for a project that those funds were not allocated to without going through a formal review and approval. Why would I commit to a date that even if engaged upon would still take a minimum of 3 to 6 months and that's catching HUD on a good day.

All said, I am stating clearly and in writing that date will not be met.

**Nadine Jarmon, PhD**
**Interim Executive Director**
**Metropolitan Housing Alliance**
**100 South Arch Street**
**Little Rock, Arkansas 72201**
███████████████

2

88

On Apr 22, 2021, at 10:32 AM, Leta Anthony ◄ ███████████ ► wrote:

This does not hold water.  MLK is not up for discussion as part of a study.  The plans for MLK are in place.  Your commitment in the retreat was to identify the source of the Capital funds and as instructed by the Board secure funding for the project to stop the increasing cost of the project due to unnecessary delays.  The date of June 1 is in no way arbitrary but has been discussed and is on record in a board motion made in the March meeting and discussed with you on more than one occasion.  The HABU process was never adopted by the Board due to what the Board sees as unnecessary delay.  The Board has discussed with you several times the need for new income streams for the agency.

Commissioner Anthony

On Thu, Apr 22, 2021 at 9:51 AM Nadine Jarmon ◄ ███████████ ► wrote:
Good morning

As discussed at the board retreat staff is conducting a highest and best use analysis of MHA properties.  The analysis should be completed in 30-60 days.

I have set the completion of the two impending RAD closings as priority with staff in terms of allocation of time.

I'm not sure how the arbitrary date of June 1st was established, but in an effort to both set and manage expectations I will provide the board with a full time line for the HABU analysis at the May board meeting.

It has been pointed out to me on many occasions that "past" staff and management made decisions that were both not disclosed to the board and in hindsight certainly were not in the best interest of the agency.  I will not continue with this pattern.

*Nadine M. Jarmon, PhD*
*Executive Director*
*Metropolitan Housing Alliance*
*100 S. Arch Street*
*Little Rock, AR 72201*
*501-340-4805 (Office)*

**From:** Leta Anthony ███████████
**Sent:** Wednesday, April 21, 2021 5:29:33 PM
**To:** Nadine Jarmon
**Cc:** ███████████ Branndii Peterson; Lee Lindsey; Commissioner - Louis Jackson; Louis Jackson
**Subject:** Re: MLK Update

3

The Boards for neither entity has moved the date for the groundbreaking of MLK. The amount was discussed and the boards identified funds in the Capitol Fund account to be used. Staff later came back and said they needed to identify what property those funds were to be used for. There have been no other updates. The date of June 1 still holds. Stated in an earlier email where staff had used funds from the Reserve Fund to satisfy a fine for extension it was stated that staff should be seeking resolutions for this project as it did for the extension. We are still waiting for recommendation from staff on funding opportunities. Staff should not be merely waiting for directions but seeking other funding sources if capital funds can not be used. MLK is a MHA project,

On Wed, Apr 21, 2021 at 5:03 PM Nadine Jarmon ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ wrote:

Commissioners

At the March 29th meeting of the CAHC under the heading of Status of Property – MLK update was provided and Directors were presented with the attached breakdown of updated costs provided by Ron Woods with the Woods Group which showed $914,274.78 for the estimated construction and $49,800 for A & E fees for a total of $964,074.78. No formal action was taken or authorized by the board. Given the substantial difference in cost from earlier models; staff is awaiting formal direction from Directors.

Thank you.


*Nadine Jarmon, PhD*
*Executive Director*
*Metropolitan Housing Alliance*
*100 S. Arch Street*
*Little Rock, AR  72201*
*501-340-4805 - Office*



**From:** Leta Anthony [mailto: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
**Sent:** Wednesday, April 21, 2021 2:40 PM
**To:** Nadine Jarmon ▮▮▮▮▮▮▮▮▮▮▮
**Subject:** Re: Updates

Please provide updates:

- MLK Project
- ADFA court case
- Checklist for ITEX

Commissioner Anthony

4

# Attachment 32



**Absolute Resolution Services, Inc.**

**Via Email:** ███████████████████████

November 14, 2019

Jada Johnson
Procurement and Capital Funds Coordinator
Metropolitan Housing Alliance
100 South Arch Street
Little Rock, Arkansas 72201

RE:  Request for Qualifications (RFQ) for Metropolitan Housing Alliance Board of
Commissioners' (MHA Board of Commissioners) Annual Planning Retreat Facilitation
and Strategic Planning

Dear Ms. Johnson:

I have enclosed for consideration Absolute Resolution Services, Inc.'s (ARS, Inc.)
response to the MHA Request for Qualifications and quote to provide strategic planning
facilitation for the Annual Planning Retreat of the MHA Board of Commissioners.  ARS,
Inc. is available to provide comprehensive pre-facilitation, strategic planning facilitation
and post facilitation follow-up services for the MHA Board of Commissioner' Retreat
during the weekend of December 6-8, 2019 and tentatively scheduled for eight (8) hours
on Saturday, December 7, 2019.

ARS, Inc. staff has extensive facilitation expertise to effectively assist the MHA with
accomplishing its mission by fostering the alignment of strategic planning, short/long
term goals and action planning for designated outputs/outcomes with the identified needs
and strategies detailed in the 2020 PHA Annual Plan. I have included professional
background and reference information for ARS, Inc.'s facilitation staff.

ARS, Inc. looks forward to the Board of Commissioners' favorable consideration of our
RFQ response.  If you have any questions regarding the enclosed RFQ information,
please contact me at ██████████████ or via email at ██████████████████

Sincerely,

*Angelia J. Tolbert*
Angelia J. Tolbert, Esq.
President

Enclosure

**4310 John Barrow Road, Suite B ~ Little Rock, Arkansas  72204
Telephone/Facsimile: (501) 565-0400/████████████
Email:** ████████████████████

92

<u>Via Email:</u> 

**Absolute Resolution Services, Inc.**

December 9, 2019

# INVOICE*
## 2019 MHA Board of Commissioners' Retreat

| | |
|---|---|
| **Vendor Number:** | <u>VN00000138</u> |
| **Purchase Order Number:** | <u>P.O.020230</u> |
| **Services Provided:** | 2019 MHA Board of Commissioners' Retreat Facilitation and Strategic Planning |
| **Contract Agreement Total:** | $4,500.00 |
| **Dates of Service:** | 11/18/2019 to 12/09/2019 |
| **Invoice Total:** | $4,500.00 |

**Submitted by:**

**Angelia J. Tolbert, Esq.**
**President**
**Absolute Resolution Services, Inc.**

# *THIS INVOICE IS DUE UPON RECEIPT

93

Run By: JJOHNSON

**METROPOLITAN HOUSING ALLIANCE**
All Paid Invoice Listing - Vendor VN00000138
EXE



| Vendor # | Vendor Name | Alloc. Detail | Invoice # | Inv. Date | Check Date | Alloc. % | Check # | Alloc. Amt. | Disc. % | Invoice Amt | Alloc. Disc. | Disc. Amt | Alloc. Net | Net Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| VN00000138 | Services, Inc., Absolute Resolution | | | 11/21/2019 | 12/12/2019 | | | | 0.00 | | | | | |
| | | | | Totals For Vendor | Services, Inc., Absolute | | | | | | | | | |
| VN00000138 | Services, Inc., Absolute Resolution | | | 04/27/2020 | 05/22/2020 | | | | 0.00 | | | | | |
| | | | | Totals For Vendor | Services, Inc., Absolute | | | | | | | | | |
| VN00000138 | Services, Inc., Absolute Resolution | | | 06/12/2020 | 06/19/2020 | | | | 0.00 | | | | | |
| | | | | Totals For Vendor | Services, Inc., Absolute | | | | | | | | | |
| VN00000138 | Services, Inc., Absolute Resolution | | | 08/04/2020 | 08/12/2020 | | | | 0.00 | | | | | |
| | | | | Totals For Vendor | Services, Inc., Absolute | | | | | | | | | |
| VN00000138 | Services, Inc., Absolute Resolution | | | 08/04/2020 | 09/01/2020 | | | | 0.00 | | | | | |
| | | | | Totals For Vendor | Services, Inc., Absolute | | | | | | | | | |

Total for Report   5

94

Date: 06/06/2021 12:36:30                                    Page 1

# Attachment 33



**MHA**
METROPOLITAN HOUSING ALLIANCE

**Office of the Interim Executive Director**
**100 South Arch Street**
**Little Rock, AR  72201**
**(501) 340-4821 / (501) 340-4845 (fax)**

09/17/2020

Angelia Tolbert, Esq.
Absolute Resolution Services, Inc.
4310 John Barrow Road, Suite B
Little Rock, Arkansas 72204

Ms. Tolbert,

We appreciate your service for the MHA Board of Commissioners Retreat under task order number one (1), and your continued support to the Board of Commissioners under the terms and conditions of task order number two (2), and Resolution #6744. After comparing ARS cost of service with the budgeted line items approved by the commissioners and provided to HUD for year 2020, a decision has been made to cancel the remaining portion of the task orders along with all items associated with the service and scope of work.

Please note, moving forward ARS has a contract for Hearing Officer with MHA and we plan to utilize your services as needed.

If you have any further questions or feel the need to reach out, our door is always open.

Respectfully,

Dr. Nadine Jarmon
Interim Executive Director

# Attachment 34



**MHA**
METROPOLITAN HOUSING ALLIANCE

**100 South Arch St., Little Rock, AR 72201**

# Recommendations For CARES ACT Funding

MHA is recommending allocation of CARES ACT funding in the amount of $166,941.83 to the following agencies.

The Agencies were selected based on an independent review and evaluation of proposal and scoring by a panel composed of three Executive staff members.

1. HouseAboutIt – Proposed award $140,000
2. Growth Achieved- Proposed award $6,941.83
3. Well Feed- $20,000

This contractual agreement for the plan is not to exceed ($166,941.83).

Within seven (7) days of award, MHA will request the awarded agencies to provide a work and draw schedule.  Within 30 days of receipt of the award MHA will review and work with the agencies/recipients on the draw schedule to ensure milestones, activities and benchmarks are being followed.



**RESOLUTION NO. 6776**

Board Member ___Leta Anthony___ of the Board of Commissioners of the Housing Authority of the City of Little Rock, Arkansas D/B/A Metropolitan Housing Alliance introduced the following Resolution and moved for its adoption:

## RESOLUTION AUTHORIZING THE EXECUTIVE DIRECTOR TO ALLOCATE CARES ACT FUNDS IN THE AMOUNT OF $166,941.83 EXPENDITURES THAT ARE ELIGIBLE UNDER HUD NOTICES PIH-2020-07, 2020-08, AND 2020-18

**BE IT RESOLVED,** that at a duly constituted meeting of the Board of Commissioners of the Housing Authority of the City of Little Rock, Arkansas d/b/a Metropolitan Housing Alliance ("MHA") held on April 15, 2021 the Board of Commissioners did make the following decision and requested staff to act as follows:

**WHEREAS,** the Board of Commissioners recognizes the receipt of funds under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (Public Law 116-136); and

**WHEREAS,** the Board of Commissioners authorizes the Executive Director to allocate CARES ACT funds in the amount of $140,000.00 to HouseAboutIt; and

**WHEREAS,** the Board of Commissioners authorizes the Executive Director to allocate CARES ACT funds to Growth Achieved in the amount of $6,941.83; and

**WHEREAS,** the Board of Commissioners authorizes the Executive Director to allocated CARES ACT funds to Well Fed in the amount of $20,000.00; and

**NOW, THEREFORE, BE IT RESOLVED BY THE BOARD OF COMMISSIONERS OF THE HOUSING AUTHORITY OF THE CITY OF LITTLE ROCK, ARKANSAS D/B/A METROPOLITAN HOUSING ALLIANCE THAT:**

The Executive Director is hereby authorized to make decisions regarding these expenditures as long as such expenditures are eligible under HUD PIH-2020-07, 2020-08 and 2020-18. This resolution shall be in full force and effect from and upon its adoption.

Commissioner ___L. Lindsey___ seconded the motion and upon roll call the following vote was recorded:

> AYES:      Commissioner/s ___Anthony, Lindsey, Lowe, Jackson___
> NAYS:      Commissioner/s _____
> ABSTAIN:  Commissioner/s _____
> ABSENT:   Commissioner/s ___Peterson___

The Chairperson thereupon declared the motion carried and the resolution adopted.

**IN WITNESS WHEREOF,** each of the undersigned has hereunto set his hand of the Authority this 15th day of April, 2021.

**RESOLUTION NO. 6776**

_Kenyon K. Lowe, Sr._

**Kenyon K. Lowe, Sr. Chairperson**

_Nadine Jarmon_

**Dr. Nadine Jarmon, Executive Director**

# Attachment 35

RESOLUTION NO. 6730

Board Member _Leta Anthony_ of the Board of Commissioners of the Housing Authority of the City of Little Rock, Arkansas D/B/A Metropolitan Housing Alliance introduced the following Resolution and moved for its adoption:

**RESOLUTION AUTHORIZING THE BOARD OF COMMISSIONERS OF THE HOUSING AUTHORITY OF THE CITY OF LITTLE ROCK, ARKANSAS, D/B/A METROPOLITAN HOUSING ALLIANCE ("MHA") TO ADOPT THE OPERATING PROCEDURE POLICY RECOMMENDATIONS RESULTING FROM THE 2019 RENTAL ASSISTANCE DEMONSTRATION "RAD" PROGRAM HUD OFFICE OF INSPECTOR GENERAL REVIEW;**

**BE IT RESOLVED,** that at a duly constituted meeting of the Board of Commissioners of the Housing Authority of the City of Little Rock, Arkansas d/b/a Metropolitan Housing Alliance ("MHA") held on December 19, 2019 the Board of Commissioners did make the following decision and requested staff to act as follows:

**WHEREAS,** Staff shall from time to time review and recommend the adoption of new or amended operating procedures to align with HUD Policy Guidelines or recommendations; and

**WHEREAS,** HUD has recommended certain operating procedures, Program Oversight and Predevelopment Budget Adoption, be updated related to MHA's participation in RAD resulting from the HUD Office of Inspector General Report completed in 2019;

**WHEREAS,** MHA staff has proposed such operating procedures with the guidance of the HUD Local Field Office;

**NOW, THEREFORE, BE IT RESOLVED BY THE BOARD OF COMMISSIONERS OF THE HOUSING AUTHORITY OF THE CITY OF LITTLE ROCK, ARKANSAS, D/B/A METROPOLITAN HOUSING ALLIANCE ("MHA") that:**

The Board of Commissioners hereby adopts this resolution and authorizes MHA staff to commence its implementation at once. This Resolution shall be in effect from and after the date of its adoption and execution.

Commissioner _H. Lee Lindsey_ seconded the Motion and upon roll call the following vote was recorded:

AYES:     Commissioner/s _Anthony, Lowe, Jackson, Lindsey_
ABSENT:   Commissioner/s _____
NAYS:     Commissioner/s _____

The Chairperson thereupon declared the motion carried and the Resolution adopted.

**IN WITNESS WHEREOF,** each of the undersigned has hereunto set his hand of the Authority this 19th day of December 2019.

Kenyon Lowe Sr., Chairperson

Anthony Snell, Executive Director

102

# Attachment 36

Run By: LSMITH

**METROPOLITAN HOUSING ALLIANCE**
All Paid Invoice Listing - Vendor VN00029740 - Check Date  from 01/01/2020 to 06/04/2021
EXE

| Vendor # | Vendor Name | Alloc.Detail | Invoice:# | Inv. Date | Check Date | Alloc. % Check # | Alloc. Amt | Disc. % | Invoice Amt | Alloc. Disc. | Disc. Amt | Alloc. Net | Net Amt |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| VN00029740 | GROUP, DESIGN | | | 12/16/2020 | 12/22/2020 | | | 0.00 | | | | | |
| VN00029740 | GROUP, DESIGN | | | 01/07/2019 | 01/16/2020 | | | 0.00 | | | | | |
| VN00029740 | GROUP, DESIGN | | | 12/31/2019 | 01/16/2020 | | | 0.00 | | | | | |
| VN00029740 | GROUP, DESIGN | | | 04/13/2020 | 05/04/2020 | | | 0.00 | | | | | |
| VN00029740 | GROUP, DESIGN | | | 02/18/2020 | 03/05/2020 | | | 0.00 | | | | | |
| VN00029740 | GROUP, DESIGN | | | 03/09/2020 | 04/09/2020 | | | 0.00 | | | | | |
| VN00029740 | GROUP, DESIGN | | | 05/05/2020 | 06/05/2020 | | | 0.00 | | | | | |
| VN00029740 | GROUP, DESIGN | | | 06/10/2020 | 06/30/2020 | | | 0.00 | | | | | |
| VN00029740 | GROUP, DESIGN | | | 08/11/2020 | 08/12/2020 | | | 0.00 | | | | | |
| VN00029740 | GROUP, DESIGN | | | 09/13/2020 | 09/29/2020 | | | 0.00 | | | | | |
| VN00029740 | GROUP, DESIGN | | | 08/13/2020 | 09/10/2020 | | | 0.00 | | | | | |
| VN00029740 | GROUP, DESIGN | | | 10/14/2020 | 10/27/2020 | | | 0.00 | | | | | |
| VN00029740 | GROUP, DESIGN | | | 02/06/2021 | 02/22/2021 | | | 0.00 | | | | | |
| VN00029740 | GROUP, DESIGN | | | 03/26/2021 | 04/07/2021 | | | 0.00 | | | | | |
| VN00029740 | GROUP, DESIGN | | | 03/11/2021 | 04/20/2021 | | | 0.00 | | | | | |
| VN00029740 | GROUP, DESIGN | | | 05/13/2021 | 06/03/2021 | | | 0.00 | | | | | |
| | Total for Report   16 | | | | | | | | | | | | |

Date: 06/04/2021 11:51:19                     Page 1

# Attachment 37

**Lisa Dickerson**

| | |
|---|---|
| **From:** | ilana mckinney |
| **Sent:** | Monday, June 14, 2021 3:25 PM |
| **To:** | Lisa Dickerson |
| **Subject:** | Fw: Shared Cost for Marketing - Design Group |

**From:** Jada Johnson █████████████
**Sent:** Friday, June 11, 2021 3:54 PM
**To:** ilana mckinney ██████████
**Subject:** Fw: Shared Cost for Marketing - Design Group

This is the cost sharing document request for Design Group.

Jada Johnson
MHA Contracts and Procurement Coordinator
Office: 501-340-4834
Cell: ████████

**From:** Nadine Jarmon
**Sent:** Tuesday, October 13, 2020 8:50 PM
**To:** Bobken Simonians; 'Brian Swanton'
**Cc:** Kenyon Lowe; Leta Anthony; Branndii Peterson; ██████████████ Commissioner - Louis Jackson; Louis Jackson; ilana mckinney; Myron Jackson; jada johnson
**Subject:** Shared Cost for Marketing - Design Group

Bobken/Brian

Good evening gentlemen.

To date MHA has incurred a total of $57,102.35 of expenses directly related to the marketing and outreach efforts for Sunset Terrace and Madison I and II, respectively.   Specifically, the Section 3 outreach efforts. I think we all agree that the Design Group has done a phenomenal job.

Unfortunately, I have been unable to obtain any formal agreement in regards to cost sharing for these expenses.  While I am not comfortable with the timing of my request as well as the fact that no formal agreement is in place, I want to appeal to you both to consider my request to share in covering these costs.

If you are receptive; please advise and we can formalize some type of agreement.  We will be happy to provide the detailed invoices, if requested.

Thank you for your consideration.

*Nadine M. Jarmon, PhD*
*Interim Executive Director*

# Attachment 38

2/28/2021                                         Mail - njarmon@mhapha.org

# RE: Job Postings

## Nadine Jarmon

Fri 10/2/2020 12:05 PM



To 'Kenyon Lowe Sr' ; 'Leta Anthony' ; 'Branndii Peterson' ; 'Louis Jackson' ; 'Commissioner - Louis Jackson'

Cc ilana mckinney

📎  1 attachments (212 KB)

IT Contract.doc;


In addition to the Network Administrator position – it appears that there has been some discussion of procuring a contract for Technical Assistance.

This is one of the reasons why I was thinking to delay this posting until I get the results of the Organizational Assessment – there seems to be confusion as to whether this is a "position" or "contract".

I will continue to navigate...


*Nadine Jarmon, PhD*
*Interim Executive Director*
*Metropolitan Housing Alliance*
*100 S. Arch Street*
*Little Rock, AR  72201*


**From:** Nadine Jarmon
**Sent:** Friday, October 2, 2020 10:49 AM
**To:** 'Kenyon Lowe Sr' < ; Leta Anthony < ; ;
Branndii Peterson < ; Louis Jackson < ; Commissioner - Louis Jackson

**Cc:** ilana mckinney <
**Subject:** Job Postings

Plans are to post these positions as soon as next week.   Please peruse them and provide me any thoughts you may have prior to my advertising.  I will be doing some fine tuning over the weekend and would like your comments/thoughts as early as possible.

Of key priority would be the Deputy Director and Director of Development Positions.


Thank you.

*Nadine Jarmon, PhD*
*Interim Executive Director*

108

2/28/2021                                                Mail - njarmon@mhapha.org

# RE: Network Administrator Resumes

Nadine Jarmon

Mon 8/10/2020 3 49 PM

Sent Items

To 'Kenyon Lowe Sr' ███████████████  ilana mckinney ███████████████

Chairman

It appears that indeed there was lack of or miscommunication between the board and the executive director at the time. I would like to request that this position continue to be paused until which time I can get the results of my organizational assessment. At that time we will be able to make a more comprehensive decision about the direction of the agencies, prioritize projects and have a complete staff assessment including budgetary impact.

I know you are disappointed of the lack of follow up; but I ask that we be patient for just a few more months before we move forward with any position postings.

Thank you.


*Nadine Jarmon, PhD*
*Interim Executive Director*
*Metropolitan Housing Alliance*
*100 S. Arch Street*
*Little Rock, AR 72201*



**From:** Kenyon Lowe Sr [mailto:███████████]
**Sent:** Monday, August 10, 2020 1:39 PM
**To:** ilana mckinney ███████████████; Kenyon Lowe Sr ███████████████
**Cc:** Nadine Jarmon ███████████
**Subject:** RE: Network Administrator Resumes


This position was authorized in the Boards 2019 retreat and is a priority as established after meeting with the Agency's IT contractors and yet, the position is still posted on our website.


*Kenyon K. Lowe, Sr. - NCC Commissioner*
*Chairman, MHA Board of Commissioners*
*Little Rock Housing Authority dba Metropolitan Housing*
*Alliance*

109

# Attachment 39

# RICHARD CONGO

# Vice President Information Technology | CIO

○ Accomplished leader of Information Technology management and strategies with over 35 years working in collaboration with public and private partners to foster effective and efficient Systems and Work Flow implementations that enhanced the delivery of critical services to the Public.

○ Developed and Managed IT budgets ranging from 1.5 to collectively over 9 million.

○ Reduced the cost, by hundreds of thousands and enhanced the effectively of Interfaces between disparate applications systems.

○ Designed, developed, implemented a Business Management tool (BI) that has a 'dashboard' effect to allow executive management to query decision making data instantly.

○ Successfully implemented a 'remote work' environment for over 200 staff within two weeks and over 500 staff in 1 month while emphasizing security protocols and protecting sensitive data.

○ Implemented a digital environment to transpose over 9 Terabytes of information.

○ Migrated 10 Terabytes of Client data to a private cloud SaaS environment.

○ Transformed into a complete 'remote work' environment within a month and half.

○ Manage IT related Projects, totally in-house, that range (in number) from 3 to 10 'active'.

### Professional Career

Vice President/CIO (2020-2021)
Director/CIO (2002-2020)
Principal, Next Step Consult. (2000-2002)
CIO, Phila. Government. (1998-2000)

### Education

Bachelor of Science, BS, Computer Systems Management (1984)

### Skills and Partners

Cyber Security to Protect Messaging
ERP Implementation
IT Budget development and management
IT Project Management
CUPHA CIO Group
IT Vendor Negotiation & Management
SAAS Cloud Management
Backup Services
Cyber Security
VDI Management
IT Strategic Planning
Business Continuity Planning
Public/Private Cloud Strategies

### Information Technology Department | Vice President/CIO     March 2002 to Present
### District of Columbia Housing Authority, Washington, DC

Manage over 45 Application Systems including a recently implemented ERP Management system. Management of Information sharing among 800+ employees that administers over a ½ Billion of funds to a vulnerable populous. Responsible for a Wide Area Network (WAN), spanning 50+ Properties, including appropriate security protocols.

❑ Implemented Company-wide Enterprise Resource Planning (ERP) management system which also completely digitized and mobilized the work-order system and allowed staff to 'work from anywhere and anytime'

  ❖ Manage and direct an application unit that develops, updates, and designs systems and website and Business Intelligence (BI) tools to provide effective management of resource data/information.

❑ WAN management covers the entire footprint of the Washington, DC area providing Property management systems and broadband access for over 5000 residents.

❑ Implemented the latest Voice-over-Internet-Protocol (VoIP) system, cutting communications costs in half while also utilizing a 'follow-me' communication system where incoming calls connect to where the employee is (stationary vs. mobile).

❑ Project manage IT initiatives, ranging 2-9 'active', while also managing daily operations of over 700 Network nodes daily.

❑ Implemented and manage the latest security tools to protect data from malware/ransomware hacks while also deploying encryption software to protect sensitive information transferred through messaging environments.

❑ Responsible of managing a network of 4000+ cameras that stream back to the public safety 'command center' ensuring constant and consistent monitoring of Property and resources.

❑ Incorporate the oversight of technical helpdesk tickets (numbering 40-50 weekly) along with support of a complete 'mobile' environment for all staff.

# Kedrick Jones

**IT Network Specialist - Area Agency on Aging**

Effective, outcome-driven professional with over ten years of customer relations and technology experience, four years of supervisory experience, and seven years of business experience. Performs end-user support with workstations, laptops, and mobile devices. Manage and coordinate all software updates, documents all help desk tickets in a timely manner. Monitors and reports call center calls and job performance to supervisors. Successfully organize and manage multiple projects at one given time. Successfully operates and manages a one-person IT Department with four servers, 30 desktops, 10 laptops, 250 plus mobile devices, 150 remote users, VOIP call center, milestone surveillance system, 120 transit surveillance systems, manages Medicaid billing software, end-user training, manages technology budget, procurement, website content, coordinate with the managed service provider and various vendors.

#readytowork

Willing to relocate: Anywhere
Authorized to work in the US for any employer

## Work Experience

### IT Network Specialist
Area Agency on Aging - Pine Bluff, AR
February 2017 to Present

- Manage & oversee the transportation's IT Dept
- Troubleshoot, repair & update desktops, laptops, tablets, phones
- Install & configure software and hardware
- Provide technical support & training
- Manage & oversee Call Center VOIP System
- Technology Systems Administrator
- Surveillance Camera System Administrator
- Mobile Surveillance Camera System Administrator
- EDI & Billing Software Administrator
- Fleet Maintenance Administrator
- End User Training Manager & Facilitator
- Website Administrator & Webmaster

### HIM Software Operations Specialist
Arkansas Hospice - North Little Rock, AR
September 2014 to February 2017

- Supported over 500 EMR end-users
- Developed /edited processes and EMR forms
- Instructed & trained end-users on EMR

# Attachment 40

Conatance Johnson



From:  Kenyon Lowe Sr

To:

Date:  Friday, August 14, 2020, 02:56 PM CDT

This is the young lady that Ms. Anthony and I was referring with the extensive background in vouchers.

# Kenyon K. Lowe, Sr.



Constance Johnson resume 02-10-2020.doc
34kB

# Attachment 41

XPS 17 9700 Laptop with Intel 10th Gen CPU & 4K Display | Dell USA          https://www.dell.com/en-us/work/shop/dell-laptops-and-notebooks/new-...

Search     Sign In     Cart     Menu

**Small Business Month - Get the right tech for your business up to 40% off.**
Shop Now | Questions? Call 1-800-456-3355 or Click to Chat

United States     Products For Work
Laptops & 2-in-1 PCs
XPS Laptops & 2-in-1 PCs
New XPS 17 Laptop
New XPS 17 Laptop

Get to know  Windows 10 Pro        Intel® Core™ Processors
Compare



# New XPS 17 Laptop

- 64GB DDR4-2933MHz, 2x32G
- NVIDIA® GeForce RTX™ 2060 6GB GDDR6 with Max-Q
- 2TB M.2 PCIe NVMe Solid State Drive
- Windows 10 Pro 64-bit English
  (Dell recommends Windows 10 Pro for business)
- 10th Generation Intel® Core™ i7-10875H (16MB Cache, up to 5.1 GHz, 8 cores)
- CNC Machined Aluminum in Platinum Silver with Black Carbon Fiber Composite Palmrest
- Ports & Slots

View 360°

List Price $4,099.98
## $4,088.99

⊘ Price Match Guarantee

**Dell Business Credit**

As low as $123 /mo.^ | Apply for credit

Add to Cart

Tech Specs & Customization          Product Details          Reviews          Drivers, Manuals & Support

116

# Attachment 42



**From:** Kenyon Lowe Sr ███████████████████████]
**Sent:** Monday, August 31, 2020 11:53 AM
**To:** Nadine Jarmon ███████████████; Branndii Peterson ████████████████████
████████████; Leta Anthony ████████████@███████; Louis Jackson
████████████████

**Subject:** DELL Laptops

Dr. Jarmon,

Although the laptops that were ordered not what the Commissioners expected, I have attached specification as to what the laptops should have when re-ordering. Commissioner Peterson stated to me that she wanted an I-pad, yet ended up with a laptop. There should be four (4) laptops and one (1) I-pad for the Commissioners. These next computers should not be opened or touched. The Commissioners all have internet connections and being shipped straight from DELL, do not need any configuration.

Respectfully,

*Kenyon K. Lowe, Sr. - NCC Commissioner*
*Chairman, MHA Board of Commissioners*
*Little Rock Housing Authority dba Metropolitan*
*Housing Alliance*

2

118

**Ilana Mckinney**

| | |
|---|---|
| **From:** | Nadine Jarmon ███████████ |
| **Sent:** | Friday, September 11, 2020 6:22 PM |
| **To:** | 'Lee Lindsey' |
| **Cc:** | jada johnson; ilana mckinney |
| **Subject:** | RE: DELL Laptops |

No. It's not too late. Via cc I am requesting Jada to order you a iPad instead of the laptop.

*Nadine Jarmon, PhD*
*Interim Executive Director*
*Metropolitan Housing Alliance*
*100 S. Arch Street*
*Little Rock, AR 72201*

**From:** Lee Lindsey █████████████████
**Sent:** Wednesday, September 2, 2020 2:06 PM
**To:** Nadine Jarmon ███████████
**Subject:** Re: DELL Laptops

Is it to late for me to request a iPad also?

Sent from my iPhone

On Sep 2, 2020, at 12:30 PM, Nadine Jarmon ████████████████ wrote:

The new specifications were given to staff to reorder; and we have received the specs from Commissioner Peterson for her iPad.  I've asked staff to expedite the order and instructed them to not open them upon arrival.

Thank you.

Please note that the reorder will be placed by tomorrow. I had issues with getting the specs provided to staff until today.

*Nadine Jarmon, PhD*
*Interim Executive Director*
*Metropolitan Housing Alliance*
*100 S. Arch Street*
*Little Rock, AR 72201*

**ilana mckinney**

| | |
|---|---|
| **From:** | Jada Johnson |
| **Sent:** | Friday, June 11, 2021 1:32 PM |
| **To:** | ilana mckinney |
| **Subject:** | Fw: Cares Act- Laptop Purchase Employees |
| **Attachments:** | US_QUOTE_3000065693991.1.pdf |

Jada Johnson
MHA Contracts and Procurement Coordinator
Office: 501-340-4834

**From:** Zach.Burrows@dell.com██████████████████
**Sent:** Monday, July 27, 2020 11:42 AM
**To:**██████████████████████████; jada johnson
**Subject:** RE: Cares Act- Laptop Purchase Employees

Dell Customer Communication · Confidential

Jada,

Attached above is the new quote for 5 more systems. I ran into some errors when refreshing the referenced quote, unfortunately it's no longer available in those specs. Above is the new 3551 matching all the specs from the 3541 while adding the MS Office to these. Major differences are in the processor going from i7 9th gen to i7 10th gen, please review for accuracy and let me know if I need to make any adjustments. Again I want to say thank you for your patience during my absence last week, not sure why your request fell through the cracks.

Q#3000065693991.1

Kindly,
**Zach Burrows**
Dell Technologies | Inside Account Manager
Office:+1(512)513-0787
████████████████
Working Hours: Monday – Friday | 7:00 – 4:00 (CT)

**\*For all your server, storage, & networking needs, please contact Allison Hutcherson for a quote'**
█████████████████████████

**From:** jada johnson ████████████████
**Sent:** Monday, July 27, 2020 10:30 AM
**To:** Burrows, Zach; Bryant, Troupe
**Cc:** Mcneely, Shelby
**Subject:** RE: Cares Act- Laptop Purchase Employees

[EXTERNAL EMAIL]
Hello Zach,

# Attachment 43

**Jada Johnson**

| | |
|---|---|
| **From:** | jeannie owens |
| **Sent:** | Monday, August 10, 2020 11:46 AM |
| **To:** | jada johnson |
| **Cc:** | ilana mckinney; Nadine Jarmon |
| **Subject:** | Re: Laptop |

Oh, ok. Thanks! I was not aware, I am out of the office today.

Jeannie Owens

> On Aug 10, 2020, at 11:41 AM, jada johnson < ██████████ > wrote:
>
> Hello Jeannie,
>
> Thanks for the information. I have the laptop and have already spoken with HR.
>
> Have a great day,
>
> Jada Johnson | Procurement and Capital Funds Coordinator Metropolitan
> Housing Alliance
> 100 South Arch Street | Little Rock, AR 72201 Office 501.340.4834 |
> ██████████████████████████ www.lrhousing.org
>
>
> -----Original Message-----
> From: jeannie owens
> Sent: Monday, August 10, 2020 11:39 AM
> To: jada johnson ██████████████; ilana mckinney
> ██████████████████
> Cc: Nadine Jarmon ██████████████
> Subject: Laptop
>
> Hello,
>
> One of my employees was provided a laptop that was previously used by a commissioner. She discovered
> nude pictures of him and of women on this company computer. Please let me know how you would like to
> handle this situation. Do you need the computer?
>
> Thanks,
>
> Jeannie Owens

○ (4) To issue commissions for the examination of witnesses who are outside of this state or unable to attend before the authority or excused from attendance.

Let's discuss at your earliest convenience concerning this matter.

*Kenyon K. Lowe, Sr. - NCC Commissioner*
*Chairman, MHA Board of Commissioners*
*Little Rock Housing Authority dba Metropolitan Housing*
*Alliance*

**From:** Nadine Jarmon [mailto█████████████]
**Sent:** Wednesday, August 12, 2020 9:57 AM
**To:** Kenyon Lowe Sr
**Subject:** FW: Specific Dates for Distribution of Laptop

Chairman Lowe

We can discuss later. However, since this involves a Commissioner I will defer to you on what or if you want to discuss this matter with Commissioner Jackson.

Thank you

*Nadine Jarmon, PhD*
*Interim Executive Director*
*Metropolitan Housing Alliance*
*100 S. Arch Street*
*Little Rock, AR 72201*

**From:** jada johnson
**Sent:** Tuesday, August 11, 2020 2:35 PM
**To:** Nadine Jarmon █████████████; ilana mckinney ◄ ██████████████ ►
**Subject:** RE: Specific Dates for Distribution of Laptop

I don't have the specifics dates on all but, I have recollection for task related to the distribution or return.

The date the laptop was assigned to Commissioner Jackson - October 2018
The date it was returned by Commissioner Jackson – December 2018
The date it was signed out to Minnie- (first time) 05/07/2020 (second time) 07/17/2020, confirmed on 07/20/2020
The date it was returned by Minnie – (first time)  June 2020, (second time) Gave directly to Daportia
The date it was signed out to DaPortia –Received directly from Minnie , I had her sign the Usage Form on 08/06/2020
The date it was returned by DaPortia – 08/10/2020

123

2/28/2021                                    Mail - njarmon@mhapha.org

**From:** Nadine Jarmon
**Sent:** Tuesday, August 11, 2020 1:03 PM
**To:** jada johnson ▮▮▮▮▮▮▮▮▮▮▮▮ ilana mckinney <▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
**Subject:** Specific Dates for Distribution of Laptop

Jada

I know you are busy; but I really need the following specific dates:

The date the laptop was assigned to Commissioner Jackson
The date it was returned by Commissioner Jackson
The date it was signed out to Minnie
The date it was returned by Minnie
The date it was signed out to DaPortia

Thank you.  You mentioned that ilana may have some of the dates on a form that is issued and place in their personnel files when they are issued company equipment.

*Nadine Jarmon, PhD*
*Interim Executive Director*
*Metropolitan Housing Alliance*
*100 S. Arch Street*
*Little Rock, AR  72201*

124

# Attachment 44

## Fwd: Commissioners' Workday Retreat

Leta Anthony ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ >
Wed 12/30/2020 2:57 PM
**To:** Nadine Jarmon

---------- Forwarded message ---------
From: **W.D. Walker** ▮▮▮▮▮▮▮▮▮▮▮ >
Date: Wed, Dec 30, 2020, 12:57 PM
Subject: Re: Commissioners' Workday Retreat
To: Leta Anthony ▮▮▮▮▮▮▮▮▮▮
Cc: Kimberly Gaynor ▮▮▮▮▮▮▮▮▮▮▮▮▮

The physical address of the building is 2020 S. Broadway. This is the N.W. corner of 21st and
Broadway. Street parking is allowed on either side of 21st Street. The building has a black rout
iron fence around it. Someone will be there to greet you on the day of your conference and will
stay there throughout the day.

Woodson

On Wednesday, December 30, 2020, 11:19:55 AM CST, Leta Anthony ▮▮▮▮▮▮▮▮▮▮▮▮ wrote:

Please send me the physical address of the building.

On Mon, Dec 28, 2020, 10:45 AM W.D. Walker < ▮▮▮▮▮▮▮▮ wrote:
Ms. Anthony,
We are excited that you have selected our facility for your January 12th board meeting. We
are preparing seating for 6 people. We are preparing soft drinks, water, coffee and danish for
your breakfast. Coffee will be prepared with our Keurig coffee maker. What flavor coffee
would you like? We will do what we must to make sure that we are adequately stocked.

There are several popular restaurants in the area, i.e., David's Soul Food Cafe and Brewster's
that specializes in catfish. Also, nearby are Community Bakery, and The Root Cafe. Please let
us know if you would like us to take care of your lunch orders and deliveries for you.

Best,

Woodson

On Tuesday, December 22, 2020, 04:43:02 PM CST, W.D. Walker ▮▮▮▮▮▮▮▮▮▮ wrote:

Ms. Anthony,
We're excited to have your leaders meeting in our facility on January 12, 2021. I won't loose
your email this time. I am copying our BNB manager on this. She's very smart. She won't let
me lose it again. I will be in touch with a more substance response soon.
Woodson

On Tuesday, December 22, 2020, 03:53:41 PM CST, Leta Anthony ▮▮▮▮▮▮▮▮▮▮▮ wrote:

126

Reminder:  We will have lunch catered in.

Leta

-------—-- Forwarded message ----—---
From: **Leta Anthony** ▮
Date: Fri, Dec 11, 2020 at 4:17 PM
Subject: Re: Commissioners' Workday Retreat
To: ▮
Cc: Nadine Jarmon ▮

Woodson Walker;

Woodson, thank you so very much for speaking with me about the date and arrangements for our meeting on January 12, 2021.

I have copied Dr. Nadine Jarmon, Executive Director, MHA-LR Housing and Kdnyon Lowe, Chairman of the Board on this email as they will also provide information of what is needed for this meeting.

Please provide the actual address of the location.  The hours of the meeting will be from 10 a.- 3p. Please provide soft drinks, water , coffee and danish for breaks.  There will also be a request for lunch.  This meeting will be for 6 people.

There may be additional requests.

Thanks again for your assistance.

Commissioner Leta Anthony

127

**ilana mckinney**

| | |
|---|---|
| **From:** | Leta Anthony  |
| **Sent:** | Wednesday, May 12, 2021 8:29 PM |
| **To:** | Nadine Jarmon; |
| **Subject:** | Fwd: Strategic Planning Meeting - Invoice |

Dr. Jarmon,
I received this 2nd request for payment from Mr. Walker today. The Retreat was held in January. I referred his request for payment to you the first time in March. This is May and it doesn't seem as if this has been taken care of. Please verify.

Commissioner Anthony

---------- Forwarded message ----------
From: **W.D. Walker** 
Date: Wed, May 12, 2021 at 5:28 PM
Subject: Re: Strategic Planning Meeting - Invoice
To: Leta Anthony

Good afternoon, Leta! I hope that all is well with you. Could you please investigate the status of our invoice.
Thanks!
Woodson

On Wednesday, March 24, 2021, 11:44:33 AM CDT, W.D. Walker _____ wrote:

I remain Covid cautious. Can we schedule a zoom conference when you're ready to talk?
Woodson

On Wednesday, March 24, 2021, 09 08.07 AM CDT, Leta Anthony  wrote:

I will follow up this morning. I also need to set a meeting with you to discuss the plans for your property.

Leta

On Wed, Mar 24, 2021 at 3:40 AM W.D. Walker _____ wrote:
Good morning, Leta!
With all that is going on in the world, I hope that you, your family and other loved ones remain safe. We are following up on the invoice that we sent to your bookkeeping department. We have not yet received payment on our invoice Would you please investigate the status of this?
Best,
Woodson

:

2/28/2021                                      Mail - njarmon@mhapha.org

# Re: Strategic Planning Meeting

Nadine Jarmon

Thu 1/21/2021 5 12 PM

To:Leta Anthony ▪ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Lee Lindsey
▬▬▬▬▬▬▬▬▬ Commissioner – Louis Jackson ‹▬▬▬▬▬▬▬▬▬▬; Branndii Peterson ▬▬▬▬▬▬▬▬▬

Cc:W.D Walker ‹▬▬▬▬▬▬▬▬▬▬

Mr. Walker

It was a pleasure meeting you. Your location is lovely. A few thoughts - we were a bit tight given the COVID world we find ourselves; perhaps another room in your facility that could safely accommodate 5-6 people with the 6' requirement. Also, consideration should be given to meeting ADA requirements.

Again, very nice meeting you and I look forward to continuing our discussion regarding your property.

*Nadine M. Jarmon, PhD*
*Interim Executive Director*
*Metropolitan Housing Alliance*
*100 S. Arch Street*
*Little Rock, AR 72201*
*501-340-4805 (Office)*

From: Leta Anthony ‹▬▬▬▬▬▬▬▬▬▬▬▬
Sent: Thursday, January 21, 2021 3:09:41 PM
To: Nadine Jarmon; ▬▬▬▬▬▬▬▬▬▬▬ Lee Lindsey; Commissioner – Louis Jackson; Branndii Peterson
Cc: W.D. Walker
Subject: Re: Strategic Planning Meeting

Many thanks to Mr. Walker for making available his facility for our Planning Meeting. Mr. Walker is still in the process of making changes to his facility and has asked for feedback for consideration of improvements. He has asked for total honesty in your feedback pertaining to location, what you liked or didn't like about the accommodations, the hostess and any other comments you want to make about your experience.

You may make your comments by responding to this email. Thanks for your time.

Commissioner Anthony

# Attachment 45

## RE: Strategic Planning Meeting - Invoice

jada johnson

Mon 5/17/2021 2:57 PM

**To:** tamara dawson; Nadine Jarmon
**Cc:** Andy Delaney; altha russell; Lisa Dickerson

Tamara,

I don't have a copy of the W-9. According to your conversation with Mr. Walker, her has not sent it.

Jada Johnson

**From:** tamara dawson
**Sent:** Monday, May 17, 2021 8:48 AM
**To:** Nadine Jarmon <███████████>; jada johnson ███████████████
**Cc:** Andy Delaney <███████████████>; altha russell <████████████>; Lisa Dickerson
████████████████

**Subject:** RE: Strategic Planning Meeting - Invoice

I never received his W9 form. Jada do you have a copy?

**From:** Nadine Jarmon
**Sent:** Saturday, May 15, 2021 1:22 PM
**To:** jada johnson ████████████████
**Cc:** Andy Delaney ████████████████; tamara dawson ████████████; altha russell
██████████; Lisa Dickerson ████████████████

**Subject:** Re: Strategic Planning Meeting - Invoice

If not, please do.

***Nadine M. Jarmon, PhD***
***Executive Director***
***Metropolitan Housing Alliance***
***100 S. Arch Street***
***Little Rock, AR 72201***
***501-340-4805 (Office)***

**From:** jada johnson
**Sent:** Friday, May 14, 2021 12:51:55 PM
**To:** Nadine Jarmon
**Cc:** Andy Delaney; tamara dawson; altha russell; Lisa Dickerson
**Subject:** Re: Strategic Planning Meeting - Invoice

Did anyone check to see if the invoice is processed or paid?

Jada Johnson
MHA Contracts, Capital Fund and Procurement Coordinator
501-340-4834

131

On May 12, 2021, at 9:33 PM, Nadine Jarmon ████████████████ wrote:

Can anyone tell me what the status of this payment.   If I recall it was only for $250.

Please check and advise.

**Nadine M. Jarmon, PhD**
**Executive Director**
**Metropolitan Housing Alliance**
**100 S. Arch Street**
**Little Rock, AR 72201**
**501-340-4805 (Office)**

**From:** Nadine Jarmon
**Sent:** Wednesday, May 12, 2021 9:31 PM
**To:** Leta Anthony; ████████████
**Subject:** Re: Strategic Planning Meeting - Invoice

Commissioner

I will check.  I recall approving the payment back in February.  It was only for $250.  I can't imagine what might be holding it up.

I'll inquire with Finance.

Thank you.

**Nadine M. Jarmon, PhD**
**Executive Director**
**Metropolitan Housing Alliance**
**100 S. Arch Street**
**Little Rock, AR 72201**
**501-340-4805 (Office)**

**From:** Leta Anthony ████████████████
**Sent:** Wednesday, May 12, 2021 8:29:25 PM
**To:** Nadine Jarmon; ████████████
**Subject:** Fwd: Strategic Planning Meeting - Invoice

Dr. Jarmon,
I received this 2nd request for payment from Mr. Walker today.  The Retreat was held in January.  I referred his request for payment to you the first time in March.  This is May and it doesn't seem as if this has been taken care of.  Please verify.

132

6/6/2021                                    Mail - Nadine Jarmon - Outlook

Commissioner Anthony

---------- Forwarded message ----------
From: **W.D. Walker** 
Date: Wed, May 12, 2021 at 5:28 PM
Subject: Re: Strategic Planning Meeting - Invoice
To: Leta Anthony <

Good afternoon, Leta! I hope that all is well with you. Could you please investigate
the status of our invoice.
Thanks!
Woodson

On Wednesday, March 24, 2021, 11:44:33 AM CDT, W.D. Walker  wrote:

I remain Covid cautious. Can we schedule a zoom conference when you're ready to
talk?
Woodson

On Wednesday, March 24, 2021, 09:08:07 AM CDT, Leta Anthony 
wrote:

I will follow up this morning. I also need to set a meeting with you to discuss the plans for your
property.

Leta

On Wed, Mar 24, 2021 at 3:40 AM W.D. Walker  wrote:

Good morning, Leta!
With all that is going on in the world, I hope that you, your family and other loved
ones remain safe. We are following up on the invoice that we sent to your
bookkeeping department. We have not yet received payment on our invoice.
Would you please investigate the status of this?
Best,
Woodson

133

# Attachment 46

Anthony C. Snell

June 4, 2020

Mr. Kenyon Lowe, Sr.
Chairman
Metropolitan Housing Alliance
100 S. Arch
Little Rock, Arkansas

Chairman Kenyon Lowe, Sr.:

It has become abundantly clear over the past several months that the Board's actions and demands are oriented toward a different type of executive leadership at MHA. A number of the actions have been fundamentally detrimental to the agency and have systematically usurped my responsibilities as the Executive Director, constructively discharging me as the day-to-day leader of the agency leaving me no option but to offer my resignation, effective July 7, 2020.

I have truly appreciated the opportunity to serve the citizens of Little Rock and to work beside the employees of MHA for almost 4 years. Although shortened, the accomplishments during my tenure—renovation of the Towers (597 units); avoidance of risky litigation in the purchase of the MH I & II partnerships – structured a $500k payout to CAHC; accelerated capitalization of CAHC; closeout of the OIG Audit without forfeiture of funds ($1.9 million); growth of MHA's relationships with its developer partners (ITEX and Gorman), ADFA and vital equity investors and lenders; elevated relations with the HUD local field office; execution on development and financing plans for the upcoming RAD projects at Sunset/Stephens/Central and MH I&II/HAGM, and successful progress on the Board's goal to establish a robust program for local business participation in the agency's "Redevelopment in the Rock" Campaign—were genuine efforts to support the mission of the agency.

Sincerely,

Anthony C. Snell

135

## ilana mckinney

| | |
|---|---|
| **From:** | anthony snell |
| **Sent:** | Thursday, June 4, 2020 9:29 AM |
| **To:** | ilana mckinney |
| **Subject:** | FW: Personnel Matter |
| **Attachments:** | MHA Lowe6.4.20.pdf |

Please place in my Personnel File.

**Anthony Snell | Executive Director**
**Metropolitan Housing Alliance**
**100 South Arch Street | Little Rock, AR 72201**
**Office 501.340.4843 |** ▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮      www.mhapha.org

**From:** anthony snell
**Sent:** Thursday, June 4, 2020 9:27 AM
**To:** Kenyon Lowe Sr ◄▮▮▮▮▮▮▮▮▮▮▮▮
**Cc:** Leta Anthony ◄▮▮▮▮▮▮▮▮▮▮▮▮; Commissioner - Louis Jackson ◄▮▮▮▮▮▮▮▮▮; Branndii
Peterson ◄▮▮▮▮▮▮▮▮; h.leelindsey@yahoo.com
**Subject:** Personnel Matter

Mr. Lowe,

Rather than continue to serve under conflicted leadership, forcible compliance with detrimental Board actions
and mounting efforts to constructively discharge me, I request that you, Kenyon Lowe, Sr., in your capacity as
Chairman of the Board of Commissioner - LRHA, honor your numerous communications to me and
terminate/release me from my contractual obligation as Executive Director of MHA. If you are unwilling to
negotiate my exit, I ask that you please review and accept the attached letter.

**Anthony Snell | Executive Director**
**Metropolitan Housing Alliance**
**100 South Arch Street | Little Rock, AR 72201 Office 501.340.4843 |** ▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮ | www.mhapha.org

1

136

Mr. Rodney L. Forte,

As a proud staff member of MHA it disturbs me to have to make the following request. After Information that was provided to you and Mr. Akins immediate supervisor on 1/02/2013 and by following guidelines of our procurement policy which falls within the Arkansas State statue 14-169-209 and understanding the terms and conditions of federal and company policy which states; the failure to report a conflict of interest once realized amounts to "misconduct in office", I reported the information that I found immediately, leaving it up to the directors to authenticate the matter.

After an unidentified disclosure was made to the newspaper on March 7, 2013, and the adverse effects to staff and former staff in lieu of the disclosed information, I've been provided with a work environment that is non-conducive to my employment rights under the Whistle Blower Act. In an attempt to put my fate in the hands of management and waive my right under this protection; my working environment has become more hostile by continuous harassment and retaliation, along with receiving no consideration at any time from our HR Director of my rights under this Act.  As a steadfast member of the Metropolitan Housing Alliance I am within my constitutional right to request equal and fair treatment by all members of staff employed by MHA. With that being said it is my wish to make this formal notice to beseech my right and protection under the Whistle Blower Act.

Respectfully,

Jada Johnson
05/19/2013

137

# Attachment 48

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
HON. MACKIE M. PIERCE - 17TH DIVISION 6TH CIRCUIT

MARSHALL L. NASH V LITTLE ROCK HOUSING AUTHORITY

60CV-20-5741

**SUMMONS**

**THE STATE OF ARKANSAS TO DEFENDANT:**

LITTLE ROCK HOUSING AUTHORITY
DBA DBA LITTLE ROCK BOARD OF COMMISSIONERS
100 S. Arch Street
Little Rock, AR  72201

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) - or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas - you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:

Marshall L Nash

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

Additional notices:

Address of Clerks Office

TERRI HOLLINGSWORTH, CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY
401 W. MARKHAM
LITTLE ROCK, AR  72201

CLERK OF COURT

Latanya Christopher, DC

Date: 10/16/2020

3/2/2021



~. Nash Complaint

Nadine Jarmon <

Thu 10/22/2020 10:50 AM

To:Kenyon Lowe <            >; Leta Anthony <            >;            >
            >; Branndii Peterson <            >; Louis Jackson <            >

Leilana mckinney <

Commissioners

I just spoke to Ms. Wineland and she says we must wait to see who our insurance company assigns the case to and she has not been notified that it will be her

Once we receive the Letter of Assignment I will forward it to you and we can consider next steps at that time.

Thank you.

*Nadine Jarmon, PhD*
*Interim Executive Director*
*Metropolitan Housing Alliance*
*100 South Arch Street*
*Little Rock, Arkansas 72201*

# Attachment 49

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Settlement Agreement") is by and between Dana Arnette, herein referred to as "Arnette," and the Housing Authority of the City of Little Rock, Arkansas, d/b/a Metropolitan Housing Alliance, herein referred to as "MHA."

**WHEREAS,** Arnette was formerly employed by MHA; and

**WHEREAS,** Arnette's employment with MHA terminated on or about December 17, 2018; and

**WHEREAS,** following the termination of her employment, Arnette filed a whistleblower complaint with the United States Department of Housing and Urban Development; and

**WHEREAS,** on or about August 9, 2019, the Secretary of the Department of Housing and Urban Development ruled that there was insufficient evidence to determine whether prohibited reprisal under 41 U.S.C. § 4712(a) had occurred, and

**WHEREAS,** Arnette then filed suit against MHA in the United States District Court for the Eastern District of Arkansas, Central Division, case no. 4:19-cv-724 LPR (the "Lawsuit"); and

**WHEREAS,** the parties hereto have reached an agreement to resolve all claims and causes of action of Arnette against MHA, whether or not asserted in the Lawsuit, and wish to memorialize the terms of their agreement.

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements set forth herein and other good and valuable consideration, the sufficiency of which is hereby acknowledged;

**IT IS AGREED** by and between the parties as follows:

1.  **No Admission Of Liability.**  MHA specifically denies any liability, fault or wrongdoing.  By signing this Settlement Agreement, the parties hereto understand and agree that it does not constitute and should not be construed as an admission of liability, fault or wrongdoing by MHA.  MHA specifically denies any and all allegations of unlawful or improper conduct towards Arnette; and MHA has entered into this Settlement Agreement in order to reach an expeditious resolution and to minimize the time, attorney fees, costs and burdens that otherwise would be expended related to the Lawsuit.

2.  **Consideration.**  In consideration for the full and final release and settlement of all claims as set forth in this Settlement Agreement, MHA agrees to pay Arnette and her attorney, Chris W. Burks, of the law firm WHLaw, PLLC, the total gross settlement amount ███████ set forth below:

1

# Attachment 50



—– Forwarded Message —–
**From:** Concerned Employee < ███████████████████
**To:** ██████████████████████████
**Cc:** █████████████████████████
**Sent:** Thursday, June 25, 2020, 07:01:10 AM CDT
**Subject:** METROPOLITAN HOUSING ALLIANCE BOARD REMOVAL

LETTER TO THE MAYOR AND BOARD OF DIRECTORS OF THE CITY OF LITTLE ROCK

June 25, 2020

SUBJECT: METROPOLITAN HOUSING ALLIANCE BOARD REMOVAL

Dear Board of Directors,

This letter is sent on behalf of a majority of employees at the Little Rock Housing Authority (LRHA) dba Metropolitan Housing Alliance (MHA) to inform you of the problems that are not obvious to anyone outside of MHA, but have reached a breach of the public trust to such a degree the Commissioners are serving themselves and have lost sight or been blinded by the power to make decisions in the best interest of the community that we all serve. The MHA board is putting the agency and millions of dollars at risk for personal reasons. We are requesting the removal and replacement of the current MHA board of directors based on the following reasons: (1) Incompetency (2) Misconduct (3) Hostile Work Environment

Incompetency
The most recent dangerous incompetency came as a result of Covid19  The board called Board meetings and put staff and the public at risk because they did not all wear masks and did not follow social distancing general accepted practices of managing risks associated with Covid19 at board meetings.

The board has shown great incompetence in its failure to understand the housing programs it oversees while adamantly injecting themselves in the day to day activities and purposefully through its inability to hire and retain an executive director.
The board proves incompetence by using its platform to blame and belittle staff.

The board provides inaccurate information directly to tenants and to the public which creates confusion and violates the public's trust. It is challenging for staff to perform their daily job duties with the extra time and efforts it takes to resolve the problems that the board creates.

In addition, the board does not understand the financial funding of MHA. Despite having an excess of funds intended by HUD to administer housing programs, the request for additional staff has been denied by the board, vacant positions are unfilled, and the board states MHA is in financial trouble.

The board's failure to understand the method of federal funding for housing agencies prevents executive staff from growing the agency to the full extent possible which would result in more services available to the citizens of Little Rock.

Incompetence was also apparent during the last recruitment for an executive director. The resignation of the executive director in 2018 was followed by the board's series of blatant haphazard attempts to fill the position with several inadequate candidates.
The board manipulated the process by delaying offers to qualified applicants leaving the agency without leadership for an extended period of time.

Since the recent resignation of the current executive director that is effective July 7th, staff has been informed that the MHA board intends to appoint Lowe as executive director. Tenants have also contacted staff requesting to speak to Lowe stating that Lowe informed them he is the new director.

144

While educated and a longstanding board member Lowe's resume shows that he has never held a full time executive position in a housing authority or similar organization. His behavior as a board member proves that he lacks the temperament, knowledge, and management skills to successfully lead the agency.

Misconduct
The board has a blatant disregard of the rules for open records. It is documented by the media as well as in board minutes' numerous instances in which the board failed to follow the rules regarding meetings and transparency.  Despite the training required by the city in 2019, the board continues to hold executive sessions without disclosing all topics of discussion. Ex parte discussions outside the boardroom also occur on a normal basis.

The board's abuse of power is also shown by Kenyon Lowe's financial impropriety regarding travel expenses. Lowe charged personal expenses to MHA while at an out of town training. He received per diem funds to pay for meals and associated routine travel prior to the trip, however he made charges to his room and did not pay them.  Lowe then failed to pay MHA for the unapproved hotel expenses timely and only after it was brought to the attention of the media he inappropriately directed a staff member to provide him the amount and settled the debt.

Hostile Work Environment
The board has created a hostile work environment for executive staff by stepping over the line of being heavily involved in the day to day responsibilities of the agency the executive director is responsible for. The board belligerently accuses staff falsely in public meetings and in emails to staff of not doing their jobs by not providing follow up information.

This environment is preventing employees from performing job duties and causing excessive turnover in executive staff and challenges in the recruitment of talented professionals.

Over half of the current staff are considering a walkout that would affect MHA's ability to process rent payments for nearly 3,000 families.

A mediator was hired in efforts to improve staff-board relations. Unfortunately, the board has responded to staff concerns with retaliation, confrontation, harassing interactions, and in uncompromising positions that leaves staff feeling that their jobs are endangered.

Additionally, previous board members have resigned due to the environment created by existing board members.

Summary
In summary, we are tax paying citizens of Little Rock and MHA's board has proven to be power hungry, confrontational, illogical, calculating, neglectful, incompetent and dangerously unethical and unprofessional as just a few terms to summarize the hidden fears of MHA staff.

The best interest of the community is protected by the removal of the current board. There are no signatures included in this letter due to a fear of future retaliation. MHA employees are willing to discuss these very serious and urgent issues in person with the Mayor as soon as his schedule permits.

Sincerely,

Concerned MHA Employees



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
Little Rock Field Office, Region VI
Office of Public Housing Director
425 West Capitol Avenue, Suite 1000
Little Rock, AR 72201
Phone (501) 324-5933 - Fax (501) 324-5448
*www.hud.gov*

July 19, 2021

Mr. Kenyon K. Lowe, Sr.
Board Chairperson
Metropolitan Housing Alliance
100 South Arch Street
Little Rock, AR 72201

Ref: PSG Contract

Dear Mr. Lowe:

On June 29, 2021, the Board of the Housing Authority of the City of Little Rock, Arkansas, a/k/a Metropolitan Housing Alliance ("MHA") announced it was entering into a contract with Pinnacle Strategy Group, PLC (the "Contract"). The Contract which was executed on 6/31/2021 appears to have been improperly procured. Neither the Board nor MHA has provided evidence the Contract was procured in accordance with 2 CFR 200 nor the Housing Authority of the City of Little Rock Statement of Procurement (the "Policy").

The Contract provides no indication of the proposed source of funds; if the Board's intention is to pay for the Contract with restricted Section 9 Public Housing funds, then this Contract must meet all the requirements for a Public Housing contract, including proper procurement.

Because the Contract amount is not to exceed $160,000, it is above MHA's small purchase threshold of $100,000 (Policy page 1). Therefore, it should have been procured following MHA's instructions for Sealed Bidding, Competitive Proposals, or Noncompetitive Proposals (Policy pages 9, 11, and 13). Neither the Board nor MHA has provided evidence of a bid opening nor a competitive proposal evaluation mechanism for this Contract. There is no apparent justification for a noncompetitive proposal, nor has one been provided to this office. Additionally, it does not appear that this Contract includes the required federal provisions found at 2 CFR Part 200 Appendix II.

Based on the information available to this office, it appears this Contract was improperly procured. Unless the Board can provide additional information showing this contract was properly procured, it must immediately terminate this Contract and make no further payments on it. Any payments already disbursed for this Contract using restricted Section 9 Public Housing funds must be repaid to MHA using non-federal funds.

Please provide our office supporting procurement documentation or evidence the contract has been terminated by COB July 21, 2021.

Sincerely,


Anthony S. Landecker
Director
Office of Public Housing


cc:  Andy Delaney Interim Executive Director

**THE HOUSING AUTHORITY OF THE CITY OF LITTLE ROCK, ARKANSAS**
**d/b/a METROPOLITAN HOUSING ALLIANCE**
**PROFESSIONAL SERVICES AGREEMENT (PSA)**

This **PROFESSIONAL SERVICES AGREEMENT** (hereafter referred to as "Agreement") is made and entered into effective as of July 16, 2020, by and among the Housing Authority of the City of Little Rock, a public body, corporate and politic, established by the City of Little Rock pursuant to Ark. Code Ann. §14-169-201 *et. seq.* and doing business as the Metropolitan Housing Alliance (hereinafter referred to as "MHA"), and Dr. Nadine Jarmon, an individual (hereinafter referred to as "Dr. Jarmon" or "Interim Executive Director").

**WITNESSETH,** that Dr. Jarmon and the MHA for the consideration stated herein mutually agree as follows:

1. **Agreement,** Under the terms and conditions set forth in this Agreement, the MHA Board of Commissioners appoints Dr. Jarmon as Interim Executive Director of the MHA to perform the duties of Executive Director subject to the general supervision, advice and direction of the Board of Commissioners, and Dr. Jarmon accepts such appointment.

2. **Term of Agreement,** The term of the Interim Executive Director's Agreement shall be for a period of one year, commencing on - July 16, - - - - - - - -2020 and ending on --July 16_____2021, unless sooner terminated in accordance with the terms of this Agreement. Upon written request of Dr. Jarmon or the Board of Commissioners at least six (6) months

prior to the expiration of the Agreement, the parties may commence negotiations to extend this Agreement upon terms and conditions mutually agreeable to the parties. Any renewal or extension of this Agreement shall only be valid and enforceable if the extension or renewal is in writing and officially approved by the Board of Commissioners and, absent any such extension or renewal, MHA shall not owe Dr. Jarmon any compensation or expenses beyond the expiration of this Agreement except for accrued benefits which are payable to employees, generally, under the personnel policy of MHA as set forth in the Housing Authority of the City of Little Rock, Arkansas Personnel Policy Handbook, as amended from time to time ("MHA Personnel Policy") or as otherwise provided by law.

3. **Compensation,** The MHA shall pay Dr. Jarmon_One Hundred Fifty-Five _Thousand _ _ _ _ _ _ _ _ Dollars($ 155,000 )   -            perannum in approximately equal bi-weekly installments. The Board of Commissioners shall have the right to adjust the annual compensation of the Executive Director at any time during the term of this Agreement, provided that no such adjustment shall reduce the annual amount set forth herein. Dr. Jarmon shall receive an annual performance review by the Board of Commissioners, prior to the anniversary date of this Agreement each year, and his/her compensation shall be reviewed for possible adjustment at such times.

4.    **Benefits.** During the initial contract period, Dr. Jarmon will forego benefits including medical, dental and life insurance, pension benefits, sick leave and other forms of leave, except where a different benefit is provided for herein below. In addition thereto, until the expiration of this Agreement or its earlier termination:

  a.  MHA shall provide Dr. Jarmon with an automobile allowance of Five Hundred Dollars ($500.00) per month.

  b.  The MHA Board of Commissioners agrees to budget and to pay for business travel and related expenses, organizational dues, fees, seminars and subscriptions, as determined by the Board to be reasonably necessary, for (i) Dr. Jarmon to perform her duties hereunder or to continue her professional participation, growth, and advancement, or (ii) the good of MHA. Dr. Jarmon shall provide MHA with timely verifiable receipts for reimbursement of such expenses listed herein.

  c.  MHA shall reimburse Dr. Jarmon for actual relocation expenses provided Dr. Jarmon provides three (3) quotes from relocation/moving companies. MHA shall reimburse Dr. Jarmon up to average of three (3) quotes but this amount shall not exceed ten thousand dollars ($10,000.00). Relocation receipts shall be submitted by Dr. Jarmon to MHA within ninety (90) days of execution of this Agreement. MHA shall provide Dr. Jarmon reasonable time to complete the relocation process.

  d.  MHA shall provide up to ninety (90) days temporary housing reimbursement and travel reimbursement to Dr. Jarmon in order to expedite the relocation process. Temporary housing and relocation travel reimbursement shall not exceed five thousand dollars ($5,000.00). Temporary housing and relocation travel receipts shall be submitted by Dr. Jarmon to MHA within ninety (90) days of incurrence of eligible expenses.

5.    **Duties and Powers.** Dr. Jarmon is entrusted by the MHA Board of Commissioners with all such authority reasonably necessary and/or customary to effectively discharge all of the duties of the Executive Director position. Subject to and in conformity with MHA policies and

Federal, State and local law, the Interim Executive Director assumes, and shall undertake and perform, the duties, responsibilities and functions of the MHA's Executive Director, including:

a.   All of the duties set forth in the job description of Executive Director attached hereto as Exhibit "A" and incorporated herein by reference;

b.   Implementing, adhering to and enforcing the MHA Personnel Policy and MHA procedures.

c.   Overall management and administration of the business and affairs of MHA, including procurement, while ensuring that MHA remains in compliance with applicable State, Federal and Local Laws;

d.   Execution and implementation of applicable regulations, policies and procedures as established by the Board and the U.S. Department of Housing and Urban Development;

e.   Management of MHA resources so as to advance the mission of MHA through the collective effort of MHA employees and, to the extent feasible, in collaboration with public, private and non-profit entities as well as community stakeholders;

f.   Management and supervision of MHA personnel and putting into effect all policies of the MHA within the framework of applicable federal, state and local housing legislation;

g.   Such other duties as are customarily performed by one holding such a position in other, same or similar public housing authorities;

h.   Other duties as may be assigned by the Board of Commissioners from time to time.

The duties and powers of the Interim Executive Director shall also be subject to and governed by applicable state and federal regulations, as well as policies adopted by the MHA Board of Commissioners.

6.   **Termination of Agreement.**   This Agreement may be terminated prior to the expiration of its term, as follows:

a.   By the MHA Board of Commissioners, for good cause, with due process and prior written notice. "Good Cause" means malfeasance, gross negligence, willful neglect of duties, willful misconduct, fraud, illegal conduct, violating MHA Personnel Policy or incompetence in the performance of duties, and

Personal Services Agreement
Interim Executive Director

3

misrepresentation/fraudulent concealment relating all matters related to the Interim Executive Director's Agreement. Incompetence in the performance of duties shall not be considered good cause for termination unless the Board of Commissioners first provides Dr. Jarmon with written notice of specified deficiencies and a reasonable opportunity to cure such deficiencies prior to any termination action. Except as otherwise specifically set forth in the MHA Personnel Policy, all rights of Dr. Jarmon and all obligations of the MHA under this Agreement, shall cease as of the date of her termination under this Subsection.

b.    Automatically if Dr. Jarmon dies or becomes physically or mentally incapacitated such that she is unable to adequately perform the essential functions of Executive Director, with reasonable accommodations, as determined by the Board of Commissioners; provided, however, this shall not in any way prevent Dr. Jarmon from exercising any right she may have under workmen's compensation laws of the State of Arkansas or the Americans with Disabilities Act ("ADA") or the Rehabilitation Act of 1973. The payment of all compensation and benefits to Dr. Jarmon shall cease upon the effective date of her termination under this subsection except for accrued benefits which are payable to employees, generally, under MHA personnel policies upon termination of Agreement or otherwise provided by law.

c.    By Dr. Jarmon after no less than one (1) year from the effective date hereof and upon at least thirty (30) days notice in writing to the Board of Commissioners of her intention to resign. From and after the effective date of such resignation the MHA shall have no further obligations under this Agreement, except as provided for pursuant to MHA Personnel Policies. Upon receipt of a notice of resignation, the MHA may terminate the Agreement of Dr. Jarmon at an earlier date of its choosing with no additional obligation hereunder beyond obligations pursuant to MHA Personnel Policy and applicable law. In the event that Dr. Jarmon fails to serve as Interim Executive Director of MHA for at least one (1) year from the effective date of this Agreement, the Interim Executive Director shall refund MHA any housing and/or relocation expenses that it paid to her.

d.    At any time during the term of this Agreement or any extension thereof, by vote of a majority of the Board of Commissioners, the MHA may terminate the appointment and Agreement of the Interim Executive Director without cause or reason. In such case, Dr. Jarmon will be entitled to her compensation for the balance of the remaining term hereunder or for six (6) months, whichever is less, upon signing a separation agreement and general release of the MHA from all liability relating to her Agreement and termination.

e.     By mutual agreement of the parties.

7.     **Mediation.** In the event of any dispute arising under Section 6 of this Agreement, the parties shall be required, upon request of either party, to resolve such dispute through mediation prior to the institution of any litigation. The cost of any such mediation shall be borne equally by the parties.

8.     **Nature of Agreement.**

a.     This Agreement sets forth the entire understanding among the parties hereto with respect to the subject matter hereof, and supersedes all prior Agreements among the parties, whether oral or written, and cannot be changed or modified except by written amendment approved the MHA Board of Commissioners and agreed to by Dr. Jarmon.

b.     To the extent that MHA Board of Commissioners may establish any personnel policies, procedures or practices that are inconsistent with this Agreement, this Agreement shall control, unless those policies, procedures or practices are required for compliance with federal, state or local law, in which case such personnel policies, procedures or practices shall control.

c.     The obligations of the MHA under this Agreement are expressly subject to continued existence of MHA and the availability of public funding sufficient to meet the MHA's obligation.

9.     **Successors and Assigns.** This agreement shall be binding upon the MHA, it successors and assigns. No provisions herein contained shall be nullified or ineffective in any manner as a result of any organizational change in the MHA, except that if the MHA is dissolved, then this Agreement and all of the parties' obligations under this Agreement shall terminate.

10.    **No Waiver.** The failure of either party to this Agreement to insist upon the performance of any of the terms and conditions of this Agreement, or the waiver of any breach of any of the terms and conditions, shall not be construed as thereafter waiving any such terms and conditions, but the same shall continue and remain in full force and effect, as if no such forbearance or waiver had occurred.

11.    **Indemnification.** MHA agrees to indemnify and save harmless Dr. Jarmon from all claims, actions, damages, expenses, judgments, liabilities, attorneys' fees and legal costs arising within the scope of the Executive Director's Agreement, and in the absence of willful misconduct and gross negligence, with the exception of intentional acts of the Interim Executive Director. MHA agrees to extend this indemnification following termination of this Agreement for those authorized activities performed by Dr. Jarmon during the term of this Agreement.

benefits to Dr. Jarmon shall cease upon the effective date of her termination under this subsection except for accrued benefits which are payable to employees, generally, under MHA personnel policies upon termination of Agreement or otherwise provided by law.

c. By Dr. Jarmon after no less than one (1) year from the effective date hereof and upon at least thirty (30) days notice in writing to the Board of Commissioners of her intention to resign. From and after the effective date of such resignation the MHA shall have no further obligations under this Agreement, except as provided for pursuant to MHA Personnel Policies. Upon receipt of a notice of resignation, the MHA may terminate the Agreement of Dr. Jarmon at an earlier date of its choosing with no additional obligation hereunder beyond obligations pursuant to MHA Personnel Policy and applicable law. If Dr. Jarmon fails to serve as Executive Director of MHA for at least one (1) year from the effective date of this Agreement, the Executive Director shall refund MHA any housing and/or relocation expenses that it paid to her.

d. At any time during the term of this Agreement or any extension thereof, by vote of a majority of the Board of Commissioners, the MHA may terminate the appointment and Agreement of the Executive Director without cause or reason. In such case, Dr. Jarmon will be entitled to her compensation for the balance of the remaining term hereunder or for six (6) months, whichever is less, upon signing a separation agreement and general release of the MHA from all liability relating to her Agreement and termination.

e. By mutual agreement of the parties.

9. **Mediation.** In the event of any dispute arising under Section 7 of this Agreement, the parties shall be required, upon request of either party, to resolve such dispute through mediation prior to the institution of any litigation. The cost of any such mediation shall be borne equally by the parties.

10. **Nature of Agreement.**

a. This Agreement sets forth the entire understanding among the parties hereto with respect to the subject matter hereof, and supersedes all prior Agreements among the parties, whether oral or written, and cannot be changed or modified except by written amendment approved the MHA Board of Commissioners and agreed to by Dr. Jarmon.

12.     **Entire Agreement.** This Agreement supersedes any and all other agreements, either oral or in writing, between the parties with respect to the Agreement of Dr. Jarmon by the MHA Board of Commissioners and this Agreement contains all of the covenants and agreements between the parties with respect to the Agreement. In the event Dr. Jarmon becomes Executive Director, Dr. Jarmon and MHA shall enter into a Contract for no less than two (2) years with options at which time additional compensation will be granted as a result of the specialized duties and responsibilities associated with the Rental Assistance Demonstration (RAD) projects and other development initiatives undertaken during her tenure.

13.     **Governing Law.** This Agreement shall be governed by and construed in accordance with federal laws and the laws of the State of Arkansas.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement effective _ _ _ _ _ _ _ _ _ 2020.

ATTEST:

7 - 16 - 20
_____
Date

By: _____
        _____ Chairman of the
        MHA Board of Commissioners

7/16/20
_____
Date

By: _____
        Dr. Nadine Jarmon

Personal Services
Agreement

MHA6

**THE HOUSING AUTHORITY OF THE CITY OF LITTLE ROCK,
ARKANSAS d/b/a METROPOLITAN HOUSING ALLIANCE
EMPLOYMENT AGREEMENT (EA)**

This **EMPLOYMENT AGREEMENT** (hereafter referred to as "Agreement") is made and entered into effective as of _April 5, 2021_, by and among the Housing Authority of the City of Little Rock, a public body, corporate and politic, established by the City of Little Rock pursuant to Ark. Code Ann. §14-169-201 *et. seq.* and doing business as the Metropolitan Housing Alliance (hereinafter referred to as "MHA" or "Employer"), and Dr. Nadine Jarmon, an individual (hereinafter referred to as "Dr. Jarmon" or "Executive Director").

**WITNESSETH,** that Dr. Jarmon and the MHA for the consideration stated herein mutually agree as follows:

1. **Agreement.** Under the terms and conditions set forth in this Agreement, the MHA Board of Commissioners appoints Dr. Jarmon as Executive Director of the MHA to perform the duties of Executive Director subject to the general supervision, advice and direction of the Board of Commissioners and Dr. Jarmon accepts such appointment.

2. **Term of Agreement.** The term of the Executive Director's Agreement shall be for a period of two (2) years, commencing on April 5, 2021 and ending on April 4, 2023, unless sooner terminated in accordance with the terms of this Agreement. Upon written request of Dr. Jarmon or the Board of Commissioners at least six (6) months prior to the expiration of this Agreement, the parties may commence negotiations to extend this Agreement for one (1) year upon terms and conditions mutually agreeable to the parties. Any renewal or extension of this Agreement shall only be valid and enforceable if the extension or renewal is in writing and officially approved by the MHA Board of Commissioners and, absent any such extension or renewal, MHA shall not owe Dr. Jarmon any compensation or expenses beyond the expiration of this Agreement except for accrued benefits which are payable to employees, generally, under the personnel policy of MHA as set forth in the Housing Authority of the City of Little Rock, Arkansas Personnel Policy Handbook, as amended from time to time ("MHA Personnel Policy") or as otherwise provided by law.

3. **Compensation.** The MHA shall pay Dr. Jarmon, One Hundred Sixty-Six Thousand Dollars ($166,000.00) annually during the term of this Agreement, less deductions required by law or authorized by Dr. Jarmon and which shall be paid in equal installments in the same manner as salary is paid to other employees of MHA or as may otherwise be agreed by the parties. provided

that no such adjustment shall reduce the annual amount set forth herein for a forty (40) hour work week.

4. **Annual Goals, Objectives and Evaluation**. Dr. Jarmon shall receive an annual performance review by the Board of Commissioners, at the annual meeting in October and her compensation shall be reviewed for possible adjustment at such times. The Board of Commissioners shall base its evaluation of Dr. Jarmon's performance and progress towards the goals and objectives established by a performance evaluation matrix, as well as on the general performance of Dr. Jarmon in carrying out her duties and responsibilities.

5. **Salary Incentive.** Employee shall receive additional compensation for new development projects originating after April 5, 2021 at the rate of one percent (1%) of the total project cost. 50% (percent) (.5) will be payable at the financial closing of the project development and 50% (percent) (.5) will be payable upon the completion of the development project. In any event of the failure in the completion of a development projects, all monies paid to the employee will be owed to MHA (Metropolitan Housing Alliance). In addition, the parties recognize and acknowledge that additional compensation amounts shall be paid only from unrestricted funds.

6. **Benefits.** Until the expiration of this Agreement or its earlier termination, Dr. Jarmon shall be entitled to the following:

   a. Participation in the MHA life, health and dental insurance plans on the same basis as all other MHA employees;

   b. Sick, vacation, holiday and other forms of leave on the same basis as all other MHA employees as provided for pursuant to MHA policy;

   c. MHA shall provide Dr. Jarmon with an automobile allowance of Five Hundred Dollars ($500.00) per month.

   d. The MHA Board of Commissioners agrees to budget and to pay for business travel and related expenses, organizational dues, fees, seminars and subscriptions, as determined by the Board to be reasonably necessary, for (i) Dr. Jarmon to perform her duties hereunder or to continue her professional participation, growth, and advancement, or (ii) the good of MHA. Dr. Jarmon shall provide MHA with timely verifiable receipts for reimbursement of such expenses listed herein.

    e.      MHA shall reimburse Dr. Jarmon for actual relocation expenses provided Dr. Jarmon provides three (3) quotes from relocation/moving companies. MHA shall reimburse Dr. Jarmon up to average of three (3) quotes but this amount shall not exceed Ten Thousand Dollars ($10,000.00). Relocation receipts shall be submitted by Dr. Jarmon to MHA within ninety (90) days of execution of this Agreement. MHA shall provide Dr. Jarmon reasonable time to complete the relocation process.

    f.      MHA shall provide up to thirty (30) days temporary housing reimbursement and travel reimbursement to Dr. Jarmon in order to expedite the relocation process. Temporary housing and relocation travel reimbursement shall not exceed Five Thousand Dollars ($5,000.00). Temporary housing and relocation travel receipts shall be submitted by Dr. Jarmon to MHA within thirty (30) days of incurrence of eligible expenses.

7. **Duties and Powers.** Dr. Jarmon is entrusted by the MHA Board of Commissioners with all such authority reasonably necessary and/or customary to effectively discharge all of the duties of the Executive Director position. Subject to and in conformity with MHA policies and Federal, State and local law, the Executive Director assumes, and shall undertake and perform, the duties, responsibilities and functions of the MHA's Executive Director, including:

    a.  All of the duties set forth in the job description of Executive Director attached hereto as Exhibit "A" and incorporated herein by reference;

    b.  Implementing, adhering to and enforcing the MHA Personnel Policy and MHA procedures.

    c.  Overall management and administration of the business and affairs of MHA, including procurement, while ensuring that MHA remains in compliance with applicable State, Federal and Local Laws;

    d.  Execution and implementation of applicable regulations, policies and procedures as established by the Board and the U.S. Department of Housing and Urban Development;

e. Management of MHA resources so as to advance the mission of MHA through the collective effort of MHA employees and, to the extent feasible, in collaboration with public, private and non-profit entities as well as community stakeholders;

f. Management and supervision of MHA personnel and putting into effect all policies of the MHA within the framework of applicable federal, state and local housing legislation;

g. Such other duties as are customarily performed by one holding such a position in other, same or similar public housing authorities;

h. Other duties as may be assigned by the Board of Commissioners from time to time.

The duties and powers of the Executive Director shall also be subject to and governed by applicable state and federal regulations, as well as policies adopted by the MHA Board of Commissioners.

8. **Termination of Agreement.** This Agreement may be terminated prior to the expiration of its term, as follows:

a. By the MHA Board of Commissioners, for good cause, with due process and prior written notice. "Good Cause" means malfeasance, gross negligence, willful neglect of duties, willful misconduct, fraud, illegal conduct, violating MHA Personnel Policy or incompetence in the performance of duties, and misrepresentation/fraudulent concealment relating all matters related to the Executive Director's Agreement. Incompetence in the performance of duties shall not be considered good cause for termination unless the Board of Commissioners first provides Dr. Jarmon with written notice of specified deficiencies and a reasonable opportunity to cure such deficiencies prior to any termination action. Except as otherwise specifically set forth in the MHA Personnel Policy, all rights of Dr. Jarmon and all obligations of the MHA under this Agreement, shall cease as of the date of her termination under this Subsection.

b. Automatically upon Dr. Jarmon's death or if she becomes physically or mentally incapacitated such that she is unable to adequately perform the essential functions of Executive Director, with reasonable accommodations, as determined by the Board of Commissioners; provided, however, this shall not in any way prevent Dr. Jarmon from exercising any right she may have under the workers' compensation laws of the State of Arkansas or the Americans with Disabilities Act ("ADA") or the Rehabilitation Act of 1973. The payment of all compensation and

benefits to Dr. Jarmon shall cease upon the effective date of her termination under this subsection except for accrued benefits which are payable to employees, generally, under MHA personnel policies upon termination of Agreement or otherwise provided by law.

c. By Dr. Jarmon after no less than one (1) year from the effective date hereof and upon at least thirty (30) days notice in writing to the Board of Commissioners of her intention to resign. From and after the effective date of such resignation the MHA shall have no further obligations under this Agreement, except as provided for pursuant to MHA Personnel Policies. Upon receipt of a notice of resignation, the MHA may terminate the Agreement of Dr. Jarmon at an earlier date of its choosing with no additional obligation hereunder beyond obligations pursuant to MHA Personnel Policy and applicable law. If Dr. Jarmon fails to serve as Executive Director of MHA for at least one (1) year from the effective date of this Agreement, the Executive Director shall refund MHA any housing and/or relocation expenses that it paid to her.

d. At any time during the term of this Agreement or any extension thereof, by vote of a majority of the Board of Commissioners, the MHA may terminate the appointment and Agreement of the Executive Director without cause or reason. In such case, Dr. Jarmon will be entitled to her compensation for the balance of the remaining term hereunder or for six (6) months, whichever is less, upon signing a separation agreement and general release of the MHA from all liability relating to her Agreement and termination.

e. By mutual agreement of the parties.

9. **Mediation.** In the event of any dispute arising under Section 7 of this Agreement, the parties shall be required, upon request of either party, to resolve such dispute through mediation prior to the institution of any litigation. The cost of any such mediation shall be borne equally by the parties.

10. **Nature of Agreement.**

a. This Agreement sets forth the entire understanding among the parties hereto with respect to the subject matter hereof, and supersedes all prior Agreements among the parties, whether oral or written, and cannot be changed or modified except by written amendment approved the MHA Board of Commissioners and agreed to by Dr. Jarmon.

b. To the extent that MHA Board of Commissioners may establish any personnel policies, procedures or practices that are inconsistent with this Agreement, this Agreement shall control, unless those policies, procedures or practices are required for compliance with federal, state or local law, in which case such personnel policies, procedures or practices shall control.

c. The obligations of the MHA under this Agreement are expressly subject to continued existence of MHA and the availability of public funding sufficient to meet the MHA's obligation.

11. **Successors and Assigns.** This agreement shall be binding upon the MHA, it successors and assigns. No provisions herein contained shall be nullified or ineffective in any manner as a result of any organizational change in the MHA, except that if the MHA is dissolved, then this Agreement and all of the parties' obligations under this Agreement shall terminate.

12. **No Waiver.** The failure of either party to this Agreement to insist upon the performance of any of the terms and conditions of this Agreement, or the waiver of any breach of any of the terms and conditions, shall not be construed as thereafter waiving any such terms and conditions, but the same shall continue and remain in full force and effect, as if no such forbearance or waiver had occurred.

13. **Indemnification.** MHA agrees to indemnify and save harmless Dr. Jarmon from all claims, actions, damages, expenses, judgments, liabilities, attorneys' fees and legal costs arising within the scope of the Executive Director's Agreement, and in the absence of willful misconduct and gross negligence, with the exception of intentional acts of the Executive Director. MHA agrees to extend this indemnification following termination of this Agreement for those authorized activities performed by Dr. Jarmon during the term of this Agreement.

14. **Entire Agreement.** This Agreement supersedes any and all other agreements, either oral or in writing, between the parties and this Agreement contains all of the covenants and agreements between the parties.

15. **Governing Law.** This Agreement shall be governed by and construed in accordance with federal laws and the laws of the State of Arkansas.

**IN WITNESS WHEREOF,** the parties hereto have executed this

Agreement effective _____3-5-2021_____, 2021.

ATTEST:

_____3-5-2021_____
Date

By:

_____
Chairman of the MHA Board of
Commissioners

_____3/25/2021_____
Date

By:

_____
Dr. Nadine Jarmon

**Latest   Coronavirus   The Article   Core Values   iPad   Weather   Story ideas   Obits   Archive**

## Little Rock housing authority board fires director who complained about board members' conduct

by Tess Vrbin | August 25, 2021 at 2:43 p.m.



FILE — Nadine Jarmon, executive director of the Metropolitan Housing Alliance, speaks during the Metropolitan Housing Alliance meeting in Little Rock in this Thursday, June 17 file photo. (Arkansas Democrat-Gazette/Staci Vandagriff).

The governing board of Little Rock's public housing authority voted Wednesday to fire the executive director, effective immediately.

The Metropolitan Housing Alliance Board of Commissioners' vote was 4-0, with one commissioner absent from the special meeting.

Board Chairman Kenyon Lowe declined to provide a reason for Director Nadine Jarmon's termination

Board Chairman Kenyon Lowe declined to provide a reason for Director Nadine Jarmon's termination.

Jarmon had been executive director on an official basis since April. Her contract had been for two years and $166,000 per year. She had previously been interim executive director since July 2020 following former executive director Anthony Snell's resignation.

Snell wrote in his resignation letter that the board had harmed and micromanaged the agency. Jarmon made the same claim in a 161-page memo to the Little Rock mayor's office and the local U.S. Housing and Urban Development field office on June 23.

She alleged that the commissioners repeatedly engaged in unnecessary spending, sidestepped federal approvals and had conflicts of interest with parties involved in transactions with the housing authority.

On June 28, the commissioners voted to suspend Jarmon with pay for the duration of a self-authorized investigation into her allegations. They voted Wednesday to keep the investigation going in Jarmon's absence.

They also voted to immediately freeze all contracts and payroll activity that Jarmon authorized when she led the agency.

Financial director Andy Delaney has been acting executive director since Jarmon's suspension. He will continue in this role while the board searches for a new director, Commissioner Leta Anthony said during the meeting.

The agency has now seen four different directors in the past three years.

## Topics

Nadine Jarmon, Little Rock, Anthony Snell, Metropolitan Housing Alliance Board of Commissioners, Kenyon Lowe, Housing and Urban Development, U.S., Leta Anthony, Andy Delaney

# Related Articles

**Little Rock housing authority board fires director who alleged misconduct; federal lawsuit promised**

**Controversy among Little Rock Metropolitan Housing Alliance's leadership, explained**

Sponsor Content



ADVERTISEMENT

## Little Rock housing agency chief urges board's dismissal

Her memo to mayor alleges misconduct, mismanagement

by **Tess Vrbin** | June 25, 2021 at 7:16 a.m.



Nadine Jarmon (left), executive director of the Metropolitan Housing Alliance, and Little Rock Mayor Frank Scott Jr. are shown in this undated composite photo.

The head of Little Rock's public housing authority asked Mayor Frank Scott Jr. on Wednesday to dismiss the agency's entire governing board, alleging "gross misconduct," "inefficient governance," financial mismanagement and excessive involvement in day-to-day agency operations.

Nadine Jarmon, executive director of the Metropolitan Housing Alliance, sent a 161-page memo to Scott and the Little Rock field office of the U.S. Department of Housing and Urban Development.

## This Week in Little Rock

Stay up to date with the latest Little Rock news.

Email Address

The letter included a long list of accusations against the Alliance's board of commissioners, including unnecessary spending, sidestepping necessary federal approvals, and conflicts of interests between commissioners and parties involved in transactions with the housing authority.

Jarmon submitted a collection of emails, bank statements, board minutes, board resolutions and other documents as evidence to back up her claims.

"My motives are not driven by anything other than my personal integrity and my belief in the mission of the Metropolitan Housing Alliance," Jarmon wrote to the mayor and the federal housing department.

"While I am aware of the tumultuous change of leadership at the agency over the past few years, my actions have nothing to do with my personal like or dislike of any individual board member, but rather my concern for the financial health and future of MHA."

Board chairman Kenyon Lowe dismissed Jarmon's concerns as "conjecture" in a Thursday interview.

The Little Rock public housing agency has seen a revolving door of executive leadership since 2018. Former executive director Rodney Forte resigned in November 2018 after six years in the position. Marshall Nash then served as interim executive director for five months. Anthony Snell was the next interim director for six months before he was officially hired into the position, and he left nine months later, in July.

Jarmon was hired as executive director in April after being tapped to lead the agency in an interim capacity in July.

The Metropolitan Housing Alliance is federally funded and locally controlled by a five-member board. The authority is the largest public housing agency in the state and provides rental assistance to people with lower incomes.

The board is self-appointing, subject to approval by the Little Rock board of directors and mayor.

A complaint against a member of any other self-appointing board that the city must approve, such as the Central Arkansas Water Authority or the Central Arkansas Library System, would generate a public hearing to present the reason for the complaint and offer the board member an opportunity to respond, Scott told the Arkansas Democrat-Gazette on Thursday. The city Board of Directors would then vote to retain or remove the board member.

However, the federal housing department is the governing authority over the Metropolitan Housing Alliance, and the city does not have the authority to investigate the agency, the mayor said.

"What generally happens is we tend to follow [the federal department's] lead," Scott said. "If there's a reason not to follow that lead or to take it in our own hands, then the process is the public hearing process."

A Housing and Urban Development regional spokesperson said the department is examining the complaint and supporting documents, and will try to substantiate all the claims before initiating an investigation, which could include the inspector general's office.

If Jarmon's complaint were to eventually make its way before the city board, it would result in five separate public hearings and votes, one for each commissioner.

Scott said the city has never before received a request to remove an entire board.

Jarmon is not the first executive director, or even housing authority staff member, to raise concerns about the board.

A group of anonymous Metropolitan Housing Alliance employees sent a letter to the mayor's office a year ago today with the same request to remove the board of commissioners. The employees said their anonymity was "due to a fear of future retaliation."

"The board has shown great incompetence in its failure to understand the housing programs it oversees while adamantly injecting themselves in the day-to-day activities, and purposefully through its inability to hire and retain an executive director," the letter stated.

That letter was not sent to federal housing authorities, and Scott said it lacked supporting documentation, making it difficult to investigate further.

Scott after receiving the anonymous letter last year said that he would initiate the process of dissolving the Metropolitan Housing Alliance board of commissioners, citing "a number of concerns." The Little Rock Housing and Urban Development field office also expressed "serious concerns" about the board last year.

Still, the board remains in place.

Jarmon said Thursday that the board's behavior concerned her as soon as she became interim executive director in July, but she did not feel comfortable stepping forward with her concerns until she became the official executive director two months ago.

"The people in the past just quit, and I could have done that too, but I wanted to see something done so anybody, not just me, could do their job without interference at this level from the board," Jarmon said.

Snell's resignation letter, included in Jarmon's memo, cited a hostile work environment as one of his reasons for leaving the executive director's post last year.

"A number of the [board's] actions have been fundamentally detrimental to the agency and have systematically usurped my responsibilities as the Executive Director, constructively discharging me as the day-to-day leader of the agency, leaving me with no option but to offer my resignation," Snell said in the June 2020 letter addressed to Lowe, the board chairman.

Lowe told the Democrat-Gazette that Nash and Forte, as well as Snell and Jarmon, have made the same allegations of board overreach, and "it didn't hold water."

"The board doesn't do anything with day-to-day [operations]," Lowe said. "The board monitors, the board has oversight, and the board disciplines its only employee, which is the executive director."

He said Jarmon's complaints are "noise" "conjecture" and "just hearsay" because the city of Little Rock and the federal housing department's field office do not have the direct authority to investigate the Metropolitan Housing Alliance. This authority lies with the housing department's inspector general, Lowe said.

SPECIFIC ALLEGATIONS

Jarmon said the commissioners awarded or steered several contracts to entities with which individual commissioners had relationships.

Commissioner Leta Anthony was the board's chairperson in June 2019 when it voted to transfer ownership of a plot of land called "Vernon Place" from the housing authority to its nonprofit arm, the Central Arkansas Housing Corp. A month earlier, Friendship Charter School issued a letter of intent to purchase Vernon Place.

Anthony voted in favor of the transfer despite being a board member and consultant for the charter school, and Jarmon said Anthony should have recused herself to avoid a conflict of interest.

Lowe said the federal housing department leaves it up to individual housing authorities to determine whether a board member has a conflict of interest if the board member has disclosed a relationship to an entity involved in a board resolution.

"The board did not see a conflict of interest because there was no monetary gain [for Anthony]," Lowe said.

The purpose of the Central Arkansas Housing Corp. is "to facilitate the development, financing and construction of multi-family and single-family residential housing in the city of Little Rock and the Central Arkansas area," according to the housing authority's website.

Transactions between the two entities are allowed only with approval from the U.S. Department of Housing and Urban Development, Jarmon said. She said in a May email to housing authority procurement manager Jada Johnson that Lowe told her he wanted to transfer two properties, including Vernon Place, from the agency to the nonprofit as quickly as possible.

"I told him we have procured the firm to do the appraisal, and his response to me was that one has nothing to do with the other and he wanted these two properties 'quick deeded' to CAHC today if possible," Jarmon wrote in an email.

Lowe told the Arkansas Democrat-Gazette that he could not have made such a request about Vernon Place when the Central Arkansas Housing Corp. had already owned it for almost two years. He also said the federal housing department has to approve transactions related only to the programs it administers, and the Central Arkansas Housing Corp. is not a part of those programs.

Lowe also directed the housing authority staff in 2020 to purchase new laptop computers for the board at more than $4,000 a piece. Jarmon cited this as an example of unnecessary spending because the staff had recently bought commissioners laptops for half as much money, and the more expensive ones would serve no greater purpose, she said in her complaint.

The more expensive laptops were necessary because the cheaper ones did not work well with the housing authority's information technology structure, Lowe said.

Additionally, the anonymous 2020 letter said the board regularly accused the staff "of not doing their jobs by not providing follow-up information."

In a chain of emails to Jarmon in April, Anthony asked repeatedly for updates on a groundbreaking for a development project, saying Jarmon and her staff did not adequately follow up with the board on the plans for the event. Jarmon responded that Anthony's target date was unrealistic.

"I will not yield to pressure to comply with or conform to unreliable and unrealistic timelines that I was not involved with establishing," Jarmon wrote.

Anthony replied that there was no such pressure.

"The board is not in the habit of passing motions and resolutions [only] to have them ignored by staff," Anthony wrote. "All of what has been requested of you is well documented."

MOVING FORWARD

If none of the current commissioners are removed, working with them in the future will undoubtedly be "uncomfortable" unless they change their behavior, Jarmon said, but she does not plan to resign from her position.

"I'm willing to stay no matter what," she said. "I've had difficult boards before, but not to this level. If [the complaint] doesn't work out in my favor, and I'm still there and they're still there, we're going to have to learn to get along."

Lowe declined to comment on the "hypothetical" future state of the board's working relationship with Jarmon.
*Print Headline: Housing agency chief says time for board to go*

Topics

Nadine Jarmon, Kenyon Lowe, Frank Scott Jr., Little Rock, Leta Anthony, Central Arkansas Housing corp., Arkansas Library System

ADVERTISEMENT

**Related Articles**

**Latest   Coronavirus   The Article   Core Values   iPad   Weather   Story ideas   Obits   Archive**

## Little Rock housing authority board fires director who alleged misconduct; federal lawsuit promised

*by Tess Vrbin | Today at 7:02 a.m.*



Kenyon Lowe (right), Metropolitan Housing Authority Commission chairman, speaks Wednesday in Little Rock during the group's meeting, as commissioner H. Lee Lindsey listens. (Arkansas Democrat-Gazette/Staton Breidenthal)

The Little Rock public housing authority board voted Wednesday to fire the executive director who had complained about board members' conduct in a June memo that became public.

The Metropolitan Housing Alliance Board of Commissioners' vote was 4-0 -- with one commissioner absent from the special meeting on Wednesday -- to terminate Nadine Jarmon, who the board officially hired in April after her seven-month stint as the interim head of the agency.

The board didn't publicly state any reasons for Jarmon's termination, and board Chairman Kenyon Lowe in an interview after the meeting declined to provide a reason for the ouster.

In response, Jarmon is preparing to file a lawsuit under the federal Whistleblower Protection Act, said her attorney, Chris Corbitt of the Corbitt Law Firm in North Little Rock.

"It's pretty cut and clear that they fired because of her 161-page whistleblower notification," Corbitt told the Arkansas Democrat-Gazette, referring to the memo Jarmon sent to the Little Rock mayor's office and the U.S. Housing and Urban Development Little Rock field office on June 23. "We'll give the Metropolitan Housing Alliance the opportunity to do the right thing, but in my previous experience with government and quasi-government entities, they won't do the right thing and we'll see them in court."

The Whistleblower Protection Act prohibits retaliation against federal government employees who report mismanagement, negligence, abuse of power or illegal activity by a government entity. The Little Rock housing agency is federally funded, but it was created by the Little Rock Board of Directors in 1940.

[DOCUMENT: Complaint against board of commissioners » arkansasonline.com/826complaint/]

Jarmon's departure is the most recent in a carousel of executive directors at the housing authority, which has seen five directors in three years. The last three directors, including Jarmon, have left the agency or been forced out amid clashes with the board.

The Alliance oversees about 900 traditional public housing units, 200 affordable housing units and 160 market-rate units. It also administers more than 2,000 Section 8 vouchers. It is the largest public housing authority in Arkansas and provides housing assistance to about 8,000 low-income people.

Jarmon's June memo alleged that the housing authority board repeatedly engaged in unnecessary spending, sidestepped federal approvals and had conflicts of interest with parties involved in transactions with the agency. She included a collection of emails, bank statements, board minutes, board resolutions and other documents as evidence to back up her claims.

Her letter to Mayor Frank Scott Jr. and Anthony Landecker, the head of Little Rock's federal housing field office, asked them to remove all five commissioners from the board.

As of Wednesday afternoon, the board had not sent Jarmon a termination letter or contacted her at all about the firing, Corbitt said. She has been suspended with pay since shortly after the June memo was sent.

Financial Director Andy Delaney was named interim director in Jarmon's absence, and he will continue in that role until a new director is hired, Commissioner Leta Anthony said during Wednesday's meeting.

Lowe did not specify at the board meeting or respond to a Wednesday text message asking whether the board fired Jarmon with or without cause.

According to Jarmon's contract, the agency will immediately cease paying her if fired for "good cause," which includes "malfeasance, gross negligence, willful neglect of duties, willful misconduct ... violating

MHA Personnel Policy or incompetence in the performance of duties."

If the board fired Jarmon without cause, she will be paid for six more months, according to the contract. Corbitt said the terms of the contract "will be litigated," and he believes "ultimately [Jarmon] will prevail."

Jarmon's two-year contract was set to pay her $166,000 a year.

On Wednesday, the board voted to continue the self-authorized investigation into Jarmon's allegations. It also voted to immediately freeze all contracts and payroll activity that Jarmon approved since April.

Lowe initially dismissed Jarmon's concerns as "noise" and "hearsay" and said they had no teeth because she did not reach out to the federal Housing Department's Office of Inspector General. He then contacted the department with a "request for an OIG investigation" into Jarmon's claims, and Jarmon said this and the internal investigation appeared to be "diversionary tactics."

The board initially hired attorney Leon Jones Jr., the former head of the Arkansas Fair Housing Commission, to lead the internal investigation. Jones' contract said he would be paid a maximum of $160,000 for a maximum of 10 months of work, starting July 1.

Landecker then told the board in a July 19 letter that the board didn't follow procurement guidelines when hiring Jones. He gave the board two days to end the contract or prove its legality.

Lowe then moved to terminate the contract the same day in an email to Delaney that he later provided to the Arkansas Democrat-Gazette. The board did not vote publicly on the contract termination.

ONGOING CONCERNS

The agency has now seen the departure of four executive directors in fewer than three years.

Rodney Forte resigned in November 2018 after six years in the position.

Marshall Nash then served as interim executive director for five months before resigning. He has filed a federal lawsuit against the board over his treatment while at the agency.

Anthony Snell was the next interim director for six months before he was officially hired into the position, which he left nine months later, in July 2020.

Snell wrote in his June 2020 resignation letter that the board had harmed and micromanaged the

agency, mirroring claims Jarmon made in her memo.

Jarmon also is not the first to ask Little Rock officials to remove the board of commissioners. Shortly after Snell resigned, a group of Metropolitan Housing Alliance employees sent an anonymous letter to

the mayor's office calling for the board's removal. The employees said their anonymity was "due to a fear of future retaliation."

"The board has shown great incompetence in its failure to understand the housing programs it oversees while adamantly injecting themselves in the day-to-day activities, and purposefully through its inability to hire and retain an executive director," the letter stated.

That letter was not sent to federal housing authorities, and Scott said it lacked supporting documentation, making it difficult to investigate further. Jarmon included the letter in her memo.

Scott, after receiving the anonymous letter last year, said that he would initiate the process of dissolving the board of commissioners, citing "a number of concerns." The Little Rock Housing and Urban Development field office also expressed "serious concerns" about the board last year.

Still, the board remains in place, and Scott said in June that the city does not have the authority to investigate an agency that is governed by a federal department.

Arkansas law states that housing authority boards are self-appointing but subject to approval by the local governing body -- in this case, Scott and the Little Rock Board of Directors.

Landecker acknowledged receipt of Jarmon's complaint in a June 28 email to her and Lowe, and he also asked for several more documents to "assist with substantiation" of the allegations. The Arkansas Democrat-Gazette obtained the email through an Arkansas Freedom of Information Act request.

After reviewing some of the additional materials, Landecker asked Lowe on July 28 for specific documents outlining the housing authority's ownership of certain properties. The deadline to provide these documents was Aug. 18, but the Department of Housing and Urban Development had not received a response to this request as of Monday, a regional spokesperson said in an email. Landecker extended the deadline to Oct. 11 on Tuesday.

Lowe declined to comment on Wednesday when asked why the board did not fulfill Landecker's request by the initial August deadline. He also did not comment when asked if the board owes the public an explanation for its decisions.

'SUE ME'

At the time of Jarmon's hiring, Lowe told the Arkansas Democrat-Gazette that the commissioners had "several good candidates" in a pool of 35 applicants for the director's post, but they "felt Dr. Jarmon's skill set and background best suited the agency."

Jarmon had worked as a contracting consultant, a monitor and board adviser for the Gary Housing Authority in Indiana; the executive director of the Louisiana Land Trust; the executive director of the Housing Authority of New Orleans; and, most recently, the Deerfield Beach Housing and Redevelopment Authority.

The same day she was hired, Jarmon said in a phone interview that in her time as interim head of the agency she observed a divide within housing authority leadership and hoped she could mend it.

"It seemed to me that in most cases it was the staff and executive director against the board," she said at the time. "One of the first things I want to accomplish is: there's no us, we, I or me. We're a team."

The following day, Lowe told Jarmon and the Democrat-Gazette that he is the only person currently affiliated with the housing authority who is allowed to speak to the news media on the record.

Recently, the agency has failed to comply with two Arkansas Freedom of Information Act requests that the Arkansas Democrat-Gazette submitted in July, asking for copies of emails between the board and Landecker's office.

Lowe has repeatedly told the Arkansas Democrat-Gazette that the state Freedom of Information Act does not apply to emails sent from personal accounts, since board members are not housing authority employees and do not have official agency email addresses. He said the Metropolitan Housing Alliance "is not obligated to create any system of records that it does not already maintain."

However, state courts have affirmed that emails pertaining to public business -- even if sent over a private server -- are open to copying and inspection under the state public records law.

When presented with this information Wednesday, Lowe replied, "Sue me, then."

Board attorney Khayyam Eddings of the Friday Firm in Little Rock said in an email later Wednesday that the Democrat-Gazette's interpretation of the Freedom of Information Act was correct and that he discussed the matter with Lowe.

Last year, Scott arranged a Freedom of Information Act training workshop for the housing authority board "in an effort to remedy some of the problems that people were telling him existed," his spokeswoman Stephanie Jackson said in June.

John Tull, an attorney who has worked with the Arkansas Press Association, called Lowe's interpretation "utterly ridiculous and completely unsupported."

A district judge found Forte, the former director, guilty in 2015 of a misdemeanor charge for failing to comply with the state Freedom of Information Act in response to records requests from the Democrat-Gazette. However, the conviction was overturned by a jury on appeal.

"If there's anybody that should know better than to ignore the Freedom of Information Act, it's that

entity." Tull said.



## Topics

Little Rock, Kenyon Lowe, Anthony Landecker, Information Act, Leon Jones Jr., John Tull, Arkansas, Frank Scott Jr., Metropolitan Housing Alliance Board of Commissioners, Leta Anthony, Chris Corbitt, Arkansas Fair Housing Commission, Housing Department, Anthony Snell, Stephanie Jackson

## Related Articles

**Little Rock housing authority board fires director who complained about board**

**Controversy among Little Rock Metropolitan Housing Alliance's leadership, explained**

7/8/2021                                           (7 unread) ████████ Yahoo Mail

latest article below

From:  Chris Corbitt ████████████████
To:    ████████████████
Date:  Thursday, July 8, 2021, 06:18 AM CDT

# Housing agency sets $160,000 for inquiry

by <u>Tess Vrbin</u> | Today at 3:40 a.m.

<u>0</u>

Follow



Leon Jones Jr. is shown in this photo.

Little Rock's public housing agency will pay attorney Leon Jones Jr.'s consulting firm as much as $160,000 to investigate claims of misconduct and negligence levied against the board of commissioners in June.

The contract between the Metropolitan Housing Alliance and Jones' firm, Pinnacle Strategy Group, began July 1 and will last through May 1. The Arkansas Democrat-Gazette obtained the contract through an Arkansas Freedom of Information Act request.

ADVERTISING

Morning Newsletter
Stay connected and informed with <u>ArkansasOnline.com</u> news updates delivered straight to your inbox.

Pinnacle Strategy Group will investigate agency director Nadine Jarmon's claims that the commissioners repeatedly engaged in unnecessary spending, sidestepped federal approvals, and engaged in conflicts of interest between commissioners and parties involved in transactions with the housing authority.

The authority will pay Pinnacle Strategy $275 per hour for a maximum of 20 hours per week. The total would amount $160,000 if the investigation takes the 10 months, the maximum time allowed under the agreement.

"The investigation includes, but is not limited to, securing all documents related to the allegations, securing all witnesses and maintaining records related to the allegations," Jones' contract states. "The investigation can move in the direction that the evidence points."

Jarmon sent a 161-page memo on June 23 to Little Rock Mayor Frank Scott Jr. and to the field office of the U.S. Department of Housing and Urban Development. She included a collection of emails, bank statements, board minutes, board resolutions and other documents as evidence to back up her claims.

Jarmon asked for the entire five-member board of commissioners to be removed. The board is self-appointing but subject to approval by the Little Rock Board of Directors and mayor.

Jones said in an interview that he had not yet read Jarmon's memo and had requested the documents from Little Rock. He said the housing authority is working on gathering some other documents that will help him in the investigation.

"Until then, I don't have a sense of how long it's going to take," Jones said. "[I will] once I know those allegations and have a sense of where I need to go."

Jones previously served on the Fayetteville Housing Authority board of commissioners, including a stint as board chairman, and has led the Arkansas Department of Labor and the Arkansas Fair Housing Commission. He resigned from the Fair Housing Commission earlier this year when he announced his candidacy for the Republican nomination for attorney general in 2022.

The Republican primary in May will take place after Jones' investigation ends, if it lasts that long, so the two will not conflict, he said.

Arkansas law allows housing authorities "to conduct examinations and investigations." The commissioners voted unanimously on June 29 to authorize the investigation and to hire Jones to conduct it.

They also voted unanimously to suspend Jarmon with pay until the investigation is complete. During that time, she is not allowed to enter any housing authority buildings or properties.

The Metropolitan Housing Alliance has seen four directors in the past three years. Anthony Snell, the executive director before Jarmon, left the post in July 2020, writing in his resignation letter that the board had harmed and micromanaged the agency. Jarmon served as interim director until the board chose her to fill the post officially in April.

She said last week that both her suspension and the self-authorized investigation likely are "diversionary tactics," and she said the same thing about board chairman Kenyon Lowe's June 28 request for a HUD investigation into her allegations.

Scott previously told the Arkansas Democrat-Gazette that the federal housing department, not the city, has the primary authority to oversee and discipline the housing authority.

The board unanimously chose the agency's financial director, Andy Delaney, as acting executive director throughout Jarmon's suspension.

*Print Headline: Housing agency sets $160,000 for inquiry*



Chris P. Corbitt, P.E., Esq.

U.S. Patent Attorney

Attorney at Law
Corbitt Law Firm

PO Box 11200

Conway, AR  72034

Address:

Email: █████████████████████

Contact Info:   www.corbittlawfirm.com

ADVERTISEMENT

## Little Rock's housing agency looks to halt lawyer's probe

by Tess Vrbin | Today at 2:55 a.m.



Leon Jones Jr. is shown in this photo

Little Rock's public housing authority is moving to terminate its contract with a local attorney to investigate allegations of wrongdoing levied by the agency's executive director.

The move is a response to an order Monday from the Little Rock field office of the U.S. Department of Housing and Urban Development to either terminate the contract or provide documents to prove its legality, with a deadline of Wednesday.

### Morning Newsletter

Stay connected and informed with ArkansasOnline.com news updates delivered straight to your inbox.

Email Address

"Under the provision provided by the field office, cease and detest [sic] the contract of Mr. Leon Jones and Pinnacle Strategy Group." Kenyon Lowe, chairman of the Metropolitan Housing Alliance board of commissioners, wrote to acting Executive Director Andy Delaney.

The Arkansas Democrat-Gazette obtained the email in an Arkansas Freedom of Information Act request. The email did not include the date in which Lowe contacted Delaney, but Lowe said Wednesday that he sent it Monday.

As of Friday, he could not be reached for further comment.

A Housing and Urban Development regional spokesperson did not respond when asked if the Metropolitan Housing Alliance's efforts were sufficient to meet the department's demands and deadline.

The housing authority enlisted Leon Jones Jr.'s firm, Pinnacle Strategy Group, to investigate agency Director Nadine Jarmon's claims. listed in a memo to the field office and the Little Rock mayor's office on June 23. Jarmon said the commissioners repeatedly engaged in unnecessary spending, sidestepped federal approvals and had conflicts of interest with parties involved in transactions with the housing authority.

She also requested the removal of all five commissioners, who are self-appointing but subject to approval from the city mayor and board of directors.

The board voted unanimously at a June 29 meeting to hire Jones, to suspend Jarmon with pay for the duration of the investigation and to put Delaney in Jarmon's post during that time.

One problem with the agency's contract with Jones, according to Monday's letter from Little Rock field office director Anthony Landecker, is that it did not name the source of the funds the agency will use to pay Pinnacle Strategy Group. The contract would have to meet certain federal requirements in order for restricted Section 9 public housing funds to be the source of the payment.

Lowe's note to Delaney asked him to use "non-restrictive funds" to pay Jones for the work he had already done and for which he had submitted an invoice.

Jones told the Arkansas Democrat-Gazette on Tuesday that he had just received a copy of Jarmon's memo the previous week and "started reading through some of the documents." He said his anticipated next step was to discuss the allegations and supporting documents with Jarmon.

Jones could not be reached for further comment from Wednesday onward, saying he was out of town.

Arkansas law allows housing authorities "to conduct examinations and investigations." At a special board meeting Tuesday, Lowe again cited this portion of state law as the basis for the contract with Jones.

The letter from Landecker, however, said the contract went against both the Code of Federal Regulations and the Metropolitan Housing Alliance's procurement policy. For example, the $160,000 maximum payment to Pinnacle Strategy Group, as stipulated in the contract, exceeded the housing authority's "small purchase threshold" of $100,000, listed in the procurement policy.

7/25/2021                    Little Rock's housing agency looks to halt lawyer's probe

"Although this was done under State Law and designated by the Board as to the investigation itself would be conducted as the Law allows, [the] investigation will be conducted from a different venue," Lowe wrote in his memo to Delaney.

None of the commissioners or executive staff mentioned the effort to terminate the contract with Jones at Tuesday's meeting, and the board did not vote on the issue. Instead, Lowe read aloud his response to Landecker's letter on behalf of the board, calling Jarmon's allegations a "conspiracy."

Jarmon's letter in June marked the latest episode of strife between the Metropolitan Housing Alliance's chief executive and its board. The agency has seen four different directors in the past three years.

Anthony Snell, the executive director before Jarmon, left the post in July 2020, writing in his resignation letter that the board had harmed and micromanaged the agency. Jarmon was then appointed interim executive director before the board hired her to take over the post in April.

*Print Headline: Housing agency looks to halt lawyer's probe*

Topics

Kenyon Lowe, Little Rock, Leon Jones, Pinnacle Strategy Group, Anthony Snell, Federal Regulations, Leon Jones Jr., Arkansas, Information Act

ADVERTISEMENT

## Related Articles

Drop or justify contract with attorney, Little Rock housing authority told

Housing agencies say federal program secures cash for fix-ups, but leaves coffers short

Little Rock housing agency sets $160,000 for inquiry

## Sponsor Content



**Allison Stokke Years After Her Famous Photo.**
ItsTheVibe



**What Darla And The Little Rascals Looked Like After They Grew Up**
ItsTheVibe



**[Pics] At 56, Laura Ingraham Has Never Been Married And Now We Know Why**
ItsTheVibe

## Recommended For You

**Latest    Coronavirus    The Article    Core Values    iPad    Weather    Story ideas    Obits    Archive**

## Controversy among Little Rock Metropolitan Housing Alliance's leadership, explained

*by Arkansas Democrat-Gazette. Haley Fuller | July 27, 2021 at 11:12 a.m.*



FILE — (From left) Nadine Jarmon, executive director of the Metropolitan Housing Alliance, commissioner Leta Anthony and commissioner H. Lee Lindsey have a discussion during the Metropolitan Housing Alliance meeting in Little Rock in this Thursday, June 17, file photo. (Arkansas Democrat-Gazette/Staci Vandagriff)

Recently, the board of commissioners of Little Rock's Metropolitan Housing Alliance has been under fire for improper conduct and the top position has changed hands four times in three years.

**Back up: What does the Metropolitan Housing Alliance do and who runs it?**

The Metropolitan Housing Alliance is Little Rock's federally funded public housing authority. It

**provides housing assistance to about 8,000 people.**

The agency has four employees and is overseen by a five-person board of commissioners. The board is self-appointed, subject to approval by the Little Rock board of directors and the mayor.

Nadine Jarmon is the executive director and the chairman of the board of commissioners is Kenyon Lowe.

### Why did Jarmon ask Little Rock Mayor Frank Scott Jr. to dismiss the agency's board of commissioners?

On June 23, Jarmon sent a 161-page memo with supporting documents to Scott and the Little Rock field office of the U.S. Department of Housing and Urban Development accusing the board of:

- **Unnecessary spending**
- **Sidestepping necessary federal approvals**
- **Conflicts of interest** between commissioners and parties involved in transactions with the housing authority

**Are these new concerns?**

No, they're not. Last year, a group of anonymous agency employees sent a letter to the mayor's office requesting the removal of the board.

The letter said the board had **"shown great incompetence in its failure to understand the housing programs it oversees while adamantly injecting themselves in the day-to-day activities."**

Jarmon is the fourth executive director in three years after **her predecessors resigned alleging board overreach.** Lowe said the complaints are "conjecture" and the board has nothing to do with daily operations.

Additionally, the agency has received low marks nationally according to annual scores released by the federal housing department. Between 2012 and 2016, the agency was a "substandard performer" in management and was categorized as "troubled" in 2017.

### Then what happened?

After Jarmon sent the memo, Lowe, the agency's chairman, sent a letter to the U.S. Department of Housing and Urban Development **requesting a federal investigation.**

The board of commissioners **voted unanimously to suspend Jarmon** until an internal investigation concludes.

The board hired Pinnacle Strategy Group for the internal investigation, but the Little Rock field office of the federal housing department ordered the agency to terminate the contract or provide documents that show its legality. The Metropolitan Housing Alliance is terminating the contract

documents that show its legality. The Metropolitan Housing Alliance is terminating the contract.

**What happens next?**

The federal housing department has primary jurisdiction over the agency, so the city isn't authorized to oversee and discipline the agency.

A federal housing department regional spokesperson said the department is examining the complaint and supporting documents, and will **try to substantiate all the claims before initiating an investigation,** which could include the inspector general's office.

Read more about the ongoing investigation from reporter Tess Vrbin, and go here to sign up for our Little Rock-centric newsletter, This Week in Little Rock.

Topics

Little Rock, Department of Housing and Urban Development, U.S., Frank Scott Jr., Pinnacle Strategy Group, Tess Vrbin

## Related Articles

**Little Rock housing authority board fires director who alleged misconduct; federal lawsuit promised**

**Little Rock housing authority board fires director who complained about board members' conduct**

**Fayetteville Housing Authority under scrutiny; interim director resigns**

## Sponsor Content

## Recommended For You

**State lawmakers raise red flag over firing unvaccinated**

**Little Rock housing authority board fires director who**

**Covid patients on ventilators at new high as state cases rise by**

Little Rock housing authority to restart exec hunt after top pick declines offer

*by Ginny Monk | August 16, 2019 at 6:57 a.m.*



FILE    The Little Rock Housing Authority office is shown in this 2019 file photo.

After nine months without an executive director, the Little Rock housing authority must begin a new search because the board's pick for the job turned Chairwoman Leta Anthony said Thursday.

Florida housing administrator Nadine Jarmon declined the job offer from the Metropolitan Housing Alliance earlier this week, Anthony said.

The agency has been without a permanent leader since former director Rodney Forte resigned in November. The board conducted much of its search for director in closed meetings.

Jarmon is the executive director of the Deerfield Beach Housing Authority.

Anthony said in a previous interview that Jarmon was the best candidate because of "her experience, her education, her ability."

"She's just decided not [to] at this time," Anthony said in an interview Thursday.

Jarmon did not return a request for comment late Thursday. She was among three finalists whom board members selected in March. Anthony announce June meeting that the board was negotiating a contract with Jarmon.

Board members went into a 25-minute private session Thursday to discuss how to move forward with the search and did not announce any decisions at State law allows closed meetings "for the purpose of considering employment, appointment, promotion, demotion, disciplining, or resignation of any pu or employee."

"People want to think about it and take some time," Anthony said.

The board likely will make a decision on its next steps at its September meeting unless "something comes up," she added.

Forte. who had been with the agency for six years, resigned Nov. 7. He asked to stay until Jan. 31, but board members voted to push him out that day. F paid $133,000 a year.

The board voted the same day to appoint Marshall Nash, director of administrative and legal services, to serve temporarily in Forte's stead but with the special adviser to the board.

Nash, who also ran the human-resources department, resigned April 12, after the second round of candidate interviews.

The board later appointed Anthony Snell, deputy director of real estate, to take his place.

Snell is working as interim executive director without a deputy executive director or a human-resources director.

"We know that Anthony's plate has been extremely full," Anthony said, "We've got some gaps."

Board members have said that no internal candidates were considered for the top job in the initial search.

The board chose its three finalists from among 22 applicants during a closed session in March, announcing its decision without taking a vote in public -- by law.

Board members interviewed two of the finalists -- Jarmon and Kimberly Adams, a former Little Rock city employee -- in April in private meetings that la hours.

Experts said at the time that the meetings violated the Arkansas Freedom of Information Act, which requires the governing bodies of agencies to meet with a few exceptions for private sessions.

The board did not interview finalist R.M. Jackson because she took another job before her interview in Little Rock.



*Metro on 08/16/2019*
*Print Headline: Little Rock housing authority to restart exec hunt after top pick declines offer*

Topics

Little Rock, Nash, Housing Authority, Information Act

## Recommended For You

**KATV anchor, meteorologist apologize for controversial wig incident**

**Police: Man, 22, killed in shooting**

**Active covid-19 cases see first increase month; hospitalizations still falling**

## Sponsor Content







# Little Rock housing authority executive director search

*Next steps in the Metropolitan Housing Alliance's search fo
executive director are unclear after the selected job candida
down an offer.*

● **NOV. 7** Executive Director Rodney Forte resigns and asks
the agency through the end of the year. The board votes to 
out that day and appoints Marshall Nash, the director of
administrative and legal services, special adviser to the boa



**FORTE**



**NASH**



**SNELL**

● **MARCH 21** The board 
commissioners selects 
finalists for the executi
position.

● **APRIL 9** The board h
candidate interview.

● **APRIL 12** The board 
second candidate inter
resigns, effective imme

● **APRIL 15** The board 
Anthony Snell, deputy
director of real estate,
agency's interim direct
announces that the thi
has taken a different jo

● **JUNE 13** The board a
at its regular meeting t
members have begun 
negotiations with Nadi
of Deerfield Beach, Fla

● **AUG. 15** Chairwoma
Anthony says Jarmon 
accept the job offer.

Arkansas Der

6/23/2021                                    Little Rock mayor to begin process of dissolving housing authority board

Latest   The Article   Core Values   iPad   Story ideas   Weather   Newsletters   Obits   Puzzles

ADVERTISEMENT

# Little Rock mayor to begin process of dissolving housing authority board

*by Rachel Herzog | July 2. 2020 at 8:53 p.m.*



Little Rock Mayor Frank Scott Jr. speaks to reporters in Little Rock on Monday, June 8. 2020, in this still taken from video provided by city officials.

Little Rock Mayor Frank Scott Jr. will initiate the process of dissolving the board of the city's public housing authority, based on concerns from the U.S. Department of Housing and Urban Development and employees at the agency.

The Little Rock Housing and Urban Development field office requested a meeting with Scott on June 25 to share "serious concerns" about the Metropolitan Housing Alliance Board of Commissioners.

Scott told the Arkansas Democrat-Gazette on Thursday evening.

## This Week in Little Rock

Stay up to date with the latest Little Rock news.

Email Address

ADVERTISING

He added that he had gotten emails and phone calls from employees who expressed concerns about the role and authority of the board as well fiduciary responsibility with the board's ongoing Rental Assistance Demonstration projects.

Scott said the local Housing and Urban Development office gave him the options of either dissolving the board or removing the chair.

To initiate the process to dissolve the board and reappoint commissioners, the city attorney must first issue a notice of consideration to dissolve. The decision will ultimately fall to the city Board of Directors.

The agency has undergone several changes in executive leadership in the past couple of years. Its current executive director, Anthony Snell, submitted his resignation to the board in June. His last day will be July 9.

In a special meeting midday Thursday, the board selected Nadine Jarmon, executive director of the housing authority in Deerfield Beach, Fla., as its interim executive director.